*ERIK LAURINOVICS, ATTORNEY AT LAW (#312412)*
*6977 Navajo Road, #184*
*San Diego, CA 92119*

*SOLOWAY GROUP PC*
*169 Madison Avenue*
*Suite 11199*
*New York, NY 10016*
*Josh Soloway, Esq., Pro Hac Vice*

*SCHWARTZ, CONROY & HACK PC*
*666 Old Country Road, Suite 900*
*Garden City, New York 11530*
*Matthew Conroy, Esq., Pro Hac Vice*
*Evan Schwartz, Esq., Pro Hac Vice*
*Jacob Frydman, Esq., Pro Hac Vice*

*Attorneys for Plaintiff Chaim Kolodny*

## UNITED STATES DISTRICT COURT FOR
## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chaim Kolodny, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>1020 Fairfax Holdings LLC; 1020 Fairfax RE Holdings LLC; 1020 South Fairfax LLC; 20554 Roscoe Boulevard LLC; 250 W Artesia Pomona LLC; 309 MacArthur Boulevard LLC; 3145 High Street LLC; 4343 Sierra Way LLC; 5270 E. Los Angeles Avenue LLC; 5270 E. Los Angeles Avenue Holdings LLC; 5270 E. Los Angeles Avenue RE Holdings LLC; 6120 Vineland Avenue LLC; 6740 Wilbur LLC; 6740 Wilbur RE LLC; 6812 Oak Avenue LLC; 6812 Oak Holdings LLC; 8951 Granite Hills Drive LLC; AHCST LLC; Amanda Hodges; Arrowhead | **COMPLAINT OF CHAIM KOLODNY FOR:**<br><br>1. **VIOLATION OF 18 U.S.C. § 1962(C) – CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY**<br>2. **VIOLATION OF 18 U.S.C. § 1962(B) – ACQUISITION AND MAINTENANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY**<br>3. **VIOLATION OF 18 U.S.C. § 1962(D) – CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**<br>4. **VIOLATION OF 18 U.S.C. § 1341 – MAIL FRAUD**<br>5. **VIOLATION OF 18 U.S.C. § 1343 – WIRE FRAUD**<br>6. **VIOLATION OF THE FEDERAL FALSE CLAIMS ACT – 31 U.S.C. § 3729 AND** |

4

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Healthcare Center LLC; Asistencia Villa Post Acute LLC; Assembly Health Group LLC; Astra Healthcare Group LLC; AVPA 1875 LLC; AVPA LLC; Canyon Vista Post Acute LLC; Caroline Ditullio; CGM Consulting Corp.; Chase Healthcare Strategies LLC; Cheryl Petterson; Chestnut Ridge Post Acute LLC; CIRA Real Estate Holdings Inc.; CRPA 525 LLC; CRPA LLC; CVPA 2309 LLC; CVPAC LLC; Eleos Health Care LLC; Elyssia Musolino; Extended Care Inc.; Hadassa Weiss; Healthcare Partners I LLC; HER Real Estate Holdings LLC; Hyde Park Real Estate Holdings LLC; Hyde Park Rehabilitation Center LLC; Inland Valley Partners LLC; IVCR 250 LLC; IVCR LLC; Jacob Sod; Jaden Rust; Jason Roberts; JLS Equities LLC; JLS SM Holdings LLC; John Nguyen; Kevin Cablayan; La Mesa Post Acute LLC; Landstone Health Group LLC; LMHCST LLC; Marty Weiss; Marylynn Mahan; Mesa Glen Holdings LLC; MILROSE CAPITAL LLC; Miracle Mile Healthcare Center LLC; Monette Dizon; Naty Saidoff; Oakland Master Real Estate Holdings LLC; OCCST LLC; Orinda Care Center LLC; P and M Healthcare Holdings Inc.; Pacific Healthcare Group LLC; Paola Dionisio; Panorama Convalescent Hospital Inc.; Parkwest Rehabilitation Center LLC; Philip Weinberger; Phillip Chase; Plummer Ave Holdings LLC; Pomona Valley Rehabilitation Center LLC; Premier Simi Valley LLC; Rachel Ahuva Cohen (Crystal Solorzano); RCOC 9021 LLC; Redwood Healthcare Center LLC; ReNew Health Consulting Services LLC; ReNew

THE CALIFORNIA FALSE CLAIMS ACT – CAL. GOV'T CODE § 12650
7. **VIOLATION OF THE CALIFORNIA FRAUDULENT TRANSFER ACT – CAL. CIV. CODE § 3439.04**
8. **CONVERSION**
9. **FRAUD**
10. **BREACH OF CONTRACT**
11. **BREACH OF FIDUCIARY DUTY**
12. **AIDING AND ABETTING SOLORZANO'S BREACHES OF CONTRACT AND BREACHES OF FIDUCIARY DUTY**
13. **UNJUST ENRICHMENT**
14. **CIVIL CONSPIRACY**
15. **APPOINTMENT OF A RECEIVER**
16. **DISSOLUTION OF THE ENTITY DEFENDANTS**
17. **SALE OF ASSETS TO GENERATE A FUND FOR RECOVERY**
18. **ATTORNEYS' FEES**

5

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Health Group LLC; Ridayo Health Group LLC; RHHCST LLC; Riverside Heights Healthcare Center LLC; Robert Sollis; Roscoe Real Estate Holdings LLC; Route 66 Post Acute LLC; San Antonio Post Acute LLC; San Gabriel Post Acute LLC; Santa Fe Heights Healthcare Center LLC; Schapiro, P.A.; Schneur Zalman Schapiro; Scott Petterson; Sela Healthcare Inc.; SIGMA 5270 LET LLC; SIGMA 5270 LLC; SIGMA 6812 LET LLC; SIGMA INVESTS LLC; Silicon Valley Post Acute LLC; Silverscreen Healthcare Inc.; Simi Valley Healthcare Center LLC; Simi Valley Holdings LLC; SVPA 6812 LLC; SVPA LLC; SVRTC 5270 LLC; SVRTC LLC; The Herman Sanitarium; The Rehabilitation Center of Orange County LLC; Valley Vista Nursing and Transitional Care LLC; Vatsala Sharma; Vineland Real Estate Holdings LLC; VMPA 867 LLC; VMPA LLC; VVNTCST LLC; Wilbur Ave Holdings LLC; Wilbur Ave RE Holdings LLC; Yolanda Gasmen; and DOES 1 through 50, inclusive;

                    Defendants.

6

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

## TABLE OF CONTENTS

I.      **INTRODUCTION** .......................................................................................... **6**

II.     **THE PARTIES** ................................................................................................. **8**

   A.   **Enterprise Management Defendants**.......................................................... **9**

   B.   **Insider Beneficiary Defendants** ............................................................... **15**

   C.   **Investment and Financing Defendants**..................................................... **18**

   D.   **Professional Services Defendants** ............................................................ **19**

   E.   **Legacy Owner Defendants** ....................................................................... **21**

III.    **JURISDICTION AND VENUE**.................................................................... **35**

IV.     **FACTUAL ALLEGATIONS**........................................................................ **37**

   A.   **Formation and Structure of ReNew**........................................................ **37**

   B.   **Expansion of ReNew's Operations** .......................................................... **42**

   C.   **The Fraudulent Scheme & Conspiracy**.................................................... **44**

   D.   **The ReNew Enterprise** ............................................................................. **48**

   E.   **Defendants' Pattern of Racketeering Activity** ........................................ **51**

     i.    Orinda Care Center ................................................................................ 52

     ii.   Griffith Park Rehab ............................................................................... 55

     iii.  Arrowhead Healthcare Center................................................................ 59

     iv.   Riverside Heights Healthcare Center...................................................... 61

     v.    Parkwest Healthcare Center .................................................................. 64

     vi.   Santa Fe Heights Healthcare Center ...................................................... 70

     vii.  The Phillip Chase Schemes.................................................................... 75

     a.    Simi Valley............................................................................................ 76

     b.    Lake Merritt .......................................................................................... 79

     c.    Redwood ............................................................................................... 82

     d.    Orange County ...................................................................................... 86

     e.    Valley Vista .......................................................................................... 89

     viii. Inland Valley Care And Rehabilitation Center........................................ 92

     ix.   The Philip Weinberger Schemes ............................................................ 98

     a.    Holiday Manor ...................................................................................... 100

     b.    Villa Mesa............................................................................................. 102

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

c.  Mesa Glen .................................................................................................. 104

d.  Rancho Mesa................................................................................................ 106

x.  Herman Health Care Center.......................................................................... 108

xi.  Chestnut Ridge Post Acute Care Center ....................................................... 110

xii.  Miracle Mile Healthcare Center.................................................................... 114

xiii.  San Marino Health Care Center .................................................................... 117

F.  **THE UNITED STATES DEPARTMENT OF JUSTICE INVESTIGATION ......... 123**

G.  **ADDITIONAL FRAUDULENT TRANSFERS AND CONCEALMENT EFFORTS 127**

i.  ReNew Health Consulting Services Scheme ................................................. 127

ii.  The Hyde Park Rehabilitation Center Transfer............................................. 129

iii.  The Schapiro Law Firm and CGM Consulting Schemes.............................. 131

H.  **DEFENDANTS' FRAUDULENT CONCEALMENT OF INFORMATION FROM PLAINTIFF .................................................................................................................. 132**

V.  **CAUSES OF ACTION ...................................................................................... 133**

VI.  **JURY DEMAND ............................................................................................... 167**

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

## I.   INTRODUCTION

1.      Plaintiff Chaim Kolodny ("**Kolodny**" or "**Plaintiff**") brings this action to redress a prolonged and continuing scheme orchestrated by Defendant Rachel Ahuva Cohen, formerly known as Crystal Solorzano ("**Solorzano**") and her co-conspirators to unlawfully deprive him of his 50% ownership interest in ReNew Health Group, LLC ("**ReNew**"), a California limited liability company that he co-founded, capitalized, and developed into one of the state's largest healthcare holding enterprises. ReNew, acting through its wholly owned subsidiary, ReNew Health Consulting Services, LLC[1] ("**ReNew Consulting**"), managed and operated dozens of  skilled nursing facilities across California owned by ReNew (collectively, the "**ReNew Group**"). Plaintiff's 50% ownership interest in ReNew conferred upon him a corresponding indirect ownership interest in ReNew Consulting and in each facility within the ReNew Group. Plaintiff personally financed and structured ReNew's formation, jointly negotiated with Solorzano the governing agreement establishing equal ownership and control, and actively managed the enterprise as its Chief Operating Officer until his wrongful exclusion in 2022, through which he sustained direct economic loss and the deprivation of his contractual and governance rights.

2.      Rather than honor her obligations as an equal partner, Solorzano exploited her position as Chief Executive Officer to consolidate control over ReNew and to divert its assets through a coordinated racketeering scheme. Acting in concert with trusted lieutenants, family members, straw owners, professional facilitators, and financial partners, Solorzano orchestrated the fraudulent transfer of ownership interests, directed the submission of false and misleading regulatory filings, and implemented sham financial arrangements designed to misappropriate ReNew's revenues while concealing her control from regulators and from Plaintiff.

---

[1] All entity Defendants are registered California entities unless otherwise stated.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

3.    The scheme was executed through an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), whose participants performed distinct but complementary functions in furtherance of a common unlawful objective. The Enterprise Management Defendants directed the day-to-day operations of ReNew and the ReNew Group and oversaw the preparation and submission of fraudulent regulatory filings. The Insider Beneficiary Defendants accepted nominal equity interests and sham ownership transfers to disguise Solorzano's continued control. The Investment and Financing Defendants supplied capital, acquired, conveyed, or encumbered facility interests, and entered insider leases and consulting arrangements to extract value from the ReNew Group. The Professional Services Defendants, including attorneys, accountants, and consultants, created false documentation, engineered sham agreements, and structured transactions to confer a façade of legitimacy. The Legacy Owner Defendants permitted the use of their names and historical ownership interests in filings with the California Department of Public Health ("**CDPH**") to perpetuate the appearance of non-ReNew ownership. Collectively, these functions advanced the enterprise's continuing effort to deprive Plaintiff of his ownership interests in the ReNew Group.

4.    Through this enterprise, Defendants unlawfully stripped Plaintiff of his 50% ownership stake in ReNew and the attendant economic rights, including his entitlement to distributions of profits and compensation for his service as Chief Operating Officer. Defendants further compounded Plaintiff's injury by operating facilities in his name without authorization and by committing Medicare and Medicaid fraud through the submission of false claims, which resulted in an investigation by the United States Department of Justice and the imposition of a fine of approximately $7 million against ReNew, Solorzano, and Plaintiff. As a direct consequence of the fraudulent acts, schemes, and transfers described herein, Plaintiff has sustained substantial

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

financial losses, including the deprivation of distributions of profits of approximately $10 million per year; the loss of salary and related compensation of approximately $1.6 million per year; the loss of profits exceeding $15 million from the sale of certain skilled-nursing facilities; the loss of 50% of the funds stolen and skimmed from the ReNew Group, which were used to make unlawful payments of approximately $137,500 per month to the Shapiro Law Firm and CGM; and the loss of 50% of the profits generated by ReNew Consulting in managing the skilled-nursing facilities, believed to total approximately $15 million. In the aggregate, Plaintiff's damages are estimated to exceed $255 million.

5. Plaintiff brings this action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), (c), and (d), arising from Defendants' participation in the enterprise and their pattern of racketeering activity, as well as for related state-law claims including fraudulent transfer, fraud, conversion, breach of fiduciary duty, breach of contract, aiding and abetting, and civil conspiracy. Plaintiff seeks treble damages under RICO, punitive damages under state law, the imposition of a constructive trust over assets wrongfully diverted from ReNew and its subsidiaries, and the appointment of a receiver to oversee the dissolution and wind-up of the entities controlled and misappropriated through Defendants' misconduct.

## II.    THE PARTIES

6. Plaintiff Chaim Kolodny is an adult individual residing in the State of California. Plaintiff is the co-founder and 50% owner of ReNew, which he initially capitalized and whose governing agreement he negotiated with Defendant Solorzano to establish equal ownership and joint control. Plaintiff participated in structuring ReNew's subsidiary and affiliated entities, including those comprising the ReNew Group, and served as ReNew's Chief Operating Officer

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

from 2016 until his wrongful exclusion in 2022. As a direct consequence of Defendants' unlawful conduct, Plaintiff's ownership and economic interests in ReNew and its affiliated entities have been substantially and irreparably impaired.

### A. Enterprise Management Defendants

7.     Upon information and belief, Defendant Solorzano resides in and is a citizen of Florida. Solorzano is the co-founder, Chief Executive Officer, and controlling figure of ReNew and ReNew Consulting. Together with Plaintiff, Solorzano formed ReNew as a fifty-fifty venture and jointly negotiated its governing agreement providing for equal ownership and control. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Solorzano, she devised and executed a concerted scheme to fraudulently divest Plaintiff of his ownership interests in the ReNew Group. Acting through a network of family members, employees, and nominal owners, Solorzano directed the submission of false regulatory filings to conceal her continued control and to misrepresent ownership of facilities that remained the property of ReNew and, indirectly, 50% of Plaintiff. Solorzano further diverted enterprise revenues through sham management, consulting, and legal agreements and affiliated entities she controlled, misappropriating assets and profits for her personal benefit and that of her associates at Plaintiff's expense. Through these acts, Solorzano effectively converted Plaintiff's ownership interest in dozens of skilled-nursing facilities, depriving him of profit distributions, compensation, and equity valued at no less than $137 million. Solorzano is the central architect and principal beneficiary of the enterprise's scheme to usurp Plaintiff's ownership, governance, and economic rights in the ReNew Group.

8.     For purposes of effectuating the fraudulent scheme alleged herein, Solorzano, together with the other members of the enterprise, owned, managed, operated, controlled, and/or was otherwise associated with the affairs of the enterprise, through her ownership of, involvement

9

with, and participation in the management and operations of the following Defendant entities: ReNew Health Group LLC, ReNew Health Consulting Services LLC, Health Care Partners I LLC, Pacific Healthcare Group LLC, Her Real Estate Holdings LLC, Assembly Health Group LLC, Astra Healthcare Group LLC, Landstone Health Group LLC, Oakland Master Real Estate Holdings, Roscoe Real Estate Holdings LLC, Ridayo Health Group LLC, Vineland Real Estate Holdings LLC, Simi Valley Holdings, LLC, 6812 Oak Avenue LLC, 5270 E. Los Angeles Holdings LLC, 5270 E. Los Angeles Holdings RE LLC, and 6812 Oak Holdings LLC, as well as additional entities whose identities will be revealed through discovery.

9.    Upon information and belief, Defendant Paola Dionisio ("**Dionisio**") resides in and is a citizen of California. Dionisio has held senior administrative positions within ReNew Group and ReNew Consulting Services. She has served as a principal aide to Defendant Solorzano in matters concerning ownership, management, and regulatory affairs. Acting as Solorzano's principal deputy and co-architect of the enterprise's ownership and control structure, Dionisio purported to hold membership interests in Defendant entities AHCST LLC, AVPA LLC, AVPA 1875 LLC, Cira Real Estate Holdings LLC, LMHCST LLC, OCCST LLC, RCOC 9021 LLC, RHCST LLC, RHHCST LLC, SFHCST LLC, SVPA 6812 LLC, SVPA LLC, SVRTC 5270 LLC, SVRTC LLC, and VVNTCST LLC. These purported interests were used to present false ownership of nursing facilities that are, in truth, owned by the ReNew Group and, indirectly, 50% by Plaintiff. Acting in concert with Solorzano, Dionisio's participation in these arrangements was intended to conceal Solorzano's continued control over the ReNew Group and to facilitate the fraudulent divestiture of Plaintiff's ownership interests therein.

10.   Upon information and belief, Defendant Caroline Ditullio ("**Ditullio**") resides in and is a citizen of California. Ditullio has served for several years as the Chief Clinical Nurse for

10

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

the ReNew Group. In that capacity, Ditullio has been responsible for overseeing clinical operations and compliance functions across facilities owned and operated by the ReNew Group. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Defendant Solorzano, Ditullio knowingly acted in concert with Solorzano to conceal Plaintiff's ownership interests in the ReNew Group. Acting under Solorzano's direction, Ditullio participated in the fraudulent transfer and misrepresentation of ownership interests in various nursing facilities, including by falsely asserting that she held equity interests in entities whose true ownership rests with ReNew and, indirectly, 50% with Plaintiff. Ditullio's participation in these actions was intended to deceive regulators, falsify official records submitted to the CDPH, and facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

11.    Upon information and belief, Defendant Cheryl Petterson ("**C. Petterson**") resides in and is a citizen of California. C. Petterson serves as the Chief Operating Officer of Business Services of ReNew Consulting and, together with her husband, Defendant S. Petterson, has knowingly assisted Defendant Solorzano in the preparation and submission of false and fraudulent administrative and financial disclosures and reports filed with the CDPH on behalf of ReNew. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Solorzano, C. Petterson knowingly acted in concert with Solorzano to conceal Plaintiff's ownership interests in the ReNew Group. Acting under Solorzano's direction, C. Petterson participated in the fraudulent transfer and misrepresentation of ownership interests in nursing facilities wholly owned by ReNew, including through false representations that she held equity interests in entities whose true ownership resided with ReNew and, indirectly, 50% with Plaintiff. C. Petterson's participation in these actions was intended to deceive regulators, falsify

11

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

official records submitted to the CDPH, and facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

12.    Upon information and belief, Defendant Scott Petterson ("**S. Petterson**") resides in and is a citizen of California. S. Petterson is the husband of Defendant Cheryl Petterson and a licensed Certified Public Accountant. He serves as the Chief Financial Officer of ReNew Consulting, where he oversees financial operations and reporting, accounting, bank access, funds transfers, and regulatory reporting for the ReNew Group. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Defendant Solorzano, S. Petterson knowingly acted in concert with Solorzano to conceal Plaintiff's ownership interests in the ReNew Group. Acting under Solorzano's direction, S. Petterson participated in the preparation and submission of false and fraudulent financial and ownership disclosures to the CDPH to disguise the true ownership of nursing facilities held by ReNew and, indirectly, 50% by Plaintiff. S. Petterson's participation in these actions was intended to deceive regulators, falsify official records, and facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

13.    Upon information and belief, Defendant Dana Lance ("**Lance**") resides in and is a citizen of California. Lance currently serves as the Chief Operating Officer of ReNew Consulting. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Defendant Solorzano, Lance knowingly acted in concert with Solorzano to execute a scheme designed to fraudulently divest Plaintiff of his ownership interests in the ReNew Group. Acting under Solorzano's direction, Lance falsely asserted ownership interests in entities whose true ownership rests with ReNew, and, indirectly, 50% with Plaintiff. Lance also knowingly submitted, or caused to be submitted, false regulatory filings to the CDPH representing

12

that she owns ownership interests in entities wholly owned by the ReNew Group, for the purpose of concealing Solorzano's continued and unlawful control over the ReNew Group and with the intent to mislead regulators and to facilitate the fraudulent divestiture of Plaintiff's ownership interests.

14.    Upon information and belief, Defendant Elyssia Musolino ("**Musolino**") resides in and is a citizen of California. Musolino currently serves as the Chief Legal Officer and General Counsel of ReNew and was a principal architect of the fraudulent restructuring of the ReNew Group and the manner in which its assets are held through its purported members. Beginning in or about 2021, following the CDPH's repeated rejection of change-of-ownership applications submitted by Defendant Solorzano, Musolino has knowingly acted in concert with Solorzano to draft the bulk of legal documents necessary to execute a scheme designed to fraudulently divest Plaintiff of his ownership interests in the ReNew Group and to falsely represent that Solorzano holds ownership interests in nursing facilities that are, in fact, wholly owned by ReNew and, indirectly, 50% by Plaintiff. Acting under Solorzano's direction, Musolino participated in the preparation and submission of false records to the CDPH, representing that she owns ownership interests in entities wholly owned by the ReNew Group, for the purpose of concealing Solorzano's continued and unlawful control over the ReNew Group and with the intent to mislead regulators and to facilitate the fraudulent divestiture of Plaintiff's ownership interests.

15.    Upon information and belief, Defendant Monette Dizon ("**Dizon**") resides in and is a citizen of California. Dizon is a licensed clinical nurse who, during the period relevant herein, managed clinical audits and compliance functions for facilities within the ReNew Group. Following the CDPH's refusal to approve Solorzano as a licensee, Dizon acted as the designated licensee in connection with change-of-ownership applications for certain facilities, including San

13

Marino Healthcare Center, Simi Valley Healthcare Center, and Asistencia Villa Post Acute. In that capacity, Dizon knowingly participated in regulatory filings and licensing arrangements that enabled Solorzano and affiliated participants in the enterprise to retain operational control over those facilities while obscuring true ownership and control from regulators, thereby furthering the enterprise's scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

16. Upon information and belief, Defendant Vatsala Sharma ("**Sharma**") resides in and is a citizen of California. Sharma purports to own Defendant Eleos and is employed by, or otherwise compensated by, ReNew, the ReNew Group and/or ReNew Consulting for each nursing facility that is, in fact, wholly owned by ReNew and indirectly, 50% by Plaintiff. Sharma is also the owner of Gateways Rehab, the company which has been the primary vendor of rehabilitation services to all Renew facilities. Sharma has knowingly and falsely represented that these facilities are owned and managed by ReNew Consulting, when in truth, they are not. Such misrepresentations were made for the purpose of concealing the true ownership and control of the ReNew Group's facilities and facilitating the fraudulent divestiture of Plaintiff's ownership interests. Defendant Sharma, together with the other members of the enterprise controls and/or manages Defendant entities Eleos Health Care LLC, and Renew Health Consulting Services LLC, through which the affairs of the enterprise were conducted.

17. Upon information and belief, Defendant Yolanda Gasmen ("**Gasmen**") resides in and is a citizen of California. Gasmen is employed by ReNew and has, for several years, worked in marketing and facilities operations for the ReNew Group. Beginning in or about 2023, Gasmen knowingly acted in concert with Defendants Solorzano and Sharma to submit filings to the CDPH falsely representing that she holds ownership interests in nursing facilities that are, in fact, wholly

14

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

owned by ReNew and, indirectly, 50% by Plaintiff. These false filings were made with the intent to mislead regulators as to Solorzano's role in ReNew Consulting's management of the ReNew Group facilities and in furtherance of the enterprise's scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

18.     Upon information and belief, Defendant John Nguyen ("**Nguyen**") resides in and is a citizen of California. Nguyen is a licensed physician. Nguyen is also the owner of Defendant ECI and purports to hold ownership interests in Griffith Park Healthcare LLC.

19.     Defendants Solorzano, Dionisio, Ditullio, C. Petterson, S. Petterson, Lance, Musolino, Dizon, Sharma, Gasmen, and Nguyen are collectively referred to herein as the "**Enterprise Management Defendants**."

### B.  Insider Beneficiary Defendants

20.     Upon information and belief, Defendant Jaden Rust ("**Jaden**") resides in and is a citizen of California. Jaden is the son of Defendant Solorzano and has knowingly acted in concert with her to fraudulently divest Plaintiff of his ownership interests in the ReNew Group through a series of sham transfers purporting to convey to him equity interests in nursing facilities that are, in fact, wholly owned by ReNew and, indirectly, 50% by Plaintiff. These transfers were intended to create the false appearance of legitimate ownership by Jaden, to mislead regulators and third parties, and to conceal Solorzano's continued and unlawful control over the ReNew Group in furtherance of the enterprise's scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

21.     Upon information and belief, Defendant Paul James Rust ("**PJ**") resides in and is a citizen of California. PJ is the father of Defendant Solorzano and has knowingly acted in concert with her to fraudulently divest Plaintiff of his ownership interests in the ReNew Group through a series of sham transfers purporting to convey to him ownership interests in nursing facilities that

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

are, in fact, wholly owned by ReNew and, indirectly, 50% by Plaintiff. These purported transfers were made to create the false appearance of legitimate ownership by PJ and to further the enterprise's scheme to conceal Solorzano's continued and unlawful control over the ReNew Group and to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

22.    Upon information and belief, Defendant Paul James Rust III ("**PJ III**") resides in and is a citizen of California. PJ III is the brother of Defendant Solorzano and is known to be a business partner of Defendant Roberts. PJ III knowingly acted in concert with Solorzano and Roberts to fraudulently obtain a 50% ownership interest in Defendant Hyde Park Rehabilitation Center LLC ("**HPRC**") without providing any consideration. This transfer was effectuated through the execution of a false Amended and Restated Operating Agreement for HPRC dated May 1, 2023, which falsely represented that PJ III owned 50% of HPRC when, in fact, he did not. In furtherance of the same scheme, Solorzano, PJ III, and Roberts caused the preparation of a sham sublease purporting to lease HPRC's facility, including its ability to generate more than $13.7 million in annual revenue and over $2.3 million in annual EBITDA, for a monthly rent payment of only $5,000, or $60,000 annually, representing less than 2% of EBITDA. This fraudulent sublease was intended to divest Plaintiff of the value of his ownership interest in HPRC and forms part of the enterprise's ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

23.    Upon information and belief, Defendant Jason Roberts ("**Roberts**") resides in and is a citizen of California. Roberts is believed to be a business partner of Defendant PJ III and acted in concert with Defendants Solorzano and PJ III to fraudulently obtain a 50% ownership interest in HPRC without providing any consideration. This transfer was effectuated through the execution of a false Amended and Restated Operating Agreement for HPRC dated May 1, 2023, which falsely

16

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

represented that Roberts owned 50% of HPRC when, in fact, he did not. In furtherance of the same scheme, Solorzano, PJ III, and Roberts caused the preparation of a sham sublease purporting to lease HPRC's facility, including its ability to generate more than $13.7 million in annual revenue and over $2.3 million in annual EBITDA, for a monthly rent payment of only $5,000, or $60,000 annually, representing less than 2% of EBITDA. This fraudulent sublease was designed to strip value from HPRC, deprive Plaintiff of the economic benefit of his ownership interest, and forms part of the enterprise's ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

24.     Upon information and belief, Defendant Amanda Hodges ("**Hodges**") resided in and was a citizen of California at the times relevant to this complaint. Hodges is a long-time friend of Defendant Solorzano and, during the period relevant hereto, was married to Defendant Solorzano's brother. During the relevant period, she was employed by ReNew as an Executive Assistant and acted in concert with Solorzano and others to fraudulently divest Plaintiff of his ownership interests in the ReNew Group through the execution of sham transfers purporting to convey to her ownership interests in nursing facilities that are, in fact, wholly owned by the ReNew Group and, indirectly, 50% by Plaintiff. Acting in furtherance of this fraudulent scheme and acting under the direction of Defendant Solorzano, Hodges prepared and caused to be submitted false ownership records to the CDPH that falsely represented that she held ownership interests in certain ReNew facilities, when in truth, she did not. These actions were undertaken to deceive regulators, conceal Solorzano's continued control, and form part of the enterprise's ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

25.     Defendants Jaden, PJ, PJ III, Roberts, and Hodges are collectively referred to herein as the "**Insider Beneficiary Defendants**."

17

## C. Investment and Financing Defendants

26.     Upon information and belief, Defendant Jacob Sod ("**Sod**") resides in and is a citizen of New York. Sod is a prominent figure in both the New York and California skilled-nursing facility industries and maintains a longstanding personal and professional relationship with Defendant Solorzano, through which he has gained access to and influence over the operations of the ReNew Group.

27.     Since at least 2017, Sod has knowingly partnered with, and/or acted as an undisclosed straw buyer on behalf of, Solorzano in her ongoing scheme to divest Plaintiff of his ownership interests in the ReNew Group and to deceive the CDPH by, on information and belief, causing entities under his control to purchase the fee interests in one or more skilled-nursing facilities then under lease to the ReNew Group. Such entities include, but are not limited to, Sigma 5270 Let LLC, Sigma 6812 LET LLC, JLS Equities, LLC, JLS SM Holdings LLC, 5270 E Los Angeles Avenue LLC, and Milrose Capital LLC, which Sod used to acquire and hold interests in facilities associated with the ReNew Group. Acting in concert with Solorzano, Sod participated in the subsequent sale of the fee and leasehold interests in at least one such facility for a multi-million-dollar profit, in violation of the Governing Agreement. The proceeds from those transactions were converted by Sod and Solorzano for their own benefit and without any consideration to Plaintiff. Through these actions, Sod knowingly facilitated and profited from the enterprise's ongoing scheme to divest Plaintiff of his ownership interests in the ReNew Group.

28.     Upon information and belief, Defendant Naty Saidoff ("**Saidoff**") resides in and is a citizen of California. Saidoff is an entrepreneur and real estate investor and is the founder and principal owner of Capital Foresight Limited Partnership. In or about the period when ReNew assumed operational control of Park West Rehabilitation Center, a facility formerly associated with Defendant Philip Chase, Solorzano and her affiliates sought to acquire the related real estate

18

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

holding entity that owned the real property. To finance that acquisition and related restructuring, Solorzano enlisted Saidoff to provide, arrange, or guarantee capital through loan agreements, equity contributions, and interstate wire transfers to entities affiliated with the ReNew Group. Upon information and belief, these financing arrangements encumbered or restructured facility-level interests without Plaintiff's knowledge or consent. Disputes subsequently arose between Solorzano and Saidoff regarding the terms, control rights, and economic allocations of the Park West financing, resulting in arbitration proceedings between them, during which Defendant Sod assisted Saidoff in preserving or restructuring his financial position. Through these financing transactions, agreements, and related wire communications and transfers, Saidoff knowingly supplied substantial capital that enabled the transfer, encumbrance, and diversion of value from ReNew, thereby furthering the enterprise's scheme to dilute, impair, and misappropriate Plaintiff's 50% ownership interest in the ReNew Group.

29.    Defendants Sod and Saidoff, are collectively referred to herein as the "**Investment and Financing Defendants**."

**D.  Professional Services Defendants**

30.    Upon information and belief, Defendant Schneur Zalman Schapiro ("**Schapiro**") resides in and is a citizen of New York. Schapiro is an attorney licensed in New York and Pennsylvania and is the owner of Defendants Schapiro P.A. and CGM, a consulting firm. During the relevant period, Schapiro also served as the manager of Sigma 5270 LET LLC and Sigma Invests LLC, a Florida limited liability company, through which he conducted and participated in the affairs of the enterprise in connection with the management of certain facilities operated by the ReNew Group. Schapiro maintains a longstanding personal and professional relationship with Defendant Sod and knowingly acted in concert with Defendants Solorzano, Sod, and affiliated participants in the enterprise to execute sham retention agreements with the ReNew Group and

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

ReNew Consulting, under which he and CGM received substantial monthly payments for no legitimate legal or consulting services. These arrangements were designed to divert enterprise funds for the personal benefit of Solorzano, Sod, Schapiro, and other participants in the enterprise and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

31.     Defendant Schapiro, P.A. ("**Schapiro Law Firm**") is a professional association organized under the laws of the State of New York with its principal place of business in New York, New York, and registered to do business in New York, Pennsylvania, and Florida. Upon information and belief, the Schapiro Law Firm is owned and controlled by Schapiro and purports to provide legal services. In or about January 2021, the Schapiro Law Firm, acting through Schapiro, knowingly entered into a sham retention agreement with Defendants Solorzano and Sod, purporting to represent them in connection with the sale and transfer of operations of twenty-six skilled-nursing facilities. Pursuant to that agreement, the Schapiro Law Firm was paid approximately $62,500 per month by ReNew, despite performing no bona fide legal services. The funds paid to the Schapiro Law Firm under this sham agreement were diverted and shared amongst Solorzano, Sod, Schapiro, and affiliated participants in the enterprise as part of a scheme to misappropriate proceeds from skilled-nursing facilities wholly owned by ReNew and, indirectly, 50% by Plaintiff. These payments were used to channel enterprise proceeds and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

32.     Defendant CGM Consulting Corp. ("**CGM**") is a limited liability company organized under the laws of the State of Delaware with its principal office in Pennsylvania. CGM is owned and controlled by Defendant Schapiro and purports to provide consulting services. In or

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

about January 2024, CGM, acting through Schapiro, knowingly entered into a sham retention agreement with Defendants Solorzano, Sod, and Sharma, purportedly to provide business and operational consulting services to ReNew Consulting, a California entity. Pursuant to that agreement, CGM was paid approximately $83,500 per month, despite performing no bona fide consulting services. The funds paid to CGM under this sham agreement were diverted and shared amongst Solorzano, Sod, Schapiro, CGM, and affiliated participants in the enterprise as part of a scheme to misappropriate proceeds from facilities wholly owned by ReNew and, indirectly, 50% by Plaintiff. These payments were used to channel enterprise proceeds and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

33.     Defendants Schapiro, together with affiliated entity, Schapiro Law Firm, CGM, and are collectively referred to herein as the "**Professional Services Defendants**."

### E.  Legacy Owner Defendants

34.     Upon information and belief, Defendant Phillip Chase ("**Chase**") resides in and is a citizen of California. Chase is the trustee and/or a beneficiary of Chase Family Trust and serves as Senior Advisor to Defendant Solorzano, the Chief Executive Officer of ReNew. In that capacity, he advises ReNew's executive management on matters of public policy and healthcare regulation. A former Chairman of the California Association of Health Facilities and national officer of the American Health Care Association, Chase was recruited by Solorzano and Dionisio following his sale of five skilled-nursing facilities (the "**Chase SNFs**") to ReNew in or about 2016. After the CDPH rejected Solorzano's change-of-ownership applications, Chase knowingly acted in concert with Solorzano and other affiliated participants in the enterprise to prepare and submit false regulatory filings representing that his companies continued to own the Chase SNFs, when in fact they had been sold to the ReNew Group. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the

21

ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Chase is the sole nursing home licensee of the Inland Valley Facility, the Chestnut Ridge Facility, and the Miracle Mile Facility. Additionally, Chase owned and/or controlled Defendant entity Chase Healthcare Strategies LLC, through which he conducted and participated, directly and indirectly, in the affairs of the enterprise in furtherance of the fraudulent scheme described herein.

35.    Upon information and belief, Defendant Kevin Cablayan ("**Cablayan**") resides in and is a citizen of California. Since approximately September 2010, Cablayan has been the owner and principal control person of 3GENCARE, Inc., which owned the San Marino Health Care Center until its sale to the ReNew Group in or about July 2019. Following that sale, Cablayan knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise to submit false regulatory filings to the CDPH representing that 3GENCARE, Inc. continued to own the San Marino Health Care Center, when in fact it did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these actions, Cablayan conducted and participated in the affairs of the enterprise.

36.    Upon information and belief, Defendant Philip Weinberger ("**Weinberger**") resides in and is a citizen of California. Weinberger is the husband of Defendant Mahan, is employed by ReNew, and is the owner of Defendant Silverscreen Healthcare Inc. ("**Silverscreen**"). In or about September 1, 2018, Silverscreen, acting through Weinberger as seller, entered into an agreement to sell to the ReNew Group certain skilled-nursing facilities, including Defendant Asistencia Villa Post Acute LLC, the Holiday Manor Facility, the Mesa Glen Facility, the Rancho Mesa Facility,

22

and the Villa Mesa Care Center. Additionally, Weinberger operates the Riverside Heights Facility and Arrowhead Healthcare Center. After the CDPH rejected Defendant Solorzano's change-of-ownership applications for those facilities, Weinberger knowingly acted in concert with Defendants Solorzano, Mahan, and other affiliated participants in the enterprise to prepare and submit false regulatory filings to the CDPH representing that Silverscreen and its affiliates continued to own the facilities, when in fact they did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these actions, Weinberger conducted and participated in the affairs of the enterprise.

37.     Upon information and belief, Defendant Marylynn Mahan ("**Mahan**") resides in and is a citizen of California. Mahan is the ex-wife of Defendant Weinberger and is affiliated with Silverscreen. In or about September 1, 2018, Silverscreen, acting through Mahan and Weinberger as sellers, entered into an agreement to sell to the ReNew Group certain skilled-nursing facilities, including Defendant Asistencia Villa Post Acute LLC, the Holiday Manor Facility, the Mesa Glen Facility, the Rancho Mesa Facility, and the Villa Mesa Care Center. Additionally, Mahan and Weinberger operate the Riverside Heights Facility and Arrowhead Healthcare Center.. After the CDPH rejected Defendant Solorzano's change-of-ownership applications for those facilities, Mahan knowingly acted in concert with Defendants Solorzano, Weinberger, and other affiliated participants in the enterprise to prepare and submit false regulatory filings to the CDPH representing that Silverscreen and its affiliates continued to own the facilities, when in fact they did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the ongoing scheme to effect the

23

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these actions, Mahan conducted and participated in the affairs of the enterprise.

38.    Upon information and belief, Defendant Marty Weiss ("**M. Weiss**") resides in and is a citizen of California. During the relevant period, M. Weiss, together with his wife, Defendant H. Weiss, owned and controlled entities through which they held fee interests in real property leased to skilled-nursing facilities associated with the ReNew Group, including the Panorama facility located in Griffith Park (the "**Panorama Facility**") and, previously, the Mesa Glen Facility. In that capacity, M. Weiss and H. Weiss served as landlords for those facilities and received rent from operating entities affiliated with the ReNew Group. After the CDPH rejected Defendant Solorzano's change-of-ownership applications for those facilities, M. Weiss knowingly acted in concert with Solorzano and H. Weiss to prepare and submit regulatory filings to the CDPH falsely representing that M. Weiss and H. Weiss owned the Panorama Facility and/or the Mesa Glen Facility when, in fact, they did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and formed part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these activities, M. Weiss conducted and participated in the affairs of the enterprise.

39.    Upon information and belief, Defendant Hadassa Weiss ("**H. Weiss**") resides in and is a citizen of California. During the relevant period, H. Weiss, together with her husband, M. Weiss, owned and controlled entities through which they held fee interests in real property leased to skilled-nursing facilities associated with the ReNew Group, including the Panorama facility and, previously, the Mesa Glen Facility. In that capacity, H. Weiss and M. Weiss served as landlords for those facilities and received rent from operating entities affiliated with the ReNew Group. After

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

the CDPH rejected Solorzano's change-of-ownership applications for those facilities, H. Weiss knowingly acted in concert with Solorzano and M. Weiss to prepare and submit regulatory filings to the CDPH falsely representing that H. Weiss and M. Weiss owned the Panorama Facility and/or the Mesa Glen Facility when, in fact, they did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these activities, H. Weiss conducted and participated in the affairs of the enterprise.

40.    Upon information and belief, Defendant Robert Sollis ("**Sollis**") resides in and is a citizen of California. Since June 30, 1996, Sollis has managed and controlled Defendants Paul D. Sollis Trust ("**PDS Trust**") and Sophia H. Sollis Trust ("**SHS Trust**"), which owned the Herman Health Care Center prior to its acquisition by the ReNew Group. Following that acquisition, Sollis knowingly conspired with Defendants Solorzano, and the PDS and SHS Trusts to submit false filings to the CDPH representing that PDS Trust and SHS Trust continued to own the Herman Health Care Center, when in fact they did not. These actions were undertaken to mislead regulators, conceal Solorzano's continued and unlawful control over the ReNew Group, and form part of the ongoing scheme to effect the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these activities, Sollis conducted and participated in the affairs of the enterprise.

41.    Defendant Eleos Health Care, LLC ("**Eleos**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Eleos filed its initial registration with the California Secretary of State on December 9, 2021. As of the date of this pleading, it has not filed the required Statement of Information and is delinquent by more than three years. Accordingly, the membership of Eleos remains unknown.

25

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Eleos holds itself out as a healthcare management and operating company for skilled-nursing facilities and knowingly acted in concert with Defendant Solorzano and other members of the enterprise as a nominal operator and ownership vehicle used to mask the enterprise's control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these activities, Eleos conducted and participated in the affairs of the enterprise.

42.    Defendant The Herman Sanitarium ("**THS**") is a stock corporation organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Cynthia Sollis is identified as an officer of THS, and Mandy Sollis is identified as both an officer and director. Cynthia Sollis is the wife of Defendant Sollis, and Mandy Sollis is a relative of Defendant Sollis, the precise nature of which is presently unknown. THS holds ownership interests in healthcare facilities and related operations and, upon information and belief, knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise as a nominal or legacy owner to preserve the enterprise's standing with regulators and vendors and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Through these activities, THS conducted and participated in the affairs of the enterprise.

43.    Defendant Inland Valley Partners, LLC ("**IVP**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Chase is the sole manager or member of IVP. IVP serves as an investment and holding entity for interests in skilled-nursing facilities and knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise to hold and transfer facility interests in furtherance of enterprise-directed ownership structures and to facilitate the fraudulent

26

divestiture of Plaintiff's ownership interests in the ReNew Group. Such entities include, but are not limited to, Defendant entities IVCR LLC, a Delaware limited liability company; IVCR 250 LLC, a Delaware limited liability company; and Pomona Valley Rehabilitation Center LLC, each of which is involved in or affiliated with the ownership and/or operations of IVP. Through these entities, IVP participated in and facilitated the affairs of the enterprise in furtherance of the fraudulent scheme described herein.

44.    Defendant Mesa Glen Holdings, LLC ("**MGH**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendants Weinberger and Mahan are the managers or members of MGH. MGH serves as a facility owner and real estate holding company for a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise as a nominal owner in regulatory and corporate filings to maintain enterprise control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Defendant Route 66 Post Acute LLC is involved in or affiliated with the ownership and/or operation of MGH. Through this entity, MGH participated in and facilitated the affairs of the enterprise in furtherance of the fraudulent scheme described herein.

45.    Defendant Miracle Mile Healthcare Center, LLC ("**MMH**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Chase is the sole manager or member of MMH. MMH is a facility-level entity tied to the operation of a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise as a licensing and

27

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

ownership vehicle to maintain enterprise control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

46.     Defendant OCCST LLC ("**OCCST**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of OCCST. OCCST serves as a holding entity for ownership and license rights associated with a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise as a nominal owner in filings with the CDPH to conceal true control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

47.     Defendant P and M Health Care Holdings, Inc. ("**P&M**") is a stock corporation organized under the laws of the State of California, with its principal place of business in California. P&M serves as a holding entity for ownership and license rights associated with a skilled-nursing facility within the ReNew Group. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendants Weinberger and Mahan are the sole officers and directors of P&M and its beneficial owners. P&M knowingly acted in concert with Defendant Solorzano and affiliated participants in the enterprise as a nominal owner in filings with the CDPH to conceal true control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

48.     Defendant RHCST LLC ("**RHCST**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of RHCST. RHCST serves as a shell and holding entity

28

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

tied to a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise to present a nominal ownership structure to regulators and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

49.    Defendant SVPA 6812 LLC ("**6812**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of 6812. 6812 serves as a special-purpose entity associated with facility ownership and licensing within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise to hold and transfer ownership interests as directed by the enterprise and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

50.    Defendant SVPA LLC ("**SVPA**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Ditullio is the sole manager or member of SVPA. SVPA serves as a holding and operating company for healthcare facility interests within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise as a nominal owner and operator aligned with enterprise control and intended to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

51.    Defendant Santa Fe Heights Healthcare Center, LLC ("**SFH**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

of State, Defendant Solorzano is the sole manager or member of SFH. SFH serves as the nominal licensee and operator of a skilled-nursing facility within the ReNew Group and knowingly acted in concert with other affiliated participants in the enterprise to maintain enterprise dominance and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

52.     Defendant SFHCST LLC ("**SFHCST**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of SFHCST. SFHCST serves as a holding entity related to Santa Fe Heights and affiliated facilities within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise as a title and licensing vehicle to conceal actual control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

53.     Defendant AVPA LLC ("**AVPA**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Ditullio is the sole manager or member of AVPA. AVPA serves as a facility and asset holding company within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise to position ownership interests in alignment with enterprise objectives and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

54.     Defendant AVPA 1875 LLC ("**1875**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of 1875. 1875 serves as a special-purpose entity connected

30

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

to facility real estate and operations within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise as a conduit for enterprise-directed ownership transfers and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

55.     Defendant Chestnut Ridge Post Acute LLC ("**CRA**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Chase is the sole manager or member of CRA. CRA is associated with the ownership and operation of a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise by serving as a titular owner to mask enterprise control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group. Defendant entities and CRPA LLC and CRPA 525 LLC are also involved or affiliated with the ownership and/or operations of CRA.

56.     Defendant Extended Care, Inc. ("**ECI**") is a stock corporation organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Nguyen is the sole officer and director of ECI and its beneficial owner. ECI operates as a healthcare management and operating company within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise by entering into arrangements that aligned facility operations with enterprise directives and facilitated the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

57.     Defendant RCOC 9021 LLC ("**9021**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon

31

information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of 9021. 9021 serves as a special-purpose holding entity related to facility interests within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise to park ownership interests for enterprise benefit and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

58.    Defendant SVRTC 5270 LLC ("**5270**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of 5270. 5270 serves as a special-purpose entity related to facility ownership and licensing within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise in ownership structuring that furthered enterprise objectives and facilitated the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

59.    Defendant SVRTC, LLC ("**SVRTC**") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Ditullio is the sole manager or member of SVRTC. SVRTC serves as a holding and operating entity connected to a skilled-nursing facility within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise as part of the nominal ownership framework maintained by the enterprise to conceal true control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

60.      Defendant Sela Healthcare Inc. ("**Sela**") is a stock corporation organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendants Weinberger and Mahan are the sole officers and directors of Sela and its beneficial owners. Sela is a healthcare company associated with ownership and management functions within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise by contracting for or aligning operations to sustain enterprise control and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

61.      Defendant VVNTCST LLC ("**VVN**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of VVN. VVN serves as a holding entity for ownership and licensing rights within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise by maintaining nominal title to facilitate enterprise objectives and to effectuate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

62.      Defendant AHCST LLC ("**AHCST**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of AHCST. AHCST serves as a shell and holding company tied to facility interests within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise by holding interests presented to

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

regulators to conceal true ownership and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

63.     Defendant Hyde Park Rehabilitation Center, LLC ("**HPRC**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendants Roberts and PJ III are the managers or members of HPRC. HPRC serves as the facility-level entity for the Hyde Park rehabilitation center within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise through operating and ownership documents used to exclude Plaintiff and to maintain enterprise control and facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

64.     Defendant RHHCST LLC ("**RHH**") is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Upon information and belief, and as reflected in filings with the California Secretary of State, Defendant Dionisio is the sole manager or member of RHH. RHH serves as a holding entity for interests associated with facilities within the ReNew Group and knowingly acted in concert with Defendant Solorzano and other affiliated participants in the enterprise as a nominal titleholder to support enterprise-directed filings and to facilitate the fraudulent divestiture of Plaintiff's ownership interests in the ReNew Group.

65.     Defendants Chase, Weinberger, Mahan, M. Weiss, and H. Weiss, together with affiliated entities Eleos, THS, IVP, MGH, MMH, P&M, and Sela, are collectively referred to herein as the "**Legacy Owner Defendants**."

34

66.     The true names and capacities of Defendants DOES 1 through 50 are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a fictitiously named Defendant is in some manner responsible for the events and happenings herein referred to and caused the damage to Plaintiff as herein alleged. When Plaintiff ascertains the true names and capacities of DOES 1 through 50, inclusive, Plaintiff will seek leave of this Court to amend this Complaint to allege their true names and capacities.

## III.    JURISDICTION AND VENUE

67.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including 28 U.S.C. § 1961 *et. seq.*, the Racketeer Influenced and Corrupt Organizations ("**RICO**") Act.

68.     This Court further has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claims that they form part of the same case or controversy within the meaning of Article III of the United States Constitution.

69.     Exercise of personal jurisdiction over Schapiro is reasonable and proper because he purposefully directed his unlawful conduct at, and has had extensive contacts with, the State of California, by contracting with, and receiving payments from, California-based entities and participating in racketeering acts centered in this District.

70.     This Court's exercise of personal jurisdiction over the Schapiro Law Firm is reasonable and proper because it purposefully directed its unlawful conduct at, and has had extensive contacts with, the State of California, by executing sham retention agreements with

35

California-based entities, receiving payments derived from racketeering acts centered in this District, and serving as a conduit for the distribution of enterprise proceeds within this forum.

71.     This Court's exercise of personal jurisdiction over CGM is reasonable and proper because it purposefully directed its unlawful conduct at, and has had extensive contacts with, the State of California, by executing and performing sham consulting agreements with California-based entities, receiving payments derived from racketeering acts centered in this District, and channeling enterprise proceeds through this forum.

72.     This Court's exercise of personal jurisdiction over Sod is reasonable and proper because he purposefully directed his unlawful conduct at, and has had extensive contacts with, the State of California, by causing entities under his control to acquire fee interests in California nursing facilities leased to the ReNew Group, participating in the subsequent sale of fee and leasehold interests for multi-million-dollar profits, executing and communicating regarding those transactions with California-based entities, deceiving the CDPH, and receiving and distributing proceeds derived from racketeering acts centered in this District.

73.     This Court's exercise of personal jurisdiction over the remaining Defendants who are domiciled in California, organized under its laws, or maintain their principal place of business within the State of California is proper.

74.     Individuals domiciled in California are subject to the general jurisdiction of this Court. Likewise, corporate and other juridical entities organized under the laws of California or maintaining their principal place of business within this State are properly deemed at home in this forum for purposes of general jurisdiction.

36

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

75.    In addition, this Court possesses specific jurisdiction over such Defendants because the claims asserted herein arise directly from, and are substantially related to, their forum-directed conduct and acts occurring within this District.

76.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3) for those Defendants who reside outside of the State of California. Venue is also proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1)-(3) because at least one Defendant resides in this district, a substantial part of events giving rise to this action occurred in this district, and this Court has personal jurisdiction over at least one Defendant named herein. Venue is also proper under 18 U.S.C. § 1965 because several Defendants reside in this district and the ends of justice require the joinder of all other Defendants named herein in this district.

## IV.    FACTUAL ALLEGATIONS

### A.  Formation and Structure of ReNew

77.    Plaintiff and Solorzano first met in 2007 while both were employed by Brius Healthcare Services ("**Brius**"), a California nursing-home enterprise owned and controlled by Shlomo Rechnitz. Plaintiff joined Brius in 2006 and rose to the position of Chief Operating Officer, where he was instrumental in expanding Brius into one of the largest nursing-home operators in California, overseeing more than eighty skilled-nursing facilities across the state.

78.    Although Brius experienced substantial growth under Plaintiff's management, Rechnitz implemented aggressive cost-cutting measures that attracted widespread criticism from regulators and the media for creating unsafe and unsanitary conditions within its facilities. By 2015, Brius had become a focus of numerous investigations and public concern regarding substandard care, and Rechnitz's reputation throughout the industry had deteriorated to the point that his operations were colloquially referred to as the "Shlomo Stink."

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

79.     In early 2013, following Solorzano's termination from Brius, Plaintiff and Solorzano resolved to establish an independent healthcare enterprise that would compete with Rechnitz's organization while adhering to higher operational and ethical standards. At that time, Rechnitz continued to wield substantial influence over the skilled-nursing market in California and was known to retaliate against perceived competitors. To safeguard the viability of their new venture, Plaintiff and Solorzano agreed to maintain strict confidentiality regarding its formation. Plaintiff also sought to distance the enterprise from Rechnitz's negative reputation, which could have impaired its credibility, deterred potential business relationships, and hindered its growth. Pursuant to this plan, Solorzano would be outwardly presented as the chief executive of the venture, while Plaintiff would provide the capital, business expertise, and managerial oversight.

80.     Acting in furtherance of that plan, Plaintiff and Solorzano caused ReNew to be formed on December 19, 2014, as a limited liability company organized under the laws of the State of California (California Secretary of State File No. 201435610101). Plaintiff's office, located at 6100 Wilshire Boulevard, Suite 1260, Los Angeles, California, was designated as ReNew's principal place of business. A copy of the Articles of Organization for ReNew is attached hereto as Exhibit "1." (Ex. 1)

81.     On June 15, 2015, Plaintiff and Solorzano executed a formal written governing agreement (the "**Governing Agreement**") defining their respective ownership, management, and control rights in ReNew and all related or successor entities. The Governing Agreement, attached hereto as Exhibit "2," (Ex. 2) provided that Plaintiff and Solorzano would each hold a 50% ownership interest in ReNew "and all businesses and all other associated or subsequent LLC names and entities created subsequently," and that the agreement would remain in effect "for the life of" both parties.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

82.     Pursuant to the Governing Agreement, profits and losses were to be shared equally between Plaintiff and Solorzano. Both were required to participate jointly in the management, control, and direction of the business, and all decisions were to be made only "upon a vote of the majority of the partners with each partner having a vote equal to each other partner."

83.     The Governing Agreement designated Solorzano as the Chief Executive Officer of ReNew and Plaintiff as the Chief Operating Officer and "principal managing partner." Plaintiff was required to "consult and confer as far as practicable with the non-managing partners on all important matters," and was expressly granted the right to veto any of Solorzano's decisions.

84.     The Governing Agreement required that certain significant company actions be undertaken only upon the affirmative vote "of a majority in capital interest of the partners," which, given their equal ownership, effectively required unanimity. Such actions included, among others: (a) Borrowing money in the company's name or financing any portion of the purchase price of company properties; (b) Transferring, hypothecating, compromising, or releasing any company claim except upon payment in full; (c) Selling, leasing, or hypothecating company property, or entering into any agreement for such purpose; and (d) Knowingly suffering or permitting any act whereby company property might be seized, attached, or taken in execution.

85.     The Governing Agreement further required that all company funds be deposited in ReNew's name and withdrawn only on the joint signatures of both Plaintiff and Solorzano. It expressly prohibited either partner from "compet[ing] with or materially interfer[ing] with the business" of the company or otherwise acting inconsistently with the obligations imposed by the agreement.

86.     The Governing Agreement required Solorzano to devote her full time and attention to the conduct of ReNew's business and prohibited her from engaging in any other compensated

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

business activity or holding any outside ownership interest as an employee, officer, agent, proprietor, partner, or stockholder.

87.     With respect to the admission of new partners, the Governing Agreement required the written approval of both Plaintiff and Solorzano and mandated that any new partner execute a written supplement to the agreement binding them to all of its terms.

88.     The Governing Agreement also prohibited either partner from transferring, assigning, or otherwise encumbering his or her ownership interest without the written consent of the other partner.

89.     It included an indemnification clause requiring each partner to indemnify and hold harmless the company and the other partner from any expense or liability arising from that partner's negligence or misconduct to the extent such liability exceeded the company's insurance coverage.

90.     The Governing Agreement established procedures for the annual distribution of profits, requiring distributions to be made within ninety (90) days after the close of each fiscal year unless otherwise agreed in writing. In the absence of such agreement, 100% of profits were to be distributed equally. Any withdrawal exceeding a partner's distributable share was deemed a loan from the company, repayable with interest.

91.     The Governing Agreement also included a prevailing-party provision entitling the partner who successfully enforced the agreement through litigation to recover reasonable attorneys' fees and costs from the non-prevailing partner.

92.     The Governing Agreement further contained an integration clause confirming that it represented the complete and exclusive statement of the parties' rights and obligations, and that

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

no oral representations or modifications would be valid unless set forth in a subsequent written agreement signed by the party to be charged. See Exhibit "2."

93.    On June 18, 2015, three days after executing the Governing Agreement, Plaintiff capitalized ReNew with an initial contribution of $350,000 in personal funds drawn from his account at National Bank of California. This contribution provided the necessary working capital to commence operations and reflected Plaintiff's substantial personal investment and reliance on the parties' equal ownership arrangement. A copy of the check reflecting Plaintiff's contribution is attached hereto as Exhibit 3." (Ex. 3)

94.    Shortly thereafter, on June 23, 2015, Plaintiff and Solorzano executed a written Clarification Agreement (the "Clarification Agreement") to confirm their mutual understanding that the Governing Agreement's equal-ownership provisions applied not only to ReNew itself, but also to all existing and future nursing facilities owned, operated, or managed through ReNew and its affiliates, i.e., the ReNew Group. The Clarification Agreement expressly stated that "Chaim Kolodny and Crystal Solorzano are equal owners (50% each) of ReNew Health Group, LLC and all its skilled-nursing facilities presently and in the future." A copy of the Clarification Agreement is attached hereto as Exhibit "4." (Ex. 4)

95.    In accordance with the Governing Agreement and Clarification Agreement, Plaintiff and Solorzano subsequently established ReNew Consulting on August 28, 2015, as a limited liability company organized under the laws of the State of California (California Secretary of State No. 201524010312). ReNew Consulting was created as a wholly owned subsidiary of ReNew to manage and operate each of the skilled-nursing and rehabilitation facilities owned by ReNew and its affiliates, compensated by management fees equal to 5% of each facility's gross revenue.

41

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

96.     From its inception, ReNew served as the parent holding company for the network of skilled-nursing and rehabilitation facilities comprising the ReNew Group, while ReNew Consulting functioned as the centralized management entity responsible for the operational, financial, and administrative oversight of the enterprise. Plaintiff provided the strategic, financial, and managerial direction of the business, while Solorzano acted as its outward representative in dealings with regulators, vendors, and third-party partners.

**B.  Expansion of ReNew's Operations**

97.     Between 2015 and 2022, Plaintiff and Solorzano oversaw the expansion of the enterprise across California, during which ReNew developed into one of the state's largest healthcare organizations, comprising more than forty skilled nursing and rehabilitation facilities collectively known as the ReNew Group. Each facility was owned, directly or indirectly, by ReNew and was intended to be managed by ReNew Consulting pursuant to the structure set forth in the Governing Agreement.

98.     The expansion of the ReNew Group was accomplished through a combination of acquisitions, lease assumptions, and negotiated transitions of existing skilled-nursing facility operations. Plaintiff identified and structured these transactions, negotiated purchase and management terms, arranged financing, and oversaw licensing and regulatory submissions. Solorzano, acting as the outward representative of the enterprise, executed transactional and regulatory documents as necessary to effectuate ownership transfers and maintain continuity of operations.

99.     Plaintiff managed the strategic, financial, and operational aspects of the enterprise from ReNew's principal office in Los Angeles. He implemented centralized systems for budgeting, accounting, and compliance, developed standardized reporting procedures, and supervised administrators responsible for individual facilities. Plaintiff's oversight ensured operational

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

consistency, regulatory compliance, and fiscal discipline across all facilities comprising the ReNew Group.

100.   ReNew Consulting functioned as the management arm of the enterprise. It coordinated administrative, accounting, and payroll functions, negotiated and supervised vendor relationships, managed reimbursements and collections, and oversaw regulatory filings and correspondence. In return, ReNew Consulting received management fees equal to 5% of the gross revenues generated by each ReNew Group facility, which, based on revenues exceeding $277 million in 2024 alone, amounted to more than $13,000,000 in management income.

101.   The ReNew Group's expansion was financed primarily through the reinvestment of operating income and credit facilities obtained at the facility level, all of which were secured through entities whose ownership interests flowed upward to ReNew. Plaintiff supervised these financing arrangements to ensure compliance with the company's ownership and control structure, as well as with state and federal healthcare regulations.

102.   By 2020, the ReNew Group had established a significant statewide presence, operating or managing more than forty licensed skilled nursing and rehabilitation facilities and employing thousands of staff across California. Its annual revenues exceeded hundreds of millions of dollars, and the enterprise had become a recognized participant in the state's long-term care sector.

103.   Throughout this period of growth, Plaintiff continued to exercise overall financial and administrative control of ReNew and the ReNew Group, while Solorzano maintained her role as the nominal executive. The expansion and success of the enterprise were the direct result of Plaintiff's capital investment, operational experience, and continuous managerial oversight.

43

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

C. **The Fraudulent Scheme & Conspiracy**

104.    From at least 2016 to the present, Defendants devised and executed a scheme to defraud Plaintiff and the State of California by (i) concealing Plaintiff's 50% ownership interest in the ReNew Group through the submission of false and fraudulent change-of-ownership, management, and licensure filings to the CDPH; (ii) executing unauthorized and fabricated transfers of ownership and control among related entities and insider affiliates; (iii) diverting enterprise revenues and management fees through sham consulting, legal, and financial agreements designed to disguise personal enrichment; (iv) transmitting materially false statements and documents by mail and interstate wire to deceive regulators, lenders, and business partners; and (v) maintaining fictitious ownership structures to secure regulatory approvals, misappropriate corporate assets, and deprive Plaintiff of his ownership, governance, and economic rights in the ReNew Group (the "**Fraud Scheme**").

105.    In the State of California, the ownership and operation of skilled-nursing facilities are strictly regulated under the California Health and Safety Code ("**HSC**"), which establishes the statutory framework governing licensure, management, and oversight of such facilities through the CDPH's Licensing and Certification Division. Skilled-nursing facilities are classified as "health facilities" under HSC § 1250(c), and no person or entity may lawfully own, operate, or manage a skilled-nursing facility without first obtaining a license from CDPH.

106.    Applicants seeking a new license or any change of ownership, management, or operational control must submit detailed applications under oath disclosing all ownership, financial, and control interests in the facility. The HSC mandates truthful disclosure in such filings; knowingly submitting false or misleading information constitutes grounds for civil penalties, criminal prosecution, and the denial, suspension, or revocation of a facility license.

44

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

107.    Specifically, HSC § 1253.3 governs changes of ownership, operations, and management of skilled-nursing facilities. The statute provides that no individual or entity may acquire an ownership interest in or assume management of a facility unless and until CDPH has reviewed and approved a completed application. The application must be filed at least 120 days before the proposed change, and no transfer may occur before such approval is granted. Both incoming and outgoing operators are required to disclose, under penalty of perjury, the identities, addresses, ownership percentages, and prior compliance history of all persons and entities with a direct or indirect ownership interest of 5% or greater.

108.    The statutory and regulatory scheme imposes heightened disclosure obligations for all post-July 1, 2023 transactions, including sales, leases, or management agreements involving operational control. CDPH must determine the reputability, experience, and financial stability of each applicant, and may impose civil penalties, deny licensure, or disqualify applicants who fail to satisfy these standards.

109.    In addition to ownership filings, HSC § 128734.1 requires licensed skilled-nursing facilities to submit annual consolidated financial and related-party reports within four months of each fiscal year's end. These reports must include complete financial information for any related entities holding a 5% or greater interest in the skilled-nursing facility or providing goods or services to it, and must be accompanied by organizational charts depicting related-party structures. Reports must be audited or reviewed by a certified public accountant, and late submissions are subject to civil penalties of $100 per day, up to $36,500 per year.

110.    A Change of Ownership ("**CHOW**") is the formal regulatory process through which CDPH evaluates and approves any proposed transfer of ownership, management, or operational control of a skilled-nursing facility. Each CHOW application must include a

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

certification, made under penalty of perjury, that all information provided is true, accurate, and complete. Pursuant to California Penal Code § 118, the willful submission of any materially false statement in such filings constitutes felony perjury when the misrepresentation is capable of influencing CDPH's decision.

111.    False or misleading CHOW submissions may also result in administrative enforcement, including the denial of a transfer application, revocation of a license, or assessment of civil penalties. When such false filings are transmitted to CDPH or to the federal Centers for Medicare & Medicaid Services ("**CMS**") by mail or electronic means, each transmission may independently constitute mail or wire fraud under federal law and serve as a predicate act under RICO.

112.    Moreover, when false ownership or management disclosures are used to conceal related-party transactions, kickbacks, or the diversion of facility revenues, such conduct may also give rise to additional predicate acts of money laundering and financial fraud. Together, these statutory and regulatory provisions define the framework within which Defendants' fraudulent ownership and licensure scheme operated, and against which their conduct must be assessed.

113.    Defendants systematically exploited California's statutory and regulatory framework governing skilled-nursing facilities to conceal their unlawful consolidation of ownership and control over the ReNew Group. Acting through coordinated roles within the enterprise, the Enterprise Management Defendants, led by Solorzano, directed the preparation and submission of false CHOW and management applications to CDPH and CMS that intentionally omitted Plaintiff's 50% ownership interest and falsely represented that control of the facilities had been transferred to approved operators.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

114.    The Professional Services Defendants prepared, certified, and transmitted these submissions under penalty of perjury, knowing that the information contained therein was false and would be relied upon by regulators in approving ownership and licensure changes. These Defendants also advised and assisted the Enterprise Management Defendants in drafting and executing fabricated ownership agreements and amendments designed to legitimize the unlawful filings.

115.    The Legacy Owner Defendants participated in effectuating these fraudulent transfers by executing assignment and relinquishment documents that they knew to be false, affirming ownership changes that did not occur, and submitting or authorizing submissions to CDPH and CMS that concealed Plaintiff's ownership interest. Their cooperation provided the transactional basis for Defendants' unlawful acquisition of control, allowing the Enterprise Management Defendants to present to regulators a façade of legitimate ownership succession while continuing to operate the facilities for their own benefit.

116.    The Insider Beneficiary Defendants facilitated and financed these transactions by structuring sham equity transfers, consulting contracts, and related-party management agreements to disguise the continued control of the facilities by disqualified insiders. The Investment and Financing Defendants further supported the scheme by arranging funding vehicles through which enterprise revenues and management fees could be diverted and concealed from regulators and from Plaintiff.

117.    Through this coordinated conduct, Defendants deceived CDPH and CMS into approving unlawful changes of ownership and management, enabling Solorzano and her co-conspirators to maintain de facto control of the ReNew Group while preserving the appearance of regulatory compliance. Each false submission to CDPH and CMS constituted a separate act of

47

mail or wire fraud, and the pattern of fabricated ownership transfers, falsified management agreements, and concealed financial relationships formed a central component of the fraudulent scheme alleged herein. By concealing the true ownership and control structure of the ReNew Group, Defendants enriched themselves through the diversion of facility revenues and deprived Plaintiff of his ownership, governance, and economic rights in violation of California law and federal racketeering statutes.

## D. The ReNew Enterprise

118.    For purposes of 18 U.S.C. § 1961(4), the "**ReNew Enterprise**" is an association-in-fact comprised of the individual and entity Defendants who collectively exercised dominion over the ReNew Group while concealing their ownership interests for the purpose of misappropriating revenues generated by the ReNew Group facilities and excluding Plaintiff from the ownership, governance management rights to which he was entitled. The ReNew Enterprise existed to defraud regulators and Plaintiff through coordinated ownership concealment, sham transactions, and the repeated submission of false filings.

119.    Each participant understood that the continued viability of the Enterprise's unlawful financial gains depended upon the perpetuation of fictitious ownership representations in regulatory filings with CDPH and CMS, the execution of false certifications made under penalty of perjury, the diversion of facility proceeds through insider-controlled entities and professional service conduits, and the obstruction of Plaintiff's rights of co-management and profit participation. Acting in concert, the participants shared a unified objective to enrich themselves at Plaintiff's expense through the use of the mails and interstate wires as instrumentalities of fraud.

120.    The ReNew Enterprise functioned through distinct but interdependent categories of participants, each of which played an essential role in advancing its unlawful objectives.

48

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

a. **Enterprise Management Defendants.** The Enterprise Management Defendants directed and controlled the daily operations of ReNew and ReNew Consulting and executed the mechanisms through which the Enterprise concealed its true ownership and control. Acting at the direction of Defendant Solorzano, they coordinated the preparation and submission of false ownership disclosures, licensure applications, and financial statements to CDPH and CMS; created nominal ownership entities in the names of trusted subordinates; and executed sham operating agreements purporting to transfer control of facilities that, in fact, remained under the Enterprise's dominion. Their oversight ensured that regulatory filings, internal records, and communications maintained the illusion of compliance while concealing the continued control of the Enterprise and obstructing Plaintiff's exercise of his contractual rights of co-management and profit participation.

b. **Insider Beneficiary Defendants.** The Insider Beneficiary Defendants, consisting primarily of Solorzano's family members and close personal associates, served as nominal owners and conduits for the diversion of assets and profits. They knowingly accepted transfers of equity interests in ReNew Group facilities without providing consideration and permitted their names to appear in public filings as ostensible owners. These assignments were intended to deceive regulators and third parties into believing that ownership had been transferred to independent parties, when in fact Solorzano and her affiliates retained control. The Insider Beneficiary Defendants also participated in sham transactions, including fraudulent operating agreements and subleases,

49

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

designed to strip value from ReNew facilities and channel proceeds to the Enterprise.

c. **Investment and Financing Defendants.** The Investment and Financing Defendants supplied and circulated capital to sustain and expand the Enterprise while concealing its true ownership structure. They arranged for the acquisition, financing, and disposition of facilities through entities under their control, participated in sales and leaseback transactions structured to generate illicit profits, and collaborated with Solorzano to convert proceeds from those transactions for their personal benefit. By engaging in these activities, the Investment and Financing Defendants enabled the Enterprise to acquire and monetize ReNew Group facilities while depriving Plaintiff of his equal ownership interest and corresponding share of revenues.

d. **Professional Services Defendants.** The Professional Services Defendants provided the legal, financial, and administrative infrastructure necessary to carry out and conceal the Enterprise's fraudulent conduct. Attorneys, accountants, and consultants within this group drafted and transmitted sham legal and consulting agreements, issued false invoices, laundered proceeds through related entities, and prepared fabricated financial statements and tax returns to sustain the appearance of legitimacy. These Defendants also facilitated the transfer and concealment of assets by structuring transactions to appear as ordinary business arrangements while, in reality, serving as vehicles for the diversion of enterprise proceeds.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

e.  **Legacy Owner Defendants.** The Legacy Owner Defendants participated in and facilitated the Enterprise's objectives by permitting their names or entities to be used in regulatory filings after having divested their ownership interests. These Defendants knowingly participated in the submission of false change-of-ownership applications and related documentation to CDPH and CMS, falsely representing that they continued to own or operate facilities that had been sold to the ReNew Group. Their cooperation enabled the Enterprise to maintain regulatory approval and to conceal Solorzano's continuing control, notwithstanding repeated denials of ownership applications identifying her or her affiliates.

121.  Through the coordinated participation of the Defendants, the ReNew Enterprise functioned as a cohesive and continuing organization, unified by a common objective to defraud Plaintiff, mislead regulatory authorities, and appropriate the revenues and assets of the ReNew Group for their own benefit.

**E.  Defendants' Pattern of Racketeering Activity**

122.  Defendants, acting through the ReNew Enterprise, engaged in a continuing pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of numerous related predicate acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. Each predicate act was undertaken in furtherance of the Fraud Scheme to conceal the true ownership and operational control of the ReNew Group, misappropriate its revenues, and deprive Plaintiff of the ownership and contractual rights guaranteed to him under the Governing Agreement. Through this coordinated course of conduct, Defendants executed and concealed fraudulent ownership, management, and financial transactions that enabled them to maintain the appearance of regulatory

51

compliance while perpetuating the ReNew Enterprise and diverting the profits of the ReNew Group for their own benefit.

123.    The predicate acts described below are organized by the principal facilities and transactions through which Defendants carried out and sustained the Fraudulent Scheme, each constituting a component of the continuing pattern of racketeering activity alleged herein.

i.    **Orinda Care Center**

124.    On or about February 24, 2015, Orinda Rehabilitation and Convalescent Hospital, Inc. ("**Orinda Rehab**") entered into an Asset Purchase Agreement with ReNew pursuant to which Orinda Rehab agreed to sell its interest in a skilled nursing facility located in Orinda, California, to Defendant Orinda Care Center, LLC, a subsidiary or affiliate of ReNew. The facility acquired under this transaction is referred to herein as the "**Orinda Care Center**." A copy of this Asset Purchase Agreement is attached hereto as Exhibit "5". (Ex. 5)

125.    Orinda Care Center, LLC had been jointly formed by Plaintiff and Defendant Solorzano on December 10, 2014, as a California limited liability company to acquire and operate the Orinda Care Center, which was licensed and regulated by CDPH and participated in the Medicare and Medi-Cal programs administered through CMS. A copy of the Articles of Organization is attached hereto as Exhibit "6". (Ex. 6)

126.    Under the Operating Agreement executed on or about March 1, 2015, ReNew held a 65% membership interest and served as the Managing Member of Orinda Care Center, LLC, while non-party Larry Goldfarb ("**Goldfarb**") held the remaining 35%. A copy of the Operating Agreement is attached hereto as Exhibit "7". (Ex. 7)

127.    Following a Settlement Agreement and Mutual Release executed on September 29, 2016, by and among ReNew, Goldfarb, and related parties, ReNew acquired Goldfarb's membership interest, resulting in ReNew's full ownership of Orinda Care Center, LLC and

52

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

establishing Plaintiff's and Solorzano's equal, 50% indirect ownership interests through ReNew. A copy of the Settlement Agreement is attached hereto as Exhibit "8". (Ex. 8)

128. On or about October 13, 2016, Solorzano caused to be mailed to CDPH, via UPS Next Day Air Saver, an Application for Stock Change for Orinda Care Center, LLC. In that filing, executed under penalty of perjury, Solorzano falsely represented that she owned 99% of ReNew, "which owns 100% of Licensee Applicant [Orinda Care Center, LLC]," and that Defendant Hodges owned the remaining 1%. A copy of the Application for Stock Change is attached hereto as Exhibit "9". (Ex. 9)

129. These representations were knowingly false and were made for the purpose of deceiving CDPH and Plaintiff, concealing Plaintiff's ownership interest, and transferring apparent control of the Orinda Care Center to Solorzano and her affiliates. The submission of this false filing by mail constitutes mail fraud in violation of 18 U.S.C. § 1341 and serves as a predicate act under RICO.

130. The same conduct constituted a fraudulent transfer under the California Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04, conversion of property belonging to the ReNew Enterprise, negligent misrepresentation, and breach of Solorzano's fiduciary duties and contractual obligations under the Governing Agreement, all undertaken without Plaintiff's knowledge or consent. Solorzano's purported admission of Hodges as an owner of Orinda Care Center, LLC further violated the Governing Agreement's express prohibition against the transfer of membership interests or the admission of new members without Plaintiff's prior written approval.

131. Defendant Hodges knowingly aided and abetted Solorzano's fraudulent conduct, including her violations of the California Uniform Fraudulent Transfer Act, conversion, negligent misrepresentation, breach of fiduciary duty, and breach of the Governing Agreement. Acting in

53

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

concert with Solorzano and other participants in the ReNew Enterprise, Hodges provided substantial assistance by endorsing and benefitting from the false ownership representations and diversion of enterprise proceeds, thereby facilitating Solorzano's breaches and the concealment of Plaintiff's ownership interest.

132. On or about July 24, 2025, Defendants Solorzano, Jaden, OCCST, and Dionisio caused to be submitted to CDPH updated ownership information purporting to reflect the ownership of Orinda Care Center, LLC as of the end of 2024. These filings, executed under penalty of perjury and transmitted both by mail and through interstate electronic submission, falsely represented that Orinda Care Center, LLC was owned 75.1% by ReNew and 24.9% by OCCST; that Solorzano owned 99% of ReNew and Jaden owned 1%; that Dionisio owned 100% of Orinda Health Care Center, LLC; and that Plaintiff owned no interest in either entity.

133. Each of these statements was materially false and was made for the purpose of further concealing Plaintiff's 50% ownership interest and maintaining Defendants' fraudulent control of the Orinda Care Center and its revenues. The foregoing conduct constitutes additional predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged herein.

134. The same conduct further violated the Federal False Claims Act, 31 U.S.C. § 3729, and the California False Claims Act, Cal. Gov't Code § 12650 et seq., as Defendants Solorzano, Dionisio, Jaden, and OCCST knowingly caused the submission of false ownership and licensure information to CDPH and CMS in connection with Medi-Cal and Medicare certification. These false submissions were material to the government's payment determinations, as accurate ownership and licensure information is a prerequisite to reimbursement for services rendered at a skilled nursing facility.

54

135. By concealing the true ownership and operational control of the Orinda Care Center, Defendants Solorzano, Dionisio, Jaden, and OCCST knowingly caused false and fraudulent claims for reimbursement to be submitted to Medi-Cal and Medicare. The same conduct further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as the purported ownership changes were made with actual intent to hinder, delay, and defraud Plaintiff.

136. The acts described herein additionally constitute conversion, fraud, breach of contract, breach of fiduciary duty, aiding and abetting, unjust enrichment, and civil conspiracy under California law. Each of Defendants Dionisio, Jaden, OCCST, and Hodges knowingly participated in, and provided substantial assistance in furtherance of, the fraudulent filings, ownership misrepresentations, and diversion of profits, thereby aiding and abetting Solorzano's breaches of the Governing Agreement and her fiduciary duties.

137. Through these coordinated acts, Defendants Solorzano, Hodges, Jaden, OCCST, and Dionisio participated in the operation and management of the ReNew Enterprise for the unlawful purpose of concealing ownership interests, evading regulatory scrutiny, and diverting the revenues of the Orinda Care Center. As a direct and proximate result of these false submissions, Plaintiff was wrongfully excluded from ownership and management participation and deprived of his share of the Orinda Care Center's revenues. The Orinda Care Center generated approximately $9,076,000 in gross revenues in 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

ii. **Griffith Park Rehab**

138. On or about May 1, 2015, Plaintiff and Defendant Solorzano caused Griffith Park Rehabilitation Center, LLC ("**Griffith Park Rehab**") to be organized as a California limited liability company (File No. 201513510213) for the purpose of acquiring and operating a skilled

55

nursing facility in Glendale, California. A copy of the Articles of Organization is attached hereto as Exhibit "10". (Ex. 10)

139. On or about May 15, 2015, Griffith Park Rehab acquired the leasehold interest in Allen Care Convalescent Hospital, located at 201 Allen Avenue, Glendale, California, from Allen Care Convalescent Hospital Corporation, and thereafter renamed the facility "Griffith Park Rehabilitation Center." The facility was licensed and regulated by CDPH and participated in the Medicare and Medi-Cal programs administered by CMS.

140. At the time of acquisition, ReNew held a 90% membership interest in Griffith Park Rehab and Defendant ECI held the remaining 10% interest. The real property on which the facility was situated was leased by Griffith Park Rehab from Defendant Panorama Convalescent Hospital, Inc., whose lease required the landlord's prior written consent for any transfer of 24% or more of the tenant's ownership interests.

141. In or about 2023, Plaintiff, Solorzano, and ReNew entered into an agreement pursuant to which Plaintiff was to acquire ReNew's 90% membership interest in Griffith Park Rehab for fair-market-value consideration, through Griffith Park Healthcare, LLC ("**GPHC**"), an entity wholly controlled by Plaintiff, who owned 99%, and his son, Avrohom Kolodny, who owned 1%.

142. In anticipation of that transaction, ReNew transferred 23.9% of its interest in Griffith Park Rehab to GPHC pursuant to a written Instrument of Assignment, which transfer did not require landlord consent. A copy of the Instrument of Assignment is attached hereto as Exhibit "11". (Ex. 11)

56

143.    On or about May 1, 2023, Solorzano caused to be submitted to CDPH a Change of Ownership Application reflecting ReNew's transfer of 23.9% of its ownership interest in Griffith Park Rehab to GPHC. A copy of this application is attached hereto as Exhibit "12". (Ex. 12)

144.    The application, executed by Solorzano as "Manager," was filed under penalty of perjury and confirmed that prior to the transfer Griffith Park Rehab was owned 90% by ReNew and 10% by ECI, and that following the transfer it would be owned 66.1% by ReNew, 10% by ECI, and 23.9% by GPHC.

145.    Thereafter, Defendant Panorama Convalescent Hospital, Inc., the facility's landlord, refused consent to the contemplated full transfer of ReNew's remaining interest, thereby preventing completion of Plaintiff's purchase of ReNew's 66.1% interest. On information and belief, the refusal was based on personal factors unrelated to the transaction itself. As a result, Plaintiff retained his 23.9% indirect ownership interest through GPHC, and the proposed sale of the remaining membership interest did not proceed.

146.    As required by CDPH regulations, Skilled Nursing Facilities are obligated to file annual ownership reports identifying all ownership, licensee, and management interests. On or about July 24, 2025, Solorzano caused an Annual Ownership Report for Griffith Park Rehab to be submitted to CDPH. A copy of the information as reflected in CDPH's records is attached hereto as Exhibit "13". (Ex. 13)

147.    That filing, executed under penalty of perjury, represented that: (i) Griffith Park Rehab was owned 66.1% by ReNew, 23.9% by GPHC, and 10% by ECI; (ii) Plaintiff owned 99% of GPHC and Avrohom Kolodny owned 1%; (iii) Solorzano owned 99% of ReNew and Defendant Jaden owned 1%; (iv) Defendant Nguyen owned 100% of ECI; and (v) Plaintiff owned no interest in ReNew.

57

148.    Each of the foregoing statements was false and fraudulent. At all relevant times, Plaintiff owned 50% of ReNew and Solorzano owned the remaining 50%, while Jaden held no ownership interest in ReNew. These false statements were intentionally made to conceal Plaintiff's ownership interest, to mislead CDPH and CMS, and to maintain Defendants' fraudulent control of Griffith Park Rehab and its revenues.

149.    The submission of these false filings, by mail and through interstate electronic transmission, constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Jaden, Nguyen, and ECI participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived direct financial benefit therefrom.

150.    The foregoing acts further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants transferred or concealed interests in Griffith Park Rehab with actual intent to hinder, delay, and defraud Plaintiff. These acts additionally constituted conversion, fraud, breach of contract and breach of fiduciary duty by Solorzano, aiding and abetting of such breaches by Jaden, Nguyen, and ECI, as well as unjust enrichment and civil conspiracy under California law.

151.    Defendants Solorzano, Jaden, Nguyen, and ECI, together with other participants in the ReNew Enterprise, participated in its operation and management for the unlawful purpose of concealing ownership interests, evading regulatory oversight, and diverting enterprise revenues.

152.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation and deprived of his share of the Griffith Park Facility's revenues. The Griffith Park Facility generated approximately $13,981,855 in gross

58

revenues in 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### iii.   Arrowhead Healthcare Center

153.   On or about December 19, 2014, Plaintiff and Defendant Solorzano caused Defendant Arrowhead Healthcare Center, LLC ("**Arrowhead Healthcare**") to be organized as a California limited liability company (File No. 201435810181) for the purpose of acquiring and operating a skilled nursing facility in San Bernardino, California. A copy of the Articles of Organization is attached hereto as Exhibit "14". (Ex. 14)

154.   On or about October 29, 2015, Arrowhead Healthcare acquired the leasehold interest in a skilled nursing facility located at 4343 North Sierra Way, San Bernardino, California, from Arrowhead Convalescent Home, Inc., and thereafter operated the facility under the name "Arrowhead Healthcare Center." The facility was licensed and regulated by CDPH and participated in the Medicare and Medi-Cal programs administered by CMS.

155.   As of the date of acquisition, ReNew owned 100% of Arrowhead Healthcare.

156.   As required by CDPH regulations, skilled nursing facilities must file annual ownership reports identifying all ownership, licensee, and management interests. On or about July 24, 2025, Solorzano caused an Annual Ownership Report for Arrowhead Healthcare to be filed with CDPH. A copy of the information reflected in CDPH's records is attached hereto as Exhibit "15". (Ex. 15)

157.   That filing, executed under penalty of perjury, represented that: (i) Arrowhead Healthcare was owned 51.1% by ReNew and 48.9% by Defendant AHCST; (ii) Solorzano owned 99% of ReNew and Defendant Jaden owned 1%; and (iii) Defendant Dionisio owned 100% of AHCST.

59

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

158.    The ownership information submitted by or on behalf of Defendants Solorzano, Jaden, and Dionisio was materially false and fraudulent. In truth, ReNew owned 100% of Arrowhead Healthcare, Solorzano and Plaintiff each owned 50% of ReNew, Jaden held no ownership interest in ReNew, and Defendant AHCST held no ownership interest in Arrowhead Healthcare.

159.    The submission of these false ownership filings, by mail and through interstate electronic transmission, constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Jaden, Dionisio, and AHCST participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived direct financial benefit therefrom.

160.    The false ownership representations were made intentionally and with the purpose of deceiving CDPH and CMS, concealing Plaintiff's ownership interest in ReNew and its subsidiary entities, and maintaining Defendants' fraudulent control over Arrowhead Healthcare and its revenues.

161.    The foregoing acts further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Jaden, Dionisio, and AHCST transferred or concealed interests in Arrowhead Healthcare with actual intent to hinder, delay, and defraud Plaintiff.

162.    These acts additionally constituted conversion, fraud, breach of contract and breach of fiduciary duty by Solorzano, aiding and abetting of such breaches by Jaden, Dionisio, and AHCST, as well as unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the false filings, ownership

60

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

misrepresentations, and diversion of profits, thereby furthering the objectives of the ReNew Enterprise.

163. Defendants Solorzano, Jaden, Dionisio, and AHCST, together with other participants in the ReNew Enterprise, participated in its operation and management for the unlawful purpose of concealing ownership interests, evading regulatory oversight, and diverting enterprise revenues.

164. As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation and deprived of his share of the Arrowhead Healthcare facility's revenues. The facility was subleased in 2024 and, upon information and belief, generated substantial gross revenues during 2023, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants, causing direct injury to Plaintiff's property and economic interests.

### iv.    **Riverside Heights Healthcare Center**

165. On or about December 19, 2014, Plaintiff and Defendant Solorzano caused Defendant Riverside Heights Healthcare Center, LLC ("**Riverside Heights**") to be organized as a California limited liability company (File No. 201435810174) for the purpose of acquiring and operating a skilled nursing facility in Riverside, California. A copy of the Articles of Organization is attached hereto as Exhibit "16". (Ex. 16)

166. On or about November 17, 2015, Riverside Heights acquired the leasehold interest in a skilled nursing facility located at 8951 Granite Hill Road, Riverside, California, from Arrowhead Convalescent Home, Inc., and thereafter operated the facility under the name "Riverside Heights Healthcare Center." The facility was licensed and regulated by CDPH and participated in the Medicare and Medi-Cal programs administered by CMS.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

167. As of the date of acquisition, ReNew owned 75% of Riverside Heights, and Defendant ECI owned the remaining 25%.

168. As required by CDPH regulations, skilled nursing facilities must file annual ownership reports identifying all ownership, licensee, and management interests. On or about July 24, 2025, Solorzano caused an Annual Ownership Report for Riverside Heights to be filed with CDPH. A copy of the information reflected in CDPH's database is attached hereto as Exhibit "17". (Ex. 17)

169. That filing, executed under penalty of perjury, represented that: (i) Riverside Heights was owned 26.1% by ReNew, 25% by ECI, and 48.9% by Defendant RHH; (ii) Solorzano owned 99% of ReNew and Defendant Jaden owned 1%; (iii) Defendant Nguyen owned 100% of ECI; and (iv) Defendant Dionisio owned 100% of RHH.

170. The ownership information submitted by or on behalf of Defendants Solorzano, Jaden, Nguyen, ECI, Dionisio, and RHH was materially false and fraudulent. In truth, ReNew owned 75% of Riverside Heights, ECI owned 25%, Solorzano and Plaintiff each owned 50% of ReNew, Jaden held no ownership interest in ReNew, and Defendant RHH held no ownership interest in Riverside Heights.

171. The submission of these false ownership filings, by mail and through interstate electronic transmission, constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Jaden, Nguyen, ECI, Dionisio, and RHH participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived direct financial benefit therefrom.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

172.    The false ownership representations were made intentionally and with the purpose of deceiving CDPH and CMS, concealing Plaintiff's ownership interest in ReNew and its subsidiary entities, and maintaining Defendants' fraudulent control over Riverside Heights and its revenues.

173.    The foregoing acts further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Jaden, Nguyen, ECI, Dionisio, and RHH transferred or concealed interests in Riverside Heights with actual intent to hinder, delay, and defraud Plaintiff.

174.    These acts additionally constituted conversion, fraud, breach of contract and breach of fiduciary duty by Solorzano, the aiding and abetting of such breaches by Jaden, Nguyen, ECI, Dionisio, and RHH, and unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in, and provided substantial assistance in furtherance of, the false filings, ownership misrepresentations, and diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

175.    Defendants Solorzano, Jaden, Nguyen, ECI, Dionisio, and RHH, together with other participants in the ReNew Enterprise, participated in its operation and management for the unlawful purpose of concealing ownership interests, evading regulatory oversight, and diverting enterprise revenues.

176.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation and deprived of his share of the Riverside Heights facility's revenues. Upon information and belief, the facility was subleased in 2024 and generated substantial gross revenues during 2023, the proceeds of which were diverted for the

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

benefit of the ReNew Enterprise and its participants, causing direct injury to Plaintiff's property and economic interests.

     v.    **Parkwest Healthcare Center**

177.    On or about May 19, 2015, Plaintiff and Defendant Solorzano caused 6740 Wilbur, LLC ("**6740 Wilbur**") to be organized as a California limited liability company (File No. 201513910409) for the purpose of acquiring and operating a skilled nursing facility in Reseda, California. A copy of the Articles of Organization is attached hereto as Exhibit "18". (Ex. 18)

178.    On the same date, Plaintiff and Solorzano caused Defendant Parkwest Rehabilitation Center, LLC ("**Parkwest Rehab**") to be organized as a California limited liability company. A copy of the Articles of Organization is attached hereto as Exhibit "19". (Ex. 19)

179.    On or about August 17, 2015, 6740 Wilbur acquired the leasehold interest in the Parkwest Healthcare Center located at 6740 Wilbur Avenue, Reseda, California 91335 ("**Parkwest Healthcare Center**"). At the time of acquisition, ReNew owned 100% of 6740 Wilbur.

180.    On or about August 18, 2015, 6740 Wilbur executed a lease of Parkwest Healthcare Center to Parkwest Rehab (the "**Parkwest Lease**"). In connection with that transaction, Solorzano falsely represented herself as the sole owner and manager of Parkwest Rehab, thereby diverting the economic benefits of the facility from ReNew and depriving Plaintiff of his 50% ownership interest and corresponding share of revenues.

181.    On or about August 18, 2015, Solorzano caused to be submitted to CMS and CDPH a Change of Ownership Application falsely representing that ownership of 6740 Wilbur had transferred from ReNew to Parkwest Rehab, an entity she claimed to own in its entirety. A copy of the CMS Change of Ownership approval is attached hereto as Exhibit "20". (Ex. 20)

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

182.    Contemporaneously with the Parkwest Lease transaction, Solorzano, acting through ReNew and Parkwest Rehab, entered into a series of related financing and ownership agreements with Defendant Saidoff and his affiliated entities, including:

a.  A loan from Capital Foresight in the principal amount of $8.5 million, secured by a first-lien deed of trust on Parkwest Healthcare Center and by pledges of 100% of the membership interests in both 6740 Wilbur and Parkwest Rehab, a copy of which is attached hereto as Exhibit "21"; (Ex. 21)

b.  A loan in the principal amount of $1 million, secured by a second-lien deed of trust on property located at 424 28th Street, Hermosa Beach, California, a copy of which is attached hereto as Exhibit "22"; (Ex. 22)

c.  An Option Agreement dated August 14, 2015, granting Solorzano an option to acquire an ownership interest in Parkwest Healthcare Center from CF Health Care Facility I, LLC (the "**Solorzano Option**") , a copy of which is attached hereto as Exhibit "23"; (Ex. 23)

d.  A reciprocal Option Agreement dated August 14, 2015, between Solorzano and CF Health Care Facility I, LLC, granting CF Health an option to acquire an ownership interest in Parkwest Healthcare Center (the "**Saidoff Option**"), a copy of which is attached hereto as Exhibit "24"; (Ex. 24)

e.  An Omnibus Agreement executed on August 14, 2015, by and between Solorzano and CF Health Care Facility I, LLC (the "**Omnibus Agreement**"), a copy of which is attached hereto as Exhibit "25." (Ex. 25)

183.    Each of the foregoing transactions was undertaken without Plaintiff's knowledge or consent and in direct contravention of the Governing Agreement between Plaintiff and

65

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Solorzano, which expressly prohibits any transfer or encumbrance of ReNew's ownership interests absent the prior written consent of both members.

184. On or about November 20, 2018, 6740 Wilbur, as owner of Parkwest Healthcare Center, and Parkwest Rehab, as operator, entered into a Purchase and Sale Agreement under which 6740 Wilbur agreed to sell Parkwest Healthcare Center to Parkwest Rehab for $12,000,000. The proceeds were used to satisfy the $8,500,000 and $1,000,000 loans arranged by Solorzano and Saidoff, with the remaining funds converted for the benefit of Solorzano and the ReNew Enterprise to the exclusion of Plaintiff. A copy of the Purchase and Sale Agreement is attached hereto as Exhibit "26". (Ex. 26)

185. In furtherance of the Fraud Scheme, Solorzano executed a series of internal resolutions and ownership transfers, between May 2015 and July 2020, intended to consolidate ownership and control of Parkwest Rehab and Parkwest Healthcare Center in herself, thereby depriving Plaintiff of his 50% ownership and governance interests in those entities through ReNew's sole ownership of Parkwest Rehab and, by extension, Parkwest Healthcare Center.

186. On or about January 3, 2019, Solorzano signed a client acknowledgment with M.Y. Safra Bank certifying that she was the sole owner of all membership interests in Parkwest Rehab. A copy of the certification is attached hereto as Exhibit "27". (Ex. 27)

187. On or about January 11, 2019, Solorzano caused Defendant Wilbur Ave RE Holdings, LLC ("**Wilbur RE Holdings**") to be formed as a California limited liability company (File No. 201901410006). A copy of the Articles of Organization is attached hereto as Exhibit "28". (Ex. 28)

188. On the same day, Solorzano and Defendant Sod executed an Operating Agreement for Wilbur RE Holdings, designating Solorzano as sole manager and providing that membership

66

interests were held 75% by Solorzano's entity, Defendant Wilbur Ave Holdings, LLC, and 25% by Sod's entity, Crestview 6740 Wilbur, LLC. A copy of the Operating Agreement is attached hereto as Exhibit "29". (Ex. 29)

189.    On or about January 16, 2019, Solorzano executed a *Resolution by Member-Manager Amending Operating Agreement of ReNew*, purporting to amend ReNew's ownership structure to replace Plaintiff's 50% ownership interest with that of her son, Defendant Jaden. The purported amendment was executed without Plaintiff's consent and without any payment or exchange of consideration, and therefore constituted a fraudulent transfer. A copy of the Resolution is attached hereto as Exhibit "30". (Ex. 30)

190.    On the same day, Solorzano executed a Resolution purporting to amend the Operating Agreement of Parkwest Rehab to designate the entity as a special-purpose vehicle in anticipation of further transfers and to confirm herself as its sole manager and sole member, thereby excluding ReNew and Plaintiff entirely. A copy of that Resolution is attached hereto as Exhibit "31". (Ex. 31)

191.    On or about January 23, 2019, Solorzano caused 6740 Wilbur to sell, transfer, assign, and convey all right, title, and interest in its property, equipment, and intangibles to Defendant 6740 Wilbur RE, LLC, an entity wholly owned and controlled by Solorzano. A copy of the January 23, 2019 Assignment is attached hereto as Exhibit "32". (Ex. 32)

192.    That same day, Solorzano caused 6740 Wilbur and Parkwest Rehab to borrow $2,000,000 from Monticello Commercial Capital, LLC, secured by the assets of both entities and approved under an Omnibus Resolution by Manager. A copy of the Omnibus Resolution is attached hereto as Exhibit "33". (Ex. 33)

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

193.    On or about March 28, 2019, in connection with a personal loan to Solorzano in the principal amount of $500,000, Defendants Solorzano and Jaden executed a Member Resolution falsely representing that they were the sole owners of 100% of the membership interests in ReNew and purporting to authorize ReNew to guarantee Solorzano's individual loan obligations. A copy of this Member Resolution is attached hereto as Exhibit "34". (Ex. 34)

194.    Thereafter, by an undated instrument entitled "1st Amended and Restated Operating Agreement of 6740 Wilbur RE, LLC," Solorzano executed the agreement on behalf of Wilbur RE Holdings as sole manager, falsely representing that Wilbur RE Holdings was the sole member of 6740 Wilbur RE, LLC. A copy of this agreement is attached hereto as Exhibit "35". (Ex. 35)

195.    Upon information and belief, the purpose of the foregoing transactions was to remove from ReNew both ownership and operational control of Parkwest Healthcare Center, originally acquired and leased by ReNew, and to transfer those interests to entities controlled exclusively by Solorzano, who, acting in concert with Defendant Sod, caused the operating entity (6740 Wilbur, LLC) and real estate holding entity (Crestview 6740 Wilbur, LLC) to be combined into a single company, 6740 Wilbur RE Holdings, LLC. Upon information and belief, that entity was sold in or about 2022 for approximately $19 million, with the net proceeds retained by the ReNew Enterprise to the exclusion and injury of Plaintiff.

196.    In or about March 2022, Solorzano, acting as the sole manager of Parkwest Rehab, executed a Management and Operations Transfer Agreement (the "**Transfer Agreement**") between Parkwest Rehab and Sapphire Operations, LLC ("**Sapphire Operations**"), whereby Sapphire Operations assumed the operational and financial obligations of the Parkwest Healthcare Center. A copy of the Transfer Agreement is attached hereto as Exhibit "36". (Ex. 36)

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

197.    The Transfer Agreement provided that, effective as of March 4, 2022 (the "**Operations Transfer Date**"), the Sapphire Realty Group, LLC ("**Sapphire Realty**") would purchase the Parkwest Healthcare Center from its existing owner pursuant to a Real Estate Purchase Agreement executed contemporaneously therewith, and that Sapphire Realty, as the new landlord of the Parkwest Healthcare Center, would enter into a lease with Sapphire Operations, granting Sapphire Operations occupancy of Parkwest Healthcare Center (the "**Sapphire Lease**").

198.    The Transfer Agreement further provided that Sapphire Operations would manage Parkwest Healthcare Center for Parkwest Rehab from the Operations Transfer Date until the date on which CDPH issues a license to Sapphire Operations to operate Parkwest Healthcare Center as a skilled-nursing facility (the "**Management Termination Date**"). In connection therewith, Sapphire Operations and Parkwest Rehab agreed to enter into an "Interim Sublease" and a "Bill of Sale," both of which were incorporated into the Transfer Agreement by reference and attached hereto as Exhibits "37" and "38", respectively. (Ex. 37 and Ex. 38)

199.    According to subsequent CDPH filings, on or about May 22, 2022, ownership of Parkwest Healthcare Center was transferred to NewGen, LLC, and operational management was assumed by Sapphire Operations, LLC, to the exclusion of ReNew and Plaintiff. The transaction generated approximately $19 million in proceeds, which Defendants Solorzano, Sod, and Jaden wrongfully converted for their own benefit and for the benefit of the ReNew Enterprise, without providing any consideration or payment to Plaintiff.

200.    The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Jaden, and Sod participated

69

in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

201. The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Jaden, and Sod transferred and concealed ownership and beneficial interests in Parkwest Healthcare Center with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

202. These acts additionally constituted conversion, fraud, breach of contract and breach of fiduciary duty by Solorzano, aiding and abetting of such breaches by Jaden and Sod, as well as unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the false filings, ownership misrepresentations, and diversion of profits, thereby furthering the objectives of the ReNew Enterprise.

203. Defendants Solorzano, Jaden, and Sod, together with other participants in the ReNew Enterprise, participated in its operation and management for the unlawful purpose of concealing ownership interests, evading regulatory oversight, and diverting enterprise revenues.

204. As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues, assets, and sale proceeds of Parkwest Healthcare Center, and sustained substantial injury to his property and economic interests. The Parkwest Healthcare Center transaction generated approximately $19,000,000 in proceeds, which Defendants Solorzano, Jaden, and Sod wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### vi.    **Santa Fe Heights Healthcare Center**

205. On or about November 29, 2015, Plaintiff and Defendant Solorzano caused Defendant Santa Fe Heights Healthcare Center, LLC ("**Santa Fe Heights LLC**") to be organized

70

as a California limited liability company for the purpose of acquiring and operating a skilled-nursing facility in Santa Fe Springs, California (the "**Santa Fe Heights Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "39". (Ex. 39)

206.   On the same date, Plaintiff and Solorzano caused Pacific Healthcare Group, LLC ("**Pacific Healthcare Group**") to be organized as a California limited liability company for the purpose of engaging in business activities relating to skilled nursing facilities and operations. A copy of the Articles of Organization is attached hereto as Exhibit "40". (Ex. 40)

207.   On or about January 1, 2016, Santa Fe Heights LLC acquired the leasehold interest in the Santa Fe Heights Facility, with ReNew indirectly holding an 80% membership interest therein through Pacific Healthcare Group, and Defendant ECI, wholly owned and controlled by Defendant Nguyen, holding the remaining 20% interest.

208.   On or about April 18, 2016, Solorzano fraudulently transferred ReNew's 80% ownership interest in Pacific Healthcare Group, and thereby Plaintiff's indirect 50% ownership interest in Santa Fe Heights LLC, by assigning 99% of ReNew's interest to herself and 1% to Defendant Hodges. The transfer was executed without Plaintiff's knowledge or consent, without consideration, and in contravention of the Governing Agreement. A copy of the most recent annual filing, which reflects the historical ownership structure, is attached hereto as Exhibit "41". (Ex. 41)

209.   On or about December 16, 2015, Solorzano filed an Application for Change of Ownership for Santa Fe Heights Healthcare Center LLC by mailing the application to the Centralized Application Unit of the CDPH Licensing and Certification Program, 1615 Capitol Avenue, MS 3402, P.O. Box 997377, Sacramento, CA 95814. A copy of the application is attached hereto as Exhibit "42". (Ex. 42)

71

210. On or about August 15, 2024, Solorzano caused a Change of Ownership Application to be filed with the CDPH, falsely representing that Santa Fe Heights LLC was owned 48.9% by Pacific Healthcare Group, which itself was owned 99% by Solorzano and 1% by Defendant Hodges; 31.1% by Defendant SFHCST, wholly owned by Defendant Dionisio; and 20% by Defendant ECI, wholly owned by Defendant Nguyen. These misrepresentations were intended to divest Plaintiff of his ownership interest and to transfer that interest to the ReNew Enterprise without his knowledge, consent, or consideration.

211. Solorzano's representations that she owned 99% of Pacific Healthcare Group, that Hodges owned 1%, and that Defendant SFHCST owned 31.1% of Santa Fe Heights LLC were knowingly false and fraudulent. These statements were made with the intent to mislead CDPH, to conceal Plaintiff's 50% ownership interest in ReNew, and to deprive him of his corresponding indirect ownership interest in the Santa Fe Heights Facility.

212. The fraudulent application was transmitted by mail to the CDPH, thereby constituting mail fraud within the meaning of 18 U.S.C. § 1341 and serving as a predicate act of racketeering under RICO.

213. Solorzano's filing of the false and fraudulent application further constituted a fraudulent transfer within the meaning of the California Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04, as the transfer was made with actual intent to hinder, delay, and defraud Plaintiff and without the receipt of reasonably equivalent value. The same conduct also gave rise to claims for conversion, negligent misrepresentation, and breach of fiduciary duty.

214. In addition, the foregoing transfer and misrepresentations constituted material breaches of the Governing Agreement, including the unauthorized transfer of company property without Plaintiff's consent, the improper admission of new ownership interests, and acts that

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

materially interfered with ReNew's operations and with Solorzano's contractual obligations thereunder.

215.    The purported admission of Defendant Hodges further violated the Governing Agreement, which expressly prohibits the admission of any person as a member without Plaintiff's prior written consent and forbids the transfer of any ownership interest without the written consent of all members.

216.    As to Defendant Hodges, the foregoing conduct constitutes aiding and abetting Solorzano's violations of the California Uniform Fraudulent Transfer Act, conversion, negligent misrepresentation, breach of fiduciary duty, and breach of the Governing Agreement, as well as tortious interference with contract rights and civil conspiracy.

217.    The most recent ownership filings submitted to the CDPH on or about July 24, 2025, reflecting the status of Santa Fe Heights LLC as of the end of 2024, provides that:

      a.    Santa Fe Heights LLC owned the Santa Fe Heights Facility;

      b.    Santa Fe Heights LLC was owned 20% by Defendant ECI, 31.1% by Defendant SFHCST, and 48.9% by Pacific Healthcare Group;

      c.    Solorzano owned 99% of Pacific Healthcare Group;

      d.    Defendant Dionisio owned 100% of SFHCST;

      e.    Defendant Nguyen owned 100% of ECI; and

      f.    Plaintiff owned 0% of both Pacific Healthcare Group and Santa Fe Heights LLC.

218.    The foregoing information was submitted by or on behalf of Defendants Solorzano, Jaden, OCCST, and Dionisio on official CDPH ownership-change forms that may only be transmitted by mail or through interstate electronic submission, each requiring the signatory to

73

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

declare under penalty of perjury that the statements provided, and all attachments were true and correct.

219.    In fact, the statements submitted by or on behalf of Defendants Solorzano, Nguyen, ECI, and Dionisio were false and fraudulent in that (1) Pacific Healthcare Group is a wholly owned subsidiary of Santa Fe Heights LLC, which in turn is a wholly owned subsidiary of ReNew and therefore indirectly owned 50% by Plaintiff, and (2) Defendant SFHCST holds no ownership interest in Santa Fe Heights LLC. The submission of these false filings constituted additional predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Nguyen, Dionisio, ECI, Hodges, and SFHCST participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

220.    The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Nguyen, Dionisio, ECI, Hodges, and SFHCST transferred and concealed ownership and beneficial interests in Santa Fe Heights Healthcare Center with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights. These acts additionally constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano; aiding and abetting of such breaches by Nguyen, Dionisio, ECI, Hodges, and SFHCST; and unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the false filings, ownership misrepresentations, and diversion of profits, thereby furthering the objectives of the ReNew Enterprise.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

221.    Defendants Solorzano, Nguyen, Dionisio, ECI, Hodges, and SFHCST, together with other participants in the ReNew Enterprise, engaged in its operation and management for the unlawful purpose of concealing ownership interests, evading regulatory oversight, and diverting enterprise revenues.

222.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues, assets, and economic benefits of Santa Fe Heights Healthcare Center, and sustained substantial injury to his property and economic interests. The Santa Fe Heights Healthcare Center generated approximately $17,500,000 in gross revenues during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### vii.    **The Phillip Chase Schemes**

223.    On or about September 30, 2016, Defendant Chase, acting as the authorized representative of Knoll Avenue Care Center, Inc., Knott Avenue Retirement Manor, Inc., Defendant Inland Valley Partners, LLC, and Defendant Premier Care Simi Valley LLC (collectively, the "**Chase SNFs**"), entered into an Omnibus Agreement to sell to ReNew or its affiliates four facilities, including (i) Healthcare Center of Orange County, a 99-bed skilled nursing facility located at 9021 Knott Avenue, Buena Park, California; (ii) Harvest Retirement, a 106-bed assisted living and memory care facility located at 9011 Knott Avenue, Buena Park, California; (iii) Inland Valley Care and Rehabilitation Center, a 241-bed skilled nursing facility located at 250 West Artesia Street, Pomona, California; and (iv) Simi Valley Healthcare Center, a 99-bed skilled nursing facility located at 5270 Los Angeles Avenue, Simi Valley, California. The total purchase

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

price under the Omnibus Agreement was $13 million. A copy of the Omnibus Agreement is attached hereto as Exhibit "43". (Ex. 43)

### a. Simi Valley

224. On or about July 27, 2016, Plaintiff and Defendant Solorzano caused Defendant Simi Valley Healthcare Center, LLC ("**Simi Valley LLC**") to be organized as a California limited liability company for the purpose of acquiring and operating the Simi Valley Healthcare Center located at 5270 East Los Angeles Avenue, Simi Valley, California (the "**Simi Valley Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "44". (Ex. 44)

225. On or about August 17, 2016, Simi Valley LLC acquired the Simi Valley Facility pursuant to the Omnibus Agreement executed between the Chase SNFs and ReNew. At the time of acquisition, Simi Valley LLC was, or was intended to be, wholly owned by ReNew.

226. Pursuant to ownership filings submitted to the CDPH and reflected in the HIPA Space Database of Healthcare Provider NPI Status, the Simi Valley Facility was, as of on or about September 8, 2016, reported to be wholly owned by Simi Valley LLC. A copy of the NPI ownership report is attached hereto as Exhibit "45". (Ex. 45)

227. On or about June 22, 2023, Defendant Solorzano caused ReNew's entire ownership interest in Simi Valley LLC to be fraudulently transferred, assigning an 80% interest to Defendant SVRTC and a 20% interest to Defendant 5270, without Plaintiff's consent, without consideration, and in violation of the Governing Agreement. According to the ownership representations submitted to the CDPH, Defendant Dionisio owns 100% of 5270, while Defendant Dizon owns 20%, Defendant DiTullio owns 40%, and Defendant Gasmen owns 20% of SVRTC.

228. On or about July 24, 2025, Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 caused ownership data to be submitted to the CDPH purporting to

76

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

reflect the ownership status of Simi Valley LLC as of the end of 2024. The submission represented that:

    a.  Simi Valley LLC owned the Simi Valley Facility;

    b.  Simi Valley LLC was owned 20% by 5270 and 80% by SVRTC;

    c.  Dionisio owned 100% of 5270;

    d.  Dizon owned 20% of SVRTC;

    e.  DiTullio owned 40% of SVRTC;

    f.  Gasmen owned 20% of SVRTC;

    g.  ReNew owned 0% of Simi Valley LLC; and

    h.  Plaintiff owned 0% of Simi Valley LLC.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of Simi Valley LLC is attached hereto as Exhibit "46". (Ex. 46)

229.　The foregoing information was submitted by or on behalf of Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 on official CDPH change-of-ownership forms that could only be transmitted by mail or through interstate electronic submission, each requiring the signatory to declare under penalty of perjury that the statements and attachments were true and correct.

230.　In fact, the statements submitted by or on behalf of Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 were false and fraudulent. Simi Valley LLC was a wholly owned subsidiary of ReNew, and Plaintiff indirectly owned a 50% interest therein by virtue of his equal ownership interest in ReNew. Defendants SVRTC and 5270 owned no lawful interest in Simi Valley LLC.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

231.   The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

232.   The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 transferred and concealed ownership and beneficial interests in the Simi Valley Facility with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

233.   Such conduct also constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano, and aiding and abetting of those breaches by Defendants Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270.

234.   The foregoing acts further gave rise to claims for unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the preparation and submission of false filings, ownership misrepresentations, and the diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

235.   Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270, together with other participants in the ReNew Enterprise, participated in the operation and management of the ReNew Enterprise as part of the Fraud Scheme, for the unlawful purposes of

78

concealing true ownership interests, evading regulatory oversight, and diverting revenues for their own benefit and for the benefit of the enterprise.

236.   As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in Simi Valley LLC, deprived of his 50% ownership interest in the revenues, assets, and economic benefits of the Simi Valley Facility, and sustained substantial injury to his property and economic interests. The Simi Valley Facility generated approximately $18,891,503 in gross revenues during 2024 alone, which Defendants Solorzano, Dionisio, Dizon, DiTullio, Gasmen, SVRTC, and 5270 wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### b.   Lake Merritt

237.   On or about August 17, 2016, Plaintiff and Defendant Solorzano caused Lake Merritt Healthcare Center, LLC ("**Lake Merritt LLC**") to be organized as a California limited liability company for the purpose of acquiring and operating the Lake Merritt Healthcare Center located at 309 MacArthur Boulevard, Oakland, California (the "**Lake Merritt Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "47". (Ex. 47)

238.   On or about November 9, 2016, Plaintiff and Solorzano caused Health Care Partners I, LLC ("**HCP I**") to be organized as a California limited liability company for the purposes of operating a skilled nursing facility. A copy of the Articles of Organization is attached hereto as Exhibit "48". (Ex. 48)

239.   On or about August 17, 2016, through Lake Merritt LLC, ReNew acquired the Lake Merritt Facility from LTP Generations, LLC d/b/a Oakgrove Springs Care Center. At the time of acquisition, Lake Merritt LLC was, or was intended to be, wholly owned by ReNew.

79

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

240.    Pursuant to ownership filings submitted to the CDPH and the CMS, on or about November 1, 2016, Solorzano fraudulently reported that she, rather than ReNew, was the only individual holding greater than 5% ownership in Lake Merritt LLC. A copy of the CDPH ownership report is attached hereto as Exhibit "49". (Ex. 49)

241.    On or about March 10, 2017, Solorzano caused a Change of Ownership Application to be submitted to the CDPH, falsely representing that HCP I had acquired 100% of the ownership interests in Lake Merritt LLC, and that HCP I was owned 99% by Solorzano and 1% by Defendant Jaden. This filing was made without Plaintiff's consent, without consideration, and in violation of the Governing Agreement. A copy of the CDPH filing is attached hereto as Exhibit "50". (Ex. 50)

242.    On or about July 24, 2024, Solorzano caused another Change of Ownership Application to be submitted to CDPH, falsely asserting that 23.9% of Lake Merritt LLC had been transferred to Defendant LMHCST, an entity wholly owned by Defendant Dionisio. The submission was made without Plaintiff's consent, without consideration, and in further violation of the Governing Agreement and California law. A copy of the July 24, 2024 filing submitted to the CDPH on behalf of Lake Merritt LLC is attached hereto as Exhibit "51". (Ex. 51)

243.    On or about July 24, 2025, Defendants Solorzano and Dionisio caused ownership data to be submitted to CDPH purporting to reflect the ownership status of Lake Merritt LLC as of the end of 2024. The submission represented that:

   a.   Lake Merritt LLC owned the Lake Merritt Facility;

   b.   Lake Merritt LLC was owned 76.1% by HCP I and 23.9% by LMHCST;

   c.   HCP I was owned 99% by Solorzano and 1% by Jaden;

   d.   LMHCST was wholly owned by Dionisio;

   e.   ReNew owned 0% of Lake Merritt LLC or HCP I; and

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

f.    Plaintiff owned 0% of Lake Merritt LLC or HCP I.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of Lake Merritt LLC is attached hereto as Exhibit "52". (Ex. 52)

244.    The foregoing information was submitted by or on behalf of Defendants Solorzano, Dionisio, and LMHCST on official CDPH change-of-ownership forms that could only be transmitted by mail or through interstate electronic submission, each requiring the signatory to declare under penalty of perjury that the statements and attachments were true and correct.

245.    In fact, the statements submitted by or on behalf of Defendants Solorzano, Dionisio, Jaden, and LMHCST were false and fraudulent. At all relevant times, HCP I was wholly owned by ReNew, and Lake Merritt LLC was a wholly owned subsidiary of HCP I. Plaintiff and Solorzano each indirectly owned a 50% interest in both entities through their equal ownership interests in ReNew. Defendants Dionisio, Jaden, and LMHCST held no lawful ownership interest in Lake Merritt LLC or HCP I.

246.    The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Dionisio, Jaden, and LMHCST participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

247.    The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Dionisio, Jaden, and LMHCST transferred and concealed ownership and beneficial interests in the Lake Merritt Facility with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

81

248.    Such conduct also constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano, and aiding and abetting of those breaches by Defendants Dionisio, Jaden, and LMHCST.

249.    The foregoing acts further gave rise to claims for unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the preparation and submission of false filings, ownership misrepresentations, and the diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

250.    Defendants Solorzano, Dionisio, Jaden, and LMHCST, together with other participants in the ReNew Enterprise, participated in its operation and management as part of the Fraud Scheme, for the unlawful purposes of concealing true ownership interests, evading regulatory oversight, and diverting revenues for their own benefit and for the benefit of the enterprise.

251.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in Lake Merritt LLC, deprived of his 50% ownership interest in the revenues, assets, and economic benefits of the Lake Merritt Facility, and sustained substantial injury to his property and economic interests. The Lake Merritt Facility generated approximately $8,436,920 in gross revenues during 2024 alone, which Defendants Solorzano, Dionisio, Jaden, and LMHCST wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### c.    Redwood

252.    On or about August 17, 2016, Plaintiff and Defendant Solorzano caused Defendant Redwood Healthcare Center, LLC ("**Redwood LLC**") to be organized as a California limited liability company for the purpose of acquiring and operating the Redwood Healthcare Center

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

located at 3145 High Street, Oakland, California (the "**Redwood Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "53". (Ex. 53)

253.    On or about November 1, 2016, through Redwood LLC, ReNew acquired the Redwood Facility from LTP Generations, LLC d/b/a Oakgrove Springs Care Center. At the time of acquisition, Redwood LLC was, or was intended to be, wholly owned by ReNew.

254.    Pursuant to ownership filings submitted to the CDPH and the CMS, on or about November 1, 2016, Solorzano fraudulently reported that she, rather than ReNew, was the only individual holding greater than 5% ownership in Redwood LLC. A copy of the CDPH ownership report is attached hereto as Exhibit "54". (Ex. 54)

255.    On or about March 10, 2017, Solorzano caused a Change of Ownership Application to be submitted to CDPH falsely representing that HCP I had acquired 100% of the ownership interests in Redwood LLC, and that HCP I was owned 99% by Solorzano and 1% by Defendant Jaden. This filing was made without Plaintiff's consent, without consideration, and in violation of the Governing Agreement. A copy of the CDPH filing is attached hereto as Exhibit "55". (Ex. 55)

256.    On or about August 15, 2024, Solorzano caused another Change of Ownership Application to be submitted to CDPH, falsely asserting that 23.9% of Redwood LLC had been transferred to Defendant RHCST, an entity wholly owned by Defendant Dionisio. The submission was made without Plaintiff's consent, without consideration, and in further violation of the Governing Agreement and California law. A copy of the August 15, 2024 filing submitted to the CDPH on behalf of Redwood LLC is attached hereto as Exhibit "56". (Ex. 56)

257.    On or about July 24, 2025, Defendants Solorzano, Dionisio, and RHCST caused ownership data to be submitted to CDPH purporting to reflect the ownership status of Redwood LLC as of the end of 2024. The submission represented that:

83

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

    a.   Redwood LLC owned the Redwood Facility;

    b.   Redwood LLC was owned 76.1% by HCP I and 23.9% by RHCST;

    c.   HCP I was owned 99% by Solorzano and 1% by Jaden;

    d.   RHCST was wholly owned by Dionisio;

    e.   ReNew owned 0% of Redwood LLC or HCP I; and

    f.   Plaintiff owned 0% of Redwood LLC or HCP I.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of Redwood LLC is attached hereto as Exhibit "57". (Ex. 57)

258.    The foregoing information was submitted by or on behalf of Defendants Solorzano, Dionisio, and RHCST on official CDPH change-of-ownership forms that could only be transmitted by mail or through interstate electronic submission, each requiring the signatory to declare under penalty of perjury that the statements and attachments were true and correct.

259.    In fact, the statements submitted by or on behalf of Defendants Solorzano, Dionisio, Jaden, and RHCST were false and fraudulent. At all relevant times, Redwood LLC was a wholly owned subsidiary of ReNew, and HCP I was wholly owned by ReNew. Plaintiff and Solorzano each indirectly owned a 50% interest in both entities through their equal ownership interests in ReNew. Defendants Dionisio, Jaden, and RHCST held no lawful ownership interest in Redwood LLC or HCP I.

260.    The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Dionisio, Jaden, and RHCST participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

261.    The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Dionisio, Jaden, and RHCST transferred and concealed ownership and beneficial interests in the Redwood Facility with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

262.    Such conduct also constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano, and aiding and abetting of those breaches by Defendants Dionisio, Jaden, and RHCST.

263.    The foregoing acts further gave rise to claims for unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the preparation and submission of false filings, ownership misrepresentations, and the diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

264.    Defendants Solorzano, Dionisio, Jaden, and RHCST, together with other participants in the ReNew Enterprise, participated in its operation and management as part of the Fraud Scheme, for the unlawful purposes of concealing true ownership interests, evading regulatory oversight, and diverting revenues for their own benefit and for the benefit of the enterprise.

265.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in Redwood LLC, deprived of his 50% ownership interest in the revenues, assets, and economic benefits of the Redwood Facility, and sustained substantial injury to his property and economic interests. The Redwood Facility generated approximately $7,360,134 in gross revenues during 2024 alone, which Defendants

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Solorzano, Dionisio, Jaden, and RHCST wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### d. Orange County

266. On or about August 9, 2016, Plaintiff and Defendant Solorzano caused Defendant The Rehabilitation Center of Orange County, LLC ("**Orange County LLC**") to be organized as a California limited liability company for the purpose of acquiring and operating the Healthcare Center of Orange County located at 9021 Knott Avenue, Buena Park, California (the "**Orange County Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "58". (Ex. 58)

267. On or about November 1, 2016, acting through Orange County LLC, ReNew acquired the Healthcare Center of Orange County from Knott Avenue Care Center, Inc., one of the Chase SNFs. At the time of acquisition, Orange County LLC was, or was intended to be, wholly owned by ReNew.

268. Pursuant to ownership filings submitted to the CDPH and the CMS, on or about March 10, 2017, Defendant Solorzano fraudulently reported that she, rather than ReNew, was the only individual holding greater than 5% ownership in Orange County LLC. A copy of the CDPH ownership report is attached hereto as Exhibit "59". (Ex. 59)

269. On or about October 31, 2023, Solorzano caused a Change of Ownership Application to be submitted to CDPH falsely representing that Defendant 9021 had acquired 48.9% of ReNew's ownership interests in Orange County LLC, and that 9021 was owned 89.75% by Defendant Dionisio and 10.25% by Defendant Lance. The filing further misrepresented that ReNew retained a 51.1% interest in Orange County LLC, and that ReNew itself was owned 99% by Solorzano and 1% by Defendant Jaden. The submission was made without Plaintiff's consent,

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

without consideration, and in violation of the Governing Agreement. A copy of the CDPH filing is attached hereto as Exhibit "60". (Ex. 60)

270. On or about July 24, 2025, Defendants Solorzano, Dionisio, Lance, and 9021 caused ownership data to be submitted to CDPH purporting to reflect the ownership status of Orange County LLC as of the end of 2024. The submission represented that:

a. Orange County LLC owned the Orange County Facility;

b. Orange County LLC was owned 51.1% by ReNew and 48.9% by 9021;

c. ReNew was owned 99% by Solorzano and 1% by Jaden;

d. 9021 was owned 89.75% by Dionisio and 10.25% by Lance;

e. ReNew owned 0% of 9021; and

f. Plaintiff owned 0% of ReNew or Orange County LLC.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of Orange County LLC is attached hereto as Exhibit "61". (Ex. 61)

271. The foregoing information was submitted by or on behalf of Defendants Solorzano, Dionisio, Lance, and 9021 on official CDPH change-of-ownership forms that could only be transmitted by mail or through interstate electronic submission, each requiring the signatory to declare under penalty of perjury that the statements and attachments were true and correct.

272. In fact, the statements submitted by or on behalf of Defendants Solorzano, Dionisio, Lance, and 9021 were false and fraudulent. At all relevant times, Orange County LLC was a wholly owned subsidiary of ReNew, and Plaintiff and Solorzano each indirectly owned a 50% interest therein through their equal ownership interests in ReNew. Defendants Dionisio, Lance, and 9021 held no lawful ownership interest in Orange County LLC.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

273. The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Dionisio, Lance, and 9021 participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

274. The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Dionisio, Lance, and 9021 transferred and concealed ownership and beneficial interests in the Orange County Facility with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

275. Such conduct also constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano, and aiding and abetting of those breaches by Defendants Dionisio, Lance, and 9021.

276. The foregoing acts further gave rise to claims for unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the preparation and submission of false filings, ownership misrepresentations, and the diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

277. Defendants Solorzano, Dionisio, Lance, and 9021, together with other participants in the ReNew Enterprise, participated in its operation and management as part of the Fraud Scheme, for the unlawful purposes of concealing true ownership interests, evading regulatory oversight, and diverting revenues for their own benefit and for the benefit of the enterprise.

278. As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in Orange County LLC, deprived of his

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

50% ownership interest in the revenues, assets, and economic benefits of the Orange County Facility, and sustained substantial injury to his property and economic interests. The Orange County Facility generated approximately $2,127,938 in gross revenues during 2024 alone, which Defendants Solorzano, Dionisio, Lance, and 9021 wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### e.  Valley Vista

279.    On or about December 1, 2016, through HCP I, ReNew acquired the Valley Manor Convalescent Hospital from Golden Care, Inc. At the time of acquisition, ReNew was, or was intended to be, the sole owner of HCP I and, through it, the Valley Manor Convalescent Hospital.

280.    Pursuant to ownership filings submitted to the CDPH and the CMS, on or about March 10, 2017, Defendant Solorzano fraudulently reported that she, rather than ReNew, owned 99% of HCP I and was the only individual holding greater than 5% ownership therein. A copy of the CDPH ownership report is attached hereto as Exhibit "62". (Ex. 62)

281.    On or about October 20, 2018, Plaintiff and Solorzano caused Defendant Valley Vista Nursing and Transitional Care, LLC ("**Valley Vista LLC**") to be organized as a California limited liability company, and the facility was renamed the Valley Vista Nursing and Transitional Care Center (the "**Valley Vista Facility**"). A copy of the Articles of Organization is attached hereto as Exhibit "63". (Ex. 63)

282.    Shortly thereafter, Solorzano caused Valley Vista LLC to become the purported owner of the Valley Vista Facility, with HCP I reported as holding 100% of the ownership interests in Valley Vista LLC. This restructuring was undertaken without Plaintiff's consent, without any consideration paid to ReNew or Plaintiff, and in direct violation of the Governing Agreement and California law.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

283. At the time of the acquisition and restructuring, ReNew was, or was intended to be, the sole owner of Valley Vista LLC and HCP I.

284. On or about June 19, 2024, Solorzano caused a Change of Ownership Application to be submitted to CDPH falsely representing that HCP I had transferred 48.9% of its ownership interest in Valley Vista LLC to Defendant VVNTCST, an entity wholly owned by Defendant Dionisio. The filing further represented that HCP I retained a 51.1% interest in Valley Vista LLC, and that HCP I was owned 99% by Solorzano and 1% by Defendant Jaden. The submission was made without Plaintiff's consent, without consideration, and in violation of the Governing Agreement. A copy of the CDPH filing is attached hereto as Exhibit "64". (Ex. 64)

285. On or about July 24, 2025, Defendants Solorzano, Dionisio, VVNTCST, and HCP I caused ownership data to be submitted to CDPH purporting to reflect the ownership status of Valley Vista LLC as of the end of 2024. The submission represented that:

a. Valley Vista LLC owned the Valley Vista Facility;

b. Valley Vista LLC was owned 51.1% by HCP I and 48.9% by VVNTCST;

c. HCP I was owned 99% by Solorzano and 1% by Jaden;

d. VVNTCST was wholly owned by Dionisio;

e. ReNew owned 0% of Valley Vista LLC or HCP I; and

f. Plaintiff owned 0% of Valley Vista LLC or HCP I.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of Valley Vista LLC is attached hereto as Exhibit "65". (Ex. 65)

286. The foregoing information was submitted by or on behalf of Defendants Solorzano, Dionisio, Jaden, and VVNTCST on official CDPH change-of-ownership forms that could only be

90

transmitted by mail or through interstate electronic submission, each requiring the signatory to declare under penalty of perjury that the statements and attachments were true and correct.

287.    In fact, the statements submitted by or on behalf of Defendants Solorzano, Dionisio, Jaden, and VVNTCST were false and fraudulent. At all relevant times, ReNew rightfully owned 100% of Valley Vista LLC and HCP I, and Plaintiff indirectly owned a 50% interest therein through his equal ownership interest in ReNew. Defendants Dionisio, Jaden, and VVNTCST held no lawful ownership interest in Valley Vista LLC or HCP I.

288.    The foregoing conduct constituted predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and forms part of the pattern of racketeering activity alleged under Counts I–III (RICO §§ 1962(b), (c), and (d)). Defendants Solorzano, Dionisio, Jaden, and VVNTCST participated in the operation and management of the ReNew Enterprise through this pattern of racketeering activity and derived substantial financial benefit therefrom.

289.    The acts described herein further constituted fraudulent transfers within the meaning of Cal. Civ. Code § 3439.04, as Defendants Solorzano, Dionisio, Jaden, and VVNTCST transferred and concealed ownership and beneficial interests in the Valley Vista Nursing and Transitional Care Center with actual intent to hinder, delay, and defraud Plaintiff of his property and economic rights.

290.    Such conduct also constituted conversion, fraud, breach of contract, and breach of fiduciary duty by Solorzano, and aiding and abetting of those breaches by Defendants Dionisio, Jaden, and VVNTCST.

291.    The foregoing acts further gave rise to claims for unjust enrichment and civil conspiracy under California law. Each of these Defendants knowingly participated in and substantially assisted in the preparation and submission of false filings, ownership

91

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

misrepresentations, and the diversion of profits, thereby advancing the objectives of the ReNew Enterprise.

292.    Defendants Solorzano, Dionisio, Jaden, and VVNTCST, together with other participants in the ReNew Enterprise, participated in its operation and management as part of the Fraud Scheme, for the unlawful purposes of concealing true ownership interests, evading regulatory oversight, and diverting revenues for their own benefit and for the benefit of the enterprise.

293.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in Valley Vista LLC, deprived of his 50% ownership interest in the revenues, assets, and economic benefits of the Valley Vista Nursing and Transitional Care Center, and sustained substantial injury to his property and economic interests. The Valley Vista Facility generated approximately $11,388,120 in gross revenues during 2024 alone, which Defendants Solorzano, Dionisio, Jaden, and VVNTCST wrongfully converted and retained for their own benefit and for the benefit of the ReNew Enterprise, to the exclusion and detriment of Plaintiff.

### viii.    Inland Valley Care And Rehabilitation Center

294.    On or about September 30, 2016, Defendant Chase, acting as the authorized representative of Defendant IVP, entered into an Omnibus Agreement with ReNew for the sale of the Inland Valley Care and Rehabilitation Center, a 241-bed skilled-nursing facility located at 250 West Artesia Street, Pomona, California 91768 (the "**Inland Valley Facility**"). The Omnibus Agreement included the transfer of three additional skilled-nursing facilities owned or controlled by Chase. A true and correct copy of the Omnibus Agreement is attached hereto as Exhibit "66." (Ex. 66)

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

295.    Following execution of the Omnibus Agreement, ReNew assumed ownership and operational control of the Inland Valley Facility through ReNew Consulting. At the time of the acquisition, ReNew was, and was intended to be, the sole owner of the Inland Valley Facility, with Plaintiff holding a corresponding 50% indirect ownership interest therein through ReNew.

296.    In or about 2019, the CDPH denied Defendant Solorzano's change-of-ownership applications for nine separate ReNew facilities based on findings of unfitness and falsified submissions. In response, Solorzano and Chase conspired to avoid submitting any change-of-ownership application for the Inland Valley Facility. Rather than disclose ReNew's true ownership, they knowingly caused false filings to be submitted to CDPH representing that the facility continued to be owned and operated by Chase's entity, IVP. In truth, the facility was owned and operated by ReNew through the ReNew Enterprise, and those filings were made to conceal Solorzano's unlawful control and to exclude Plaintiff from ownership and distribution rights, in violation of the Governing Agreement and California law.

297.    Following CDPH's rejection of Solorzano's prior applications, the ReNew Enterprise adopted a uniform practice of falsifying ownership filings and related-party disclosures to preserve nominal "legacy" ownership while maintaining actual control through ReNew Consulting. On information and belief, Solorzano and Chase agreed that Chase would allow his name, corporate entities, and professional credentials to be used as a façade in official filings in exchange for substantial monthly payments disguised as consulting or advisory fees.

298.    Under that arrangement, Chase was designated as "Senior Advisor" to ReNew, though he performed no substantive services for the enterprise. In reality, he was compensated to perpetuate the false appearance that his entities continued to own and operate the facilities on ReNew's behalf. On information and belief, Chase and his entities received between $8,000 and

93

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

$10,000 per facility per month for these purposes, yielding aggregate annual payments exceeding $1,000,000. These funds were drawn directly from the operating revenues of ReNew-owned facilities and constituted unlawful kickbacks and bribes in violation of the Federal and California False Claims Acts.

299.    Defendants Solorzano, Chase, and the Chase Family Trust, acting individually and through the ReNew Enterprise, engaged in multiple acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each act was undertaken knowingly and with intent to defraud Plaintiff, regulators, and the United States.

    a.  On or about July 24, 2025, Defendants Solorzano, Chase, and the Chase Family Trust caused the electronic submission of false ownership data to CDPH, falsely representing that the Inland Valley Facility was wholly owned by the Chase Family Trust and omitting Plaintiff's ownership interest;

    b.  On or about the same date, Defendants Solorzano, Chase, and the Chase Family Trust caused the electronic submission of the same false ownership data to CDPH and CMS through cost reports, provider-enrollment applications, and related-party disclosure forms, falsely representing that the Inland Valley Facility was lawfully owned and operated by duly licensed and eligible persons;

    c.  On or about March 15, 2024, Defendant Solorzano and her agents caused the electronic submission of cost reports for the 2023 fiscal year to CMS and DHCS falsely representing that the Chase Family Trust was the sole owner of the Inland Valley Facility and concealing the true ownership and management interests of ReNew and Plaintiff; and

94

d. Throughout 2023 and 2024, Solorzano and her affiliates in the ReNew Enterprise caused the transmission of interstate electronic communications, including emails and document submissions, to coordinate the preparation and filing of fraudulent change-of-ownership forms and related disclosures to CDPH and CMS, concealing Plaintiff's ownership interest and diverting facility revenues.

Each of the foregoing transmissions contained materially false statements regarding the ownership, licensure, and control of the Inland Valley Facility, were made for the purpose of executing and concealing the Fraudulent Scheme, and constituted uses of the mails and interstate wires in furtherance of the Fraudulent Scheme within the meaning of 18 U.S.C. §§ 1341 and 1343.

300. Among the predicate acts described above was the submission to CDPH on or about July 24, 2025, by or on behalf of Defendants Solorzano, Chase, and the Chase Family Trust, reflecting ownership of the Inland Valley Facility as of December 31, 2024. The submission represented that:

a. IVP has continuously owned the facility since October 1, 2003;

b. From October 1, 2003 through January 30, 2024, IVP was owned by Elizabeth J. Casey, Phillip Chase, and Robert Nelson;

c. As of February 6, 2024, those individuals transferred their ownership interests to "The Chase Family Trust Family Trust & Phillip L"; and

d. Since January 30, 2024, The Chase Family Trust Family Trust & Phillip L has been the 100% owner of IVP.

This submission further represented that, effective November 29, 2022, operational management of the Inland Valley Facility had been "transferred" to ReNew Consulting pursuant to a written

95

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

management agreement, and that both ReNew and Plaintiff held 0% ownership of the facility. A copy of the July 24, 2025 filing submitted to the CDPH on behalf of IVP is attached hereto as Exhibit "67". (Ex. 67)

301.    The foregoing information was submitted by or on behalf of Defendants Solorzano, Chase, and the Chase Family Trust on official CDPH change-of-ownership and annual disclosure forms that could only be transmitted by mail or through interstate electronic submission. Each submission required the signatory to declare, under penalty of perjury, that the statements and attachments were true and correct. These submissions constituted use of the mails and interstate wires in furtherance of a fraudulent scheme within the meaning of 18 U.S.C. §§ 1341 and 1343.

302.    The statements and representations submitted by or on behalf of Defendants Solorzano, Chase, and the Chase Family Trust were materially false and fraudulent. In truth, ReNew was, and remains, the rightful sole owner of the Inland Valley Facility, with Plaintiff holding a corresponding 50% indirect ownership interest through ReNew. The filings deliberately omitted Plaintiff's ownership interest, misrepresented the identities of the true owners and operators, and falsely certified compliance with the licensure and ownership-disclosure requirements set forth in California Health & Safety Code §§ 1253.3 and 128734.1.

303.    The same false information was transmitted to CDPH, CMS, and DHCS through cost reports, provider-enrollment applications, and related-party disclosure forms. These submissions falsely represented that the Inland Valley Facility was lawfully owned and operated by duly licensed entities and that all ownership interests had been accurately disclosed. In reality, the facility was controlled by unlicensed and ineligible persons whose prior ownership applications had been denied by CDPH, including Solorzano and her affiliated entities.

96

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

304.    Through these filings, Defendants Solorzano, Chase, and the Chase Family Trust knowingly presented, and caused to be presented, false or fraudulent claims for payment and certification to the United States and the State of California, in violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)–(B), and the California False Claims Act, Cal. Gov. Code § 12651(a)(1)–(2).

305.    These same acts further constituted fraudulent conveyances and unlawful transfers of enterprise assets under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04(a). By maintaining false ownership records and diverting revenues through sham consulting and management contracts, Defendants transferred and concealed assets belonging to ReNew and Plaintiff, without consideration and with actual intent to hinder, delay, and defraud Plaintiff as a creditor and co-owner.

306.    Defendants Solorzano, Chase, and the Chase Family Trust's conduct constitutes fraud and conversion under California law. Each knowingly made false representations regarding the ownership, control, and operation of the Inland Valley Facility with the intent to deceive Plaintiff, regulators, and third parties. Plaintiff reasonably relied upon the accuracy and integrity of those records and, as a direct and proximate result of Defendants' deceit, suffered substantial economic harm, including loss of profits, distributions, and enterprise value.

307.    Defendant Solorzano's conduct further constituted a breach of the Governing Agreement by unlawfully excluding Plaintiff from participation in management, diverting assets of the enterprise for her own benefit, and withholding profit distributions to which Plaintiff was entitled. Such conduct also violated the fiduciary duties of loyalty, good faith, and fair dealing that Solorzano owed to Plaintiff in her capacity as an equal member of ReNew.

97

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

308.    The remaining Defendants, including Chase, the Chase Family Trust, and other affiliated participants, knowingly aided and abetted Solorzano's breaches of contract and fiduciary duty. Each knowingly and substantially assisted in the unlawful scheme by executing false regulatory filings, concealing the true ownership and control of the Inland Valley Facility, and diverting facility revenues, with full knowledge of Solorzano's misconduct and the illicit objectives of the enterprise.

ix.    **The Philip Weinberger Schemes**

309.    Defendant Weinberger served as the Chief Executive Officer and a principal of entity Defendants Sela and P&M, through which he exercised ownership and control over multiple skilled-nursing facilities throughout the State of California. Acting directly or through those entities, Weinberger owned and/or controlled operated at least the following five skilled-nursing facilities: (i) Holiday Manor Care Center (the "**Holiday Manor Facility**"), located at 20554 Roscoe Boulevard, Canoga Park / Winnetka, California 91306; (ii) Villa Mesa Care Center (a/k/a San Antonio Post Acute Care Center) (the "**Villa Mesa Facility**"), located at 867 East 11th Street, Upland, California 91786; (iii) Mesa Glen Care Center (a/k/a Route 66 Post Acute Care Center) (the "**Mesa Glen Facility**"), located at 638 East Colorado Avenue, Glendora, California 91740; (iv) Rancho Mesa Care Center (the "**Rancho Mesa Facility**"), located at 93323 La Mesa Drive, Rancho Cucamonga, California 91701; and (v) Riverside Heights Healthcare Center (the "**Riverside Heights Facility**" and collectively with the Holiday Manor Facility, Villa Mesa Facility, Mesa Glen Facility, and Racho Mesa Facility, the "**Weinberger Facilities**"), located at 8951 Granite Hill Drive, Riverside, California 92509. Weinberger held these ownership and control interests in coordination with, and as the managing principal among, Defendants Mahan, H. Weiss, and M. Weiss.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

310.    On or about August 1, 2018, ReNew agreed to acquire the Weinberger Facilities from Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, and M. Weiss. Following execution of the purchase agreements, ReNew assumed ownership and operational control of the facilities through ReNew Consulting, consistent with the structure governing other facilities within the ReNew Group.

311.    Following the CDPH's denials of CHOW applications submitted by Solorzano and entities affiliated with her, Solorzano, upon information and belief, entered into an agreement and understanding with Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, and M. Weiss, and to evade the CDPH's regulatory review process. Rather than submit CHOW applications that would have required disclosure of the enterprise's participation, these Defendants collectively resolved to forego such filings altogether and to transfer beneficial ownership and operational control of the Weinberger facilities to Solorzano and the ReNew enterprise without disclosure or regulatory approval. In furtherance of this arrangement, they continued to submit, or caused to be submitted, materially false ownership and control reports to CDPH and related agencies, representing that Sela, P&M, and their nominal shareholders remained the lawful owners and operators, when in truth ownership and control had already been conveyed to Solorzano and the enterprise.

312.    The purpose and effect of these coordinated filings were to conceal the ReNew Enterprise's true ownership of the Weinberger Facilities, evade CDPH oversight, and deprive Plaintiff of his 50% indirect ownership interest therein through ReNew. Each Defendant knowingly caused the preparation and submission of materially false filings to CDPH, executed under penalty of perjury, falsely representing that the facilities were owned and operated by duly licensed and eligible persons, when in fact ownership and operational control had been transferred to Solorzano and the enterprise.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

313.    In consideration of his continued cooperation and participation in the fraudulent scheme, the enterprise rewarded Weinberger through a continuing bribery and kickback arrangement pursuant to which he acted as a front for the ReNew Enterprise. Under this arrangement, Weinberger received monthly payments believed to range between $8,000 and $10,000 per facility, characterized as consulting or management fees. In truth, these payments were illicit remuneration intended to secure Weinberger's agreement to falsely report, and to cause his co-defendants to falsely report, to CDPH and related agencies that the Weinberger Facilities remained owned by the original nominal owners. These representations were knowingly false, as ownership had already been transferred to the ReNew Enterprise. As a direct consequence of this fraudulent arrangement, Plaintiff was deprived of his lawful ownership and profit interests in the Weinberger Facilities, which were required to be, and rightfully were, owned by ReNew and indirectly by Plaintiff.

### a.   Holiday Manor

314.    The most recent ownership submissions, submitted on or about July 24, 2025, by or on behalf of Defendants Solorzano, the ReNew Enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and, concerning the Holiday Manor Facility, purport to reflect the ownership of the facility as of December 31, 2024. The submissions reflect that:

  a.   Since April 24, 2004, the Holiday Manor Facility has been owned by Defendant Sela;

  b.   Weinberger owns 30% of Sela;

  c.   Mahan owns 30% of Sela;

  d.   H. Weiss owns 20% of Sela;

  e.   M. Weiss owns 26% of Sela;

  f.   ReNew owns 0% of the Holiday Manor Facility; and

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

g.  Plaintiff owns 0% of the Holiday Manor Facility.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Holiday Manor Facility is attached hereto as Exhibit "68". (Ex. 68)

315.    The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, the enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each submission required the signatory to declare, under penalty of perjury, that the statements and any accompanying attachments were true and correct. These transmissions constitute "mailings" and "wire communications" within the meaning of 18 U.S.C. §§ 1341 and 1343.

316.    In truth and in fact, the ownership representations contained in those submissions were materially false and fraudulent. The Weinberger Defendants and their affiliates had previously conveyed ownership and operational control of the facility to ReNew, which is, and was at all relevant times, the lawful owner of the Holiday Manor Facility, of which Plaintiff holds a 50% indirect ownership interest through ReNew. The false submissions were made to misrepresent the facility's true ownership and control structure, to conceal the ReNew Enterprise's actual interest, to create the appearance of compliance with applicable licensing requirements, and to evade CDPH oversight.

317.    By knowingly preparing, signing, transmitting, and causing the submission of these false ownership reports through the United States mails and interstate electronic communications, Defendants Solorzano, Weinberger, Mahan, Sela, P&M, H. Weiss, and M. Weiss, and committed multiple related acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each such act constitutes a predicate offense under 18 U.S.C. § 1961(1), forming part of a pattern of

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

racketeering activity through which these Defendants conducted and participated, directly and indirectly, in the affairs of the ReNew Enterprise in violation of 18 U.S.C. § 1962(c).

318.   As a direct and proximate result of the foregoing predicate acts, Plaintiff was deprived of his lawful ownership, management, and profit interests in the Holiday Manor Facility, and sustained injury to his business and property within the meaning of 18 U.S.C. § 1964(c).

319.   The Holiday Manor Facility generated gross revenues of approximately $15,214,679 during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

320.   Additionally, Defendant entities CVPAC LLC, a Delaware limited liability company, and CVPA 2309 LLC are entities associated with the ownership and/or operations of Holiday Manor through which Defendants conducted and participated, directly and indirectly, in the affairs of the enterprise in furtherance of the fraudulent scheme described herein.

### b.  Villa Mesa

321.   The most recent ownership submissions, submitted on or about July 24, 2025, by or on behalf of Defendants Solorzano, the ReNew Enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and, concerning the Villa Mesa Facility, purport to reflect the ownership of the facility as of December 31, 2024. The submissions state, in relevant part, that:

a. Since April 24, 2004, Villa Mesa Care Center has been owned by Defendant Sela;

b. Weinberger owns 30% of Sela;

c. Mahan owns 30% of Sela;

d. H. Weiss owns 20% of Sela;

e. M. Weiss owns 20% of Sela;

102

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

f.  ReNew owns 0% of Villa Mesa Care Center; and

g.  Plaintiff owns 0% of Villa Mesa Care Center.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Villa Mesa Facility is attached hereto as Exhibit "69." (Ex. 69)

322.    The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, the enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each submission required the signatory to declare, under penalty of perjury, that the statements and any accompanying attachments were true and correct. These transmissions constitute "mailings" and "wire communications" within the meaning of 18 U.S.C. §§ 1341 and 1343.

323.    In truth and in fact, the ownership representations contained in those submissions were materially false and fraudulent. The Weinberger Defendants and their affiliates had previously conveyed ownership and operational control of the facility to ReNew, which is, and was at all relevant times, the lawful owner of the Villa Mesa Facility, of which Plaintiff holds a 50% indirect ownership interest through ReNew. The false submissions were made to misrepresent the facility's true ownership and control structure, to conceal the ReNew Enterprise's actual interest, to create the appearance of compliance with applicable licensing requirements, and to evade CDPH oversight. Additionally, the Defendant entities San Antonio Post Acute LLC, VMPA 867 LLC, and VMPA LLC, are entities associated with the ownership and/or operation of Villa Mesa Care Center, through which Defendants conducted and participated in the affairs of the enterprise in furtherance of the fraudulent scheme described herein.

103

324. By knowingly preparing, signing, transmitting, and causing the submission of these false ownership reports through the United States mails and interstate electronic communications, Defendants Solorzano, Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and committed multiple related acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each such act constitutes a predicate offense under 18 U.S.C. § 1961(1), forming part of a pattern of racketeering activity through which these Defendants conducted and participated, directly and indirectly, in the affairs of the ReNew Enterprise in violation of 18 U.S.C. § 1962(c).

325. As a direct and proximate result of the foregoing predicate acts, Plaintiff was deprived of his lawful ownership, management, and profit interests in the Villa Mesa Facility and sustained injury to his business and property within the meaning of 18 U.S.C. § 1964(c).

326. The Villa Mesa Facility generated gross revenues of approximately $15,314,606 during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### c. Mesa Glen

327. The most recent ownership submissions, submitted on or about July 24, 2025, by or on behalf of Defendants Solorzano, the ReNew Enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and, concerning the Mesa Glen Facility, purport to reflect the ownership of the facility as of December 31, 2024. The submissions state, in relevant part, that:

    a. Since April 24, 2004, Mesa Glen Care Center has been owned by Sela;

    b. Weinberger owns 30% of Sela;

    c. Mahan owns 30% of Sela;

    d. H. Weiss owns 20% of Sela;

    e. M. Weiss owns 20% of Sela;

104

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

f.   ReNew owns 0% of Mesa Glen Care Center; and

g.   Plaintiff owns 0% of Mesa Glen Care Center.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Mesa Glen Facility is attached hereto as Exhibit "70." (Ex. 70)

328.   The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, the enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each submission required the signatory to declare, under penalty of perjury, that the statements and any accompanying attachments were true and correct. These transmissions constitute "mailings" and "wire communications" within the meaning of 18 U.S.C. §§ 1341 and 1343.

329.   In truth and in fact, the ownership representations contained in those submissions were materially false and fraudulent. The Weinberger Defendants and their affiliates had previously conveyed ownership and operational control of the facility to ReNew, which is, and was at all relevant times, the lawful owner of the Mesa Glen Facility, of which Plaintiff holds a 50% indirect ownership interest through ReNew. The false submissions were made to misrepresent the facility's true ownership and control structure, to conceal the ReNew Enterprise's actual interest, to create the appearance of compliance with applicable licensing requirements, and to evade CDPH oversight.

330.   By knowingly preparing, signing, transmitting, and causing the submission of these false ownership reports through the United States mails and interstate electronic communications, Defendants Solorzano, Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and committed multiple related acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each such

105

act constitutes a predicate offense under 18 U.S.C. § 1961(1), forming part of a pattern of racketeering activity through which these Defendants conducted and participated, directly and indirectly, in the affairs of the ReNew Enterprise in violation of 18 U.S.C. § 1962(c).

331.  As a direct and proximate result of the foregoing predicate acts, Plaintiff was deprived of his lawful ownership, management, and profit interests in the Mesa Glen Facility and sustained injury to his business and property within the meaning of 18 U.S.C. § 1964(c).

332.  The Mesa Glen Facility generated gross revenues of approximately $14,620,394 during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### d.  Rancho Mesa

333.  The most recent ownership submissions, submitted on or about July 24, 2025, by or on behalf of Defendants Solorzano, the ReNew Enterprise, and Defendants Weinberger, Mahan, Sela, P&M, H. Weiss, M. Weiss, and, concerning the Rancho Mesa Facility, purport to reflect the ownership of the facility as of December 31, 2024. The submissions state, in relevant part, that:

    a.  Since March 28, 2002, Rancho Mesa Care Center has been owned by P&M;

    b.  Weinberger owns 51% of P&M; and

    c.  Mahan owns 49% of P&M.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Rancho Mesa Facility is attached hereto as Exhibit "71." (Ex. 71)

334.  The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, the enterprise, and Defendants Weinberger, Mahan, and P&M on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each submission required the signatory to declare, under penalty of perjury, that the statements and any

106

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

accompanying attachments were true and correct. These transmissions constitute "mailings" and "wire communications" within the meaning of 18 U.S.C. §§ 1341 and 1343.

335.   In truth and in fact, the ownership representations contained in those submissions were materially false and fraudulent. The Weinberger Defendants and their affiliates had previously conveyed ownership and operational control of the facility to ReNew, which is, and was at all relevant times, the lawful owner of the Rancho Mesa Facility, of which Plaintiff holds a 50% indirect ownership interest through ReNew. The false submissions were made to misrepresent the facility's true ownership and control structure, to conceal the ReNew Enterprise's actual interest, to create the appearance of compliance with applicable licensing requirements, and to evade CDPH oversight.

336.   By knowingly preparing, signing, transmitting, and causing the submission of these false ownership reports through the United States mails and interstate electronic communications, Defendants Solorzano, Weinberger, Mahan, P&M, Sela, H. Weiss, M. Weiss, and committed multiple related acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Each such act constitutes a predicate offense under 18 U.S.C. § 1961(1), forming part of a pattern of racketeering activity through which these Defendants conducted and participated, directly and indirectly, in the affairs of the ReNew Enterprise in violation of 18 U.S.C. § 1962(c).

337.   As a direct and proximate result of the foregoing predicate acts, Plaintiff was deprived of his lawful ownership, management, and profit interests in the Rancho Mesa Facility and sustained injury to his business and property within the meaning of 18 U.S.C. § 1964(c).

338.   The Rancho Mesa Facility generated gross revenues of approximately $8,679,548 during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise

107

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### x.    Herman Health Care Center

339.    On or about August 1, 2018, ReNew agreed to acquire the Herman Health Care Center (a/k/a Silicon Valley Health Care Center) (the "**Herman Health Facility**"), a skilled-nursing facility located in San Jose, California, from the Paul D. Sollis Trust ("**PDS Trust**") and the Sophia H. Sollis Trust ("**SHS Trust**"). A copy of the acquisition agreement is attached hereto as Exhibit "72". (Ex. 72)

340.    PDS Trust and SHS Trust had held ownership and operational control of the Herman Health Facility since approximately June 30, 1996, under the management of Defendant Sollis.

341.    At the time of the acquisition, ReNew was to assume 100% ownership and operational control of the Herman Health Facility, with Plaintiff holding a 50% indirect ownership interest through ReNew. In connection with the transaction, the parties were required, pursuant to California law, to submit CHOW applications to the CDPH.

342.    When CDPH began denying CHOW applications submitted by Solorzano and other entities affiliated with ReNew, Solorzano, upon information and belief, entered into an agreement and understanding with PDS Trust and SHS Trust, managed and controlled by Defendants Sollis, to evade the regulatory approval process. Rather than submitting the required filings, these Defendants transferred ownership and operational control of the Herman Health Facility to Solorzano and the ReNew Enterprise while continuing to represent to CDPH that PDS Trust and SHS Trust remained the lawful owners.

343.    In furtherance of this scheme, Solorzano, acting through the ReNew Enterprise, and Defendants PDS Trust, SHS Trust, and Sollis, caused to be prepared and submitted materially false

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

and fraudulent ownership reports to CDPH and related agencies, falsely asserting that those Defendants continued to own and control the Herman Health Facility after transferring ownership to the enterprise. Each submission was transmitted by mail or through interstate electronic communication and executed under penalty of perjury.

344.    The most recent of these filings, submitted on or about July 24, 2025, purports to reflect ownership of the Herman Health Facility as of December 31, 2024. That filing represents that:

      a.   the Herman Health Facility is owned by "Herman Sanatorium";

      b.   PDS Trust owns 50% of Sela;

      c.   SHS Trust owns 50% of Sela; and

      d.   ReNew and Plaintiff own 0% of the Herman Health Facility.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Herman Health Facility is attached hereto as Exhibit "73." (Ex. 73)

345.    In truth and in fact, ownership and operational control of the Herman Health Facility had been transferred to ReNew, which at all relevant times owned and operated the facility through Defendant Silicon Valley Post Acute LLC, an entity in which Plaintiff holds a 50% indirect ownership interest through ReNew.

346.    The foregoing submissions constitute mailings and wire communications within the meaning of 18 U.S.C. §§ 1341 and 1343. By knowingly preparing, signing, transmitting, and causing the submission of these false ownership reports to the CDPH, Defendants Solorzano, PDS Trust, SHS Trust, and Sollis, committed multiple predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, forming part of a pattern of racketeering activity through which

109

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

they conducted and participated, directly and indirectly, in the affairs of the ReNew Enterprise in violation of 18 U.S.C. § 1962(c).

347.    The purpose and effect of these false submissions were to conceal the ReNew Enterprise's true ownership and control of the Herman Health Facility, to create the false appearance of compliance with state licensing requirements, and to deprive Plaintiff of his contractual and economic rights arising from his ownership interest in ReNew.

348.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues and assets of the Herman Health Facility, and sustained substantial injury to his property and economic interests. The Herman Health Facility generated approximately $15,271,731 in revenues during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

xi.    **Chestnut Ridge Post Acute Care Center**

349.    On or about December 16, 2018, Central Convalescent Hospital of Glendale, Inc., believed to be an affiliate of Defendant Chase, who has served on its board since at least December 7, 2022, sold the Chandler Convalescent Hospital to ReNew, acting through its affiliate Pacific Health Group, LLC. Following the transaction, the facility was renamed Chestnut Ridge Post Acute Care Center (the "**Chestnut Ridge Facility**"), a skilled-nursing facility located at 525 South Central Avenue, Glendale, California 91204.  A copy of the January 12, 2019 change of ownership application submitted to the CDPH is attached hereto as Exhibit "74". (Ex. 74)

350.    At the time of the transaction, ReNew was, and was intended to be, the sole owner and operator of the Chestnut Ridge Facility, with Plaintiff holding a 50% indirect ownership interest through ReNew.

110

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

351.    Upon information and belief, after CDPH began denying Solorzano's CHOW applications for other skilled nursing facilities acquired by ReNew or its affiliates, Solorzano conspired with the seller to circumvent the filing of any CHOW applications for the Chestnut Ridge Facility. Instead, they continued to submit annual ownership reports to CDPH falsely representing that the seller, Central Convalescent Hospital of Glendale, Inc., remained the lawful owner and operator, when in fact ownership and operational control had been transferred to the ReNew Enterprise.

352.    On or about February 16, 2021, Solorzano and Chase organized Chestnut Ridge Post Acute Care, LLC ("**Chestnut Ridge LLC**") as a California limited liability company for the purpose of concealing the ReNew Enterprise's beneficial ownership of the facility and to serve as a vehicle for its continued operation under nominal ownership. A copy of the Articles of Organization is attached hereto as Exhibit "75." (Ex. 75)

353.    Upon information and belief, beginning on or about October 11, 2023, Solorzano, acting individually and through the ReNew Enterprise, conspired with Chase to formalize his role as a nominal owner and front for the enterprise in connection with the Chestnut Ridge Facility. Their objective was to conceal the ReNew Enterprise's continuing ownership and control of the facility while maintaining the appearance of regulatory compliance and eligibility for state licensure.

354.    In furtherance of the conspiracy described above, on or about October 11, 2023, Solorzano and Chase caused the preparation and submission of a fraudulent CHOW application to the CDPH. The submission purported to transfer ownership of the facility from Central Convalescent Hospital of Glendale, Inc. to Chestnut Ridge LLC.

111

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

355.    The CHOW application represented that Chestnut Ridge LLC was the lawful owner and operator of the facility; that the Chase Family Trust owned 100% of the membership interests in Chestnut Ridge LLC; and that Defendant Chase served as its manager. Those statements were false when made. In truth and in fact, Chestnut Ridge LLC functioned as a shell entity used to disguise the continuing ownership, control, and management of the facility by Solorzano and the ReNew Enterprise.

356.    The CHOW application was executed under penalty of perjury and transmitted to CDPH by electronic submission. The filing certified that the information contained therein was true and correct, that the applicant was duly licensed and financially qualified to operate a skilled-nursing facility, and that no unreported related-party relationships existed. Each of those certifications was materially false. At all relevant times, the ReNew Enterprise maintained operational control over the facility's staffing, finances, and reimbursement accounts through ReNew Consulting and other affiliated management entities.

357.    The purpose and effect of the fraudulent CHOW application were to conceal the ReNew Enterprise's true ownership and control of the Chestnut Ridge Facility, to evade regulatory scrutiny in light of CDPH's prior denials of Solorzano's ownership applications, and to deprive Plaintiff of his 50% indirect ownership interest through ReNew. By designating Chase as the nominal owner and operator, Defendants created the false appearance that the facility was independently owned and managed when, in fact, all material decisions and profits flowed to Solorzano and the enterprise.

358.    The most recent ownership submissions to CDPH concerning the Chestnut Ridge Facility, dated July 24, 2025, and purporting to reflect ownership as of December 31, 2024, repeat and reinforce the same false representations. These submissions state that:

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

a. Chestnut Ridge LLC owns the facility as of December 7, 2022;

b. the Chase Family Trust owns 100% of Chestnut Ridge LLC;

c. Chase is registered as its manager; and

d. ReNew and Plaintiff each own 0%.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Chestnut Ridge Facility is attached hereto as Exhibit "76." (Ex. 76)

359. The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, Chase, and the Chase Family Trust on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each form required the signatory to declare, under penalty of perjury, that the statements and attachments were true and correct. The preparation and submission of those forms constitute mailings and wire communications within the meaning of 18 U.S.C. §§ 1341 and 1343.

360. In truth and in fact, ownership and operational control of the Chestnut Ridge Facility had already been transferred to ReNew, which at all relevant times owned and operated the facility, in which Plaintiff holds a 50% indirect ownership interest through his ownership interest in ReNew. Defendants Solorzano, Chase, and the Chase Family Trust knowingly prepared, signed, and caused the submission of these false filings to conceal the ReNew Enterprise's actual ownership and control, to create the appearance of compliance with state licensing requirements, and to deprive Plaintiff of his contractual and economic rights.

361. Each of the false filings described above was made with the intent to defraud CDPH and to further the ReNew Enterprise's continuing scheme to conceal ownership, divert revenues, and misappropriate profits from facilities nominally held in the names of others. The CHOW application of October 11, 2023, and the subsequent July 24, 2025 ownership filings each

113

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

constitute distinct predicate acts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343.

362.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues, assets, and profits of the Chestnut Ridge Facility, and sustained substantial injury to his property and economic interests. The Chestnut Ridge Facility generated approximately $17,074,825 in revenues during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

### xii.    Miracle Mile Healthcare Center

363.    On or about May 9, 2019, Plaintiff and Defendant Solorzano caused Miracle Mile Post Acute LLC ("**Miracle Mile LLC**") to be organized as a California limited liability company for the purpose of acquiring and operating a skilled-nursing facility in Los Angeles County. A copy of the Articles of Organization is attached hereto as Exhibit "77." (Ex. 77)

364.    On or about January 1, 2020, ReNew, acting through Miracle Mile LLC, acquired the Beverly West Healthcare Center, a skilled-nursing facility located at 1020 South Fairfax Avenue, Los Angeles, California 90019, from Beverly West Healthcare LLC, and thereafter renamed the facility Miracle Mile Post Acute Care Center (the "**Miracle Mile Facility**"). A copy of the Management and Operations Transfer Agreement is attached hereto as Exhibit "78." (Ex. 78)

365.    Medicare and Medicaid provider verification records reflect that, prior to the acquisition, Beverly West Healthcare LLC was listed as the owner of the facility, and that as of July 11, 2019, ownership was transferred to Miracle Mile Post Acute LLC, a ReNew-affiliated entity managed by Solorzano. Copies of those records, reflecting ownership by Beverly West

114

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Healthcare LLC prior to July 2019 and ownership by Miracle Mile Post Acute LLC as of July 11, 2019, are attached hereto as Exhibits "79" and "80," respectively. (Ex. 79 and Ex. 80)

366. At the time of the transaction, ReNew was, and was intended to be, the sole owner and operator of the Miracle Mile Facility, with Plaintiff holding a 50% indirect ownership interest through ReNew.

367. Upon information and belief, after CDPH began denying Solorzano's CHOW applications for other skilled-nursing facilities acquired by ReNew or its affiliates, Solorzano conspired with the seller to circumvent the filing of any CHOW applications for the Miracle Mile Facility. Instead, they caused the submission of fraudulent ownership reports to CDPH and CMS falsely representing that, as of January 1, 2020, Defendant Chase had assumed control of Miracle Mile LLC as its manager. A copy of the Medicare and Medicaid provider verification showing that, as of January 21, 2020, Chase was listed as the manager of Miracle Mile LLC is attached hereto as Exhibit "81." (Ex. 81)

368. Upon information and belief, beginning on or about January 21, 2020, Solorzano, acting individually and through the ReNew Enterprise, conspired with Defendant Chase to install him as a nominal owner and front for the enterprise in connection with the Miracle Mile Facility. Their objective was to conceal the ReNew Enterprise's continuing ownership and control of the facility while maintaining the appearance of compliance with state licensing and Medicare participation requirements.

369. The most recent ownership submissions to CDPH concerning the Miracle Mile Facility, dated July 24, 2025, and purporting to reflect ownership as of December 31, 2024, reflect, in relevant part:

a. Miracle Mile LLC owns the facility as of December 7, 2022;

115

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

  b. The Chase Family Trust owns 100% of Miracle Mile LLC;

  c. Chase is registered as its manager; and

  d. ReNew and Plaintiff each own 0%.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the Miracle Mile Facility is attached hereto as Exhibit "82." (Ex. 82)

370. The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, Chase, and the Chase Family Trust on official CDPH change-of-ownership and annual reporting forms that could only be transmitted by mail or through interstate electronic submission. Each filing required the signatory to declare, under penalty of perjury, that the statements and attachments were true and correct. The preparation and transmission of those documents constitute mailings and wire communications within the meaning of 18 U.S.C. §§ 1341 and 1343.

371. In truth and in fact, ownership and operational control of the Miracle Mile Facility had been transferred to ReNew, which at all relevant times owned and operated the facility, in which Plaintiff holds a 50% indirect ownership interest through his ownership interest in ReNew. Defendants Solorzano, Chase, and the Chase Family Trust knowingly prepared, signed, and caused the submission of false filings to conceal the ReNew Enterprise's true ownership and control, to create the false appearance of compliance with regulatory and licensure requirements, and to deprive Plaintiff of his contractual and economic rights.

372. Each false filing and transmission described herein was made with the intent to defraud CDPH, CMS, and other regulators, and to further the ReNew Enterprise's continuing scheme to conceal ownership, divert revenues, and misappropriate profits from facilities nominally held in the names of others. The false ownership reports and electronic submissions described

116

above constitute distinct predicate acts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343.

373.    Upon information and belief, Chase serves as a nominal owner and acts as a front for the ReNew Enterprise in exchange for monthly payments believed to range between $8,000 and $10,000 per facility. These payments are falsely reported to CDPH as legitimate ownership income, thereby perpetuating the false appearance of independent operation and concealing the ReNew Enterprise's continuing control.

374.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues, assets, and profits of the Miracle Mile Facility, and sustained substantial injury to his property and economic interests. The Miracle Mile Facility generated approximately $17,646,831 in gross revenues during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

xiii.    **San Marino Health Care Center**

375.    On or about September 30, 2010, Defendant Cablayan formed 3GENCARE, Inc. as a Nevada corporation registered to do business in California. A copy of the Statement and Designation by Foreign Corporation filed with the California Secretary of State is attached hereto as Exhibit "83." (Ex. 83)

376.    On or about November 29, 2018, Solorzano caused Defendant San Gabriel Post Acute LLC ("**San Gabriel LLC**") to be organized as a California limited liability company. A copy of the Articles of Organization is attached hereto as Exhibit "84." (Ex. 84)

117

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

377.   On or about May 30, 2019, Solorzano caused Ridayo Health Group LLC to be organized as a California limited liability company. A copy of the Articles of Organization is attached hereto as Exhibit "85." (Ex. 85)

378.   The San Marino Health Care Center ("**San Marino Facility**") was owned and operated by 3GENCARE, Inc., a Nevada corporation owned and controlled by Defendant Cablayan, who had acquired the facility in or about 2011. The real property on which the San Marino Facility operates was owned by Tri Care Center Inc. ("**Tricare**"), a California corporation controlled by Erwin Cablayan, an affiliate of Defendant Cablayan and of 3GENCARE, Inc.

379.   By Letter of Intent ("**LOI**") dated July 11, 2019, Tricare, as seller, agreed to sell to ReNew "and its to-be-formed affiliate business entities" the property on which the San Marino Facility was located for $4,700,000. A copy of the LOI is attached hereto as Exhibit "86." (Ex. 86)

380.   On or about July 8, 2019, 3GENCARE, Inc., as owner and licensee of the San Marino Facility, entered into an Operations Management Agreement with San Gabriel LLC, pursuant to which San Gabriel LLC would manage the day-to-day operations of the facility on behalf of 3GENCARE under its existing license and Medicare provider number until the closing of the real estate transaction under the LOI. A copy of the Operations Management Agreement is attached hereto as Exhibit "87." (Ex. 87)

381.   On or about October 7, 2019, Solorzano submitted a CHOW application to CDPH seeking approval to transfer ownership of the San Marino Facility from 3GENCARE, Inc. to San Gabriel LLC.

382.   On March 20, 2020, CDPH issued a *Notice of Denial of Application* rejecting the CHOW submission. The denial cited Solorzano's prior revocation of her skilled-nursing facility administrator license for unprofessional conduct, the use of fraudulent documents in her licensing

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

process, and a pattern of 97 federal regulatory violations across facilities she owned, managed, or operated directly or indirectly from October 2016 through October 2019. CDPH concluded that Solorzano lacked the character and compliance record required to hold or manage a skilled-nursing facility license in California. A copy of the Notice of Denial is attached hereto as Exhibit "88." (Ex. 88)

383.    Notwithstanding that denial, Solorzano and the ReNew Enterprise proceeded to acquire the San Marino Facility without disclosing the acquisition to CDPH or CMS. They caused the transaction to be structured so as to give the false appearance that 3GENCARE, Inc. continued to operate the facility as licensee and Tricare continued to own the real estate, when in fact ownership and operational control had been transferred to ReNew and its affiliates.

384.    On or about July 11, 2019, ReNew acquired the San Marino Manor, a skilled-nursing facility located at 6812 North Oak Avenue, San Gabriel, California 91775, from 3GENCARE, Inc., and renamed it the San Marino Health Care Center. A copy of the agreement is attached hereto as Exhibit "89". (Ex. 89)

385.    Following the acquisition, Solorzano and her affiliates took deliberate steps to conceal ReNew's ownership and operational control of the San Marino Facility from CDPH and CMS. Their objective was to circumvent regulatory oversight and maintain the appearance of compliance despite Solorzano's prior license revocation and CDPH's denial of her CHOW application.

386.    To effectuate this concealment, Defendants Solorzano, Chase, C. Petterson, and other members of the ReNew Enterprise conspired with Defendant Cablayan to deceive CDPH and CMS by causing 3GENCARE, Inc. to remain listed as the licensed operator and owner of record, even though effective ownership and control had passed to the ReNew Enterprise. These

119

Defendants thereafter caused false reports and submissions to be transmitted to CDPH and CMS falsely representing that 3GENCARE, Inc. continued to own and operate the San Marino Facility, when in truth and in fact, ownership and operational control had been assumed by ReNew and its affiliates.

387.    Public records further substantiate the enterprise's concealment of ReNew's ownership and control over the San Marino Facility. Following the acquisition, a series of corporate amendments were submitted to the California Secretary of State reflecting the transfer of control of 3GENCARE, Inc. to the ReNew Enterprise, including:

a.    The principal office address of 3GENCARE, Inc. was changed from Defendant Cablayan's residence at 753 Crooked Path Place, Chula Vista, California 91914, to ReNew's business address at 107 West Lemon Avenue, Monrovia, California 91016. A copy of the corresponding amendment made to 3GENCARE's corporate filings reflecting this change is attached hereto as Exhibit "90"; (Ex. 90)

b.    Defendant C. Petterson, a long-time ReNew executive and member of the enterprise, was designated as the "Manager" of 3GENCARE, Inc. A copy of 3GENCARE's Medicare and Medicaid provider status records reflecting this designation is attached hereto as Exhibit "91"; (Ex. 91)

c.    3GENCARE's prior registered agent, attorney Joel Weissler, Esq. (California Bar No. 140894), was replaced by Eugene Alkana, counsel to ReNew and the enterprise. A copy of the corresponding amendment made to 3GNCARE's corporate filings reflecting this change is attached hereto as Exhibit "92"; (Ex. 92) and

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

d.  ReNew Consulting was identified as the operator of the San Marino Health Care Center on or about February 6, 2023. A copy of data submitted in the facility's annual filing with CDPH for the 2024 calendar year is attached hereto as Exhibit "93." (Ex. 93)

388. Upon information and belief, by December 1, 2023, ownership of the San Marino Facility had been transferred from 3GENCARE, Inc. to Defendants SVPA and 6812 entities owned and controlled by Defendants Dizon, Dionisio, DiTullio, and Gasmen. No CHOW application reflecting this transfer was ever submitted to or approved by CDPH or CMS.

389. Notwithstanding the absence of regulatory approval, Medicare and CMS currently identify the San Marino Facility's legal business name as SVPA LLC and list Defendants Dionisio, SVPA, and 6812 as indirect owners effective June 1, 2023.

390. Under California Health and Safety Code § 1253.3, any change in ownership, operation, or management of a skilled nursing facility requires prior review and approval by CDPH. A licensee must provide 120 days' advance notice and submit a complete CHOW application packet, and no license may be relinquished until CDPH has approved the new operator. Failure to comply constitutes a violation of California law subject to administrative and criminal penalties.

391. California Health and Safety Code §§ 1424.5 and 1290 authorize civil penalties and criminal prosecution for willful violations of licensure statutes, including the submission of false or misleading ownership information. Penalties may include fines of up to $120,000 per violation and suspension or revocation of the facility's license.

121

392. The most recent ownership submissions to CDPH concerning the San Marino Facility, dated July 24, 2025, and purporting to reflect ownership as of December 31, 2024, reflect, in relevant part, that:

  a. the San Marino Facility is owned 80% by Defendant SVPA LLC and 20% by Defendant 6812 LLC;

  b. Defendant SVPA LLC is owned 20% by Defendant Dizon, 40% by Defendant DiTullio, 20% by Defendant Gasmen, and 20% by Defendant 6812 LLC;

  c. Defendant 6812 LLC is 100% owned by Defendant Dionisio;

  d. 3GENCARE, Inc. owns 0% of the facility; and

  e. ReNew and Plaintiff each own 0%.

A copy of the July 24, 2025 filing submitted to the CDPH on behalf of the San Marino Facility is attached hereto as Exhibit "94." (Ex. 94)

393. The foregoing ownership information was submitted by or on behalf of Defendants Solorzano, 3GENCARE, Inc., C. Petterson, Dionisio, DiTullio, Dizon, Gasmen, and Cablayan on official CDPH forms that could only be transmitted by mail or through interstate electronic submission. Each form required the signatory to declare, under penalty of perjury, that the statements and attachments were true and correct.

394. In truth and in fact, the statements and representations contained in those submissions were materially false and fraudulent. Ownership and operational control of the San Marino Facility had already been transferred to ReNew and the ReNew Enterprise, with Plaintiff retaining a 50% indirect ownership interest through ReNew. Defendants knowingly prepared, signed, and caused the submission of false ownership information to conceal the enterprise's true

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

control, create the false appearance of compliance with CDPH licensing requirements, and deprive Plaintiff of his lawful ownership and economic rights.

395.    Each false submission and transmission described herein was made with the specific intent to defraud CDPH and CMS, and to further the ReNew Enterprise's continuing scheme to conceal ownership, divert revenues, and misappropriate profits from facilities nominally held in the names of others. The submissions constitute predicate acts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343.

396.    As a direct and proximate result of the foregoing conduct, Plaintiff was wrongfully excluded from ownership and management participation in ReNew and its affiliated entities, deprived of his 50% ownership interest in the revenues, assets, and profits of the San Marino Facility, and sustained substantial injury to his property and economic interests. The San Marino Facility generated approximately $8,976,710 in revenues during 2024 alone, the proceeds of which were diverted for the benefit of the ReNew Enterprise and its participants to the exclusion and detriment of Plaintiff, causing direct injury to Plaintiff's property and economic interests.

F.    **THE UNITED STATES DEPARTMENT OF JUSTICE INVESTIGATION**

397.    Commencing in or about February 2021 and continuing through the summer of 2021, the United States Department of Justice ("**DOJ**") initiated a civil investigation of ReNew and its affiliated skilled-nursing facility businesses pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3733, to determine whether there had been any violations of 31 U.S.C. § 3729 in connection with the submission of claims for payment to Medicare and Medicaid. A copy of the Complaint is attached hereto as Exhibit "95". (Ex. 95)

398.    The DOJ's civil investigation focused on whether certain skilled nursing facilities within the ReNew Group had submitted or caused the submission of false or fraudulent claims for

123

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

reimbursement to federal healthcare programs, in violation of the False Claims Act, 31 U.S.C. § 3729.

399.    In connection with that investigation, the DOJ issued twenty-seven (27) separate Civil Investigative Demands ("**CIDs**") requiring written interrogatory responses and the production of documents from ReNew, its affiliated entities, and certain individuals. The CIDs included, without limitation:

    i.    CID No. 21-104 to ReNew Health Group LLC, 02-24-2021, a copy of which is attached hereto as Exhibit "96"; (Ex. 96)

    ii.    CID No. 21-256 to ReNew Health Group LLC, 05-06-2021, a copy of which is attached hereto as Exhibit "97"; (Ex. 97)

    iii.    CID No. 21-263 to Solorzano and ReNew Health Group LLC, 06-24-2021, a copy of which is attached hereto as Exhibit "98"; (Ex. 98)

    iv.    CID No. 21-393 to ReNew Health Group LLC, 02624-2021, a copy of which is attached hereto as Exhibit "99"; (Ex. 99)

    v.    CID No. 21-422 to Solorzano and ReNew Health Group LLC, 06-24-2021, a copy of which is attached hereto as Exhibit "100"; (Ex. 100)

    vi.    CID No. 21-494 to Premier Care Simi Valley LLC, Simi Valley Healthcare Cntr & Simi Valley Care Cntr 08-02-2021, a copy of which is attached hereto as Exhibit "101"; (Ex. 101)

    vii.    CID No. 21-495 Redwood Healthcare Center LLC 08-02-2021, a copy of which is attached hereto as Exhibit "102"; (Ex. 102)

    viii.    CID No. 21-496 Route 66 Post Acute LLC, Mesa Glen Care Cntr & Mesa Glen Holdings 08-02-2021, a copy of which is attached hereto as Exhibit "103"; (Ex. 103)

    ix.    CID No. 21-497 San Gabriel Post Acute LLC, San Marino Manor & 3gencare 08-02-2021, a copy of which is attached hereto as Exhibit "104"; (Ex. 104)

    x.    CID No. 21-498 Sela Healthcare Inc, San Antonio Post Acute & Sela Healthcare 08-02-2021, a copy of which is attached hereto as Exhibit "105"; (Ex. 105)

    xi.    CID No. 21-499 Silicon Valley Post Acute LLC, Herman Health Care Cntr & Herman Sanitarium 08-02-2021, a copy of which is attached hereto as Exhibit "106"; (Ex. 106)

124

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

xii.    CID No. 21-500 The Lake Post Acute LLC, Kaweah Manor Conv Hospital 08-02-2021, a copy of which is attached hereto as Exhibit "107"; (Ex. 107)

xiii.    CID No. 21-501 Tulare Lake Post Acute LLC & Merritt Manor Conv 08-02-2021, a copy of which is attached hereto as Exhibit "108"; (Ex. 108)

xiv.    CID No. 21-502 Tule River Post Acute LLC & Porterville Conv Hosp 08-02-20211, a copy of which is attached hereto as Exhibit "109"; (Ex. 109)

xv.    CID No. 21-503 Twin Oaks Assisted Living LLC & Magnolia Health 08-02-2021,5 a copy of which is attached hereto as Exhibit "110"; (Ex. 110)

xvi.    CID No. 21-461 ReNew Health Consulting Services LLC 07-01-2021, a copy of which is attached hereto as Exhibit "111"; (Ex. 111)

xvii.    CID No. 21-505 Valley Vista Nursing and Transitional Care LLC 08-02-2021, a copy of which is attached hereto as Exhibit "112"; (Ex. 112)

xviii.    CID No. 21-485 Asistencia Villa Post Acute LLC, Asistencia Villa Rehab & Silverscreen Healthcare 08-02-2021, a copy of which is attached hereto as Exhibit "113"; (Ex. 113)

xix.    CID No. 21- 486 Canyon Vista Post Acute LLC, Holiday Manor Care Cntr & Sela Healthcare 08-02-2021, a copy of which is attached hereto as Exhibit "114"; (Ex. 114)

xx.    CID No. 21-487 Hyde Park Rehabilitation Center LLC 08-02-2021, a copy of which is attached hereto as Exhibit "115"; (Ex. 115)

xxi.    CID No. 21-488 Inland Valley Partners LLC, Pomona Valley Rehab Center & Inland Valley Care 08-02-2021, a copy of which is attached hereto as Exhibit "116"; (Ex. 116)

xxii.    CID No. 21-489 Lake Merritt Healthcare Center LLC 08-02-2021, a copy of which is attached hereto as Exhibit "117"; (Ex. 117)

xxiii.    CID No. 21-490 Miracle Mile Healthcare Center LLC, Miracle Mile Post Acute & Beverly West Healthcare 08-02-2021, a copy of which is attached hereto as Exhibit "118"; (Ex. 118)

xxiv.    CID No. 21-491 P&M Healthcare Holdings, La Mesa Post Acute & Rancho Mesa Care Center 08-02-2021, a copy of which is attached hereto as Exhibit "119"; (Ex. 119)

xxv.    CID No. 21- 492 Pacific Healthcare Group LLC & Santa Fe Heights Healthcare Center 08-02-2021, a copy of which is attached hereto as Exhibit "120"; (Ex. 120)

125

xxvi.  CID No. 21-493 Pacific Park Healthcare Center LLC, Chandler Conv Hosp & Central Conv Hosp of Glendale 08-02-20211, a copy of which is attached hereto as Exhibit "121"; (Ex. 121) and

xxvii.  CID No. 21-504 Twin Oaks Post Acute LLC & Twin Oaks Rehab & Nursing 08-02-2021, a copy of which is attached hereto as Exhibit "122." (Ex. 122)

400.  Plaintiff cooperated fully with the DOJ's civil investigation and provided responsive materials demonstrating that, under the Governing Agreement, he held a 50% ownership interest in ReNew and that all facilities named in the investigation were owned or managed through ReNew and its subsidiaries.

401.  On or about March 25, 2024, the United States of America, acting through the DOJ and on behalf of the Office of Inspector General ("**OIG-HHS**") of the Department of Health and Human Services, together with the State of California acting through its Department of Justice's Division of Medi-Cal Fraud and Elder Abuse and on behalf of the California Department of Health Care Services, entered into an agreement with ReNew, ReNew Consulting, Plaintiff, and Solorzano, resolving the civil False Claims Act investigation (the "**Settlement Agreement**"). A copy of the Settlement Agreement is attached hereto as Exhibit "123". (Ex. 123)

402.  The Settlement Agreement resolved the first False Claims Act case arising from alleged misuse of COVID-19 emergency waivers. Pursuant to the Settlement Agreement, ReNew, ReNew Consulting, Plaintiff, and Solorzano jointly agreed to pay $7.084 million to the United States and the State of California.

403.  Pursuant to the terms of the Settlement Agreement, ReNew billed Medicare under the Part A skilled nursing facility benefit for the period from March 1, 2020 through June 30, 2022, for residents who were exposed or purportedly exposed to COVID-19, and justified such billing by invoking emergency regulatory waivers, including the waiver of the three-day qualifying

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

inpatient hospital stay. The United States alleged, however, that many of the residents in question did not in fact require skilled nursing care.

404.    As described in the DOJ's accompanying complaint, ReNew allegedly treated the waivers "as a blank check to bill Medicare for nearly every resident at its facilities." Within one week of CMS announcing the waivers, ReNew allegedly began billing Part A for skilled-nursing or therapy services for residents who did not meet the clinical criteria for such care. A copy of the DOJ's accompanying Complaint is attached hereto as Exhibit "124". (Ex. 124)

405.    The conduct that formed the basis of the DOJ investigation and resulting settlement occurred solely under the operational control of Solorzano, without Plaintiff's knowledge, authorization, or consent. Plaintiff did not participate in, approve of, or derive any benefit from the acts at issue, yet was nonetheless compelled to contribute to the settlement payment.

406.    The DOJ Settlement Agreement, although limited to the resolution of potential civil claims, further demonstrated the extent of the unilateral control exercised by Solorzano and her associates, and corroborated Plaintiff's broader allegations that Defendants diverted, concealed, and misappropriated assets and revenues of ReNew for their own personal benefit.

### G.  ADDITIONAL FRAUDULENT TRANSFERS AND CONCEALMENT EFFORTS

#### i.    ReNew Health Consulting Services Scheme

407.    Following receipt of CIDs, Defendants engaged in a series of transactions designed to conceal assets, divert revenue, and perpetuate Defendant Solorzano's control over ReNew Consulting, notwithstanding her disqualification by the CDPH to own or operate skilled nursing facilities in California.

408.    Solorzano and members of the enterprise devised a scheme to disguise her continuing involvement by transferring nominal ownership of ReNew Consulting to a purportedly

127

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

independent third party who would be deemed suitable by the CDPH and CMS to serve as its public-facing owner and manager.

409.    To that end, the enterprise recruited Defendant Sharma, a licensed physical therapist with decades of experience managing therapy-service providers in California, and a long-time vendor to ReNew, to act as the nominal owner and control person of ReNew Consulting. A copy of the agreement is attached hereto as Exhibit "125". (Ex. 125)

410.    Defendants Solorzano and Sharma conspired to form Defendant Eleos and executed a set of documents purporting to transfer 100% of ReNew Consulting's membership interests from Solorzano to Eleos. These included a Membership Interest Purchase Agreement ("**ReNew Consulting MIPA**"), a Promissory Note, a Pledge Agreement, and an Option Agreement. Copies of the ReNew Consulting MIPA, Promissory Note, Pledge Agreement, and Option Agreement are attached hereto as Exhibits "126–129". (Ex. 126, Ex. 127, Ex. 128, and Ex. 129)

411.    Although ReNew owned ReNew Consulting, 50% of which belonged to Plaintiff, Solorzano falsely asserted that she personally owned the entirety of ReNew Consulting and structured the transfer to appear as a bona fide sale for $3 million, when in fact no payment was made and the transaction was financed entirely by a promissory note to Solorzano.

412.    Pursuant to the Pledge Agreement, Eleos pledged the same membership interests back to Solorzano as collateral, granting her the unrestricted right to repossess or dispose of them upon default, and thereby ensuring she retained full control despite the purported transfer.

413.    The accompanying Option Agreement gave Solorzano, or alternatively Plaintiff, an option to repurchase all of Eleos's membership interests in ReNew Consulting for $100,000 at any time within ten years, effectively nullifying any independent ownership by Eleos.

128

414.    The transaction was structured solely to mislead the CDPH and CMS into believing that Solorzano had divested her ownership and control, when in fact she remained the principal operator of ReNew Consulting and continued to receive all revenues.

415.    After regulatory approval was obtained, Solorzano and Sharma executed an undated Amendment to the ReNew Consulting MIPA, which suspended the transfer of all "financial benefits" of ReNew Consulting until Solorzano determined, in her sole discretion, that necessary approvals had been secured. The amendment preserved for Solorzano the continued receipt of all revenues and profits generated by ReNew Consulting. A copy of the updated Amendment to the ReNew Consulting MIPA is attached hereto as Exhibit "130". (Ex. 130)

416.    The foregoing agreements were transmitted through interstate wire and mail and constitute predicate acts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343.

### ii.    The Hyde Park Rehabilitation Center Transfer

417.    In furtherance of the same enterprise, Solorzano and her associates devised an additional scheme to conceal her continued control over the Hyde Park Rehabilitation Center and to deprive Plaintiff of his ownership interest therein.

418.    Hyde Park Rehabilitation Center generated more than $13.7 million in annual revenue and approximately $2.3 million in annual EBITDA, yielding a facility valuation of approximately $15 million. A copy of the Hyde Park 2024 Financials is attached hereto as Exhibit "131".(Ex. 131)

419.    From September 1, 2016 through June 2023, the facility was owned by ReNew, which was itself owned 50% by Plaintiff and 50% by Solorzano, with Defendant Hyde Park Rehabilitation Center LLC serving as the licensed operator.

420.    To divest Plaintiff's ownership and obscure Solorzano's involvement, Solorzano, Defendant PJ III, and Defendant Roberts executed an "Amended and Restated Operating

129

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Agreement of Hyde Park Rehabilitation Center LLC" (the "**A&R Operating Agreement**") falsely asserting that "Roberts and PJ III acquired 100% of the Membership Interests in the Company." A copy of the A&R Operating Agreement, together with all Exhibits thereto, is attached hereto as Exhibit "132". (Ex. 132)

421.    Exhibit A to the A&R Operating Agreement listed Defendant Roberts as contributing $16,000 and Defendant PJ III as contributing $5,000 in capital toward a $15 million enterprise, an arrangement that constituted a fraudulent conveyance and, on information derived from facility records, involved no actual payment of the stated amounts.

422.    Although Pacific Healthcare Group LLC never owned Hyde Park Rehabilitation Center LLC, Solorzano, PJ III, and Roberts executed a Membership Interest Purchase Agreement ("**MIPA**") purporting to transfer ownership from Pacific Healthcare Group to Defendants PJ III and Roberts. The MIPA required no monetary consideration and provided instead that ReNew and its predecessors would remain liable for all pre-closing obligations. A copy of the Hyde Park MIPA is attached hereto as Exhibit "133". (Ex. 133)

423.    To complete the concealment, Solorzano arranged for Hyde Park Rehabilitation Center to be subleased to Defendants PJ III and Roberts for $5,000 per month, or $60,000 annually, despite the facility's multimillion-dollar earnings (the "**Hyde Park Sublease**"). A copy of the Hyde Park Sublease is attached hereto as Exhibit "134". (Ex. 134) The Hyde Park Sublease provided Defendants PJ III and Roberts with control over a facility producing more than $13 million in annual revenue and over $2 million in profit.

424.    The Hyde Park transfer documents were transmitted through interstate wire and mail and constitute multiple predicate acts of mail and wire fraud.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

### iii.    The Schapiro Law Firm and CGM Consulting Schemes

425.    As part of the continuing effort to divert enterprise revenue and deprive Plaintiff of his ownership and distribution rights, Solorzano, together with Defendants Sod and Schapiro, established a mechanism to withdraw funds from ReNew and ReNew Consulting under the guise of professional fees.

426.    Defendant Schapiro, an attorney and principal of Defendant Schapiro Law Firm, a New York law firm, and affiliated with Defendant CGM, a Pennsylvania-based consulting firm, entered into a series of sham legal and consulting agreements with Solorzano to legitimize recurring payments from ReNew.

427.    On or about January 4, 2021, Schapiro caused the Schapiro Law Firm to execute an Engagement, Retainer, and Conflict Waiver Letter Agreement with Solorzano "and her various operating companies and affiliated entities" relating to the sale and transfer of a 26-facility skilled-nursing facility portfolio (the "**Engagement Agreement**"). A copy of the Engagement Agreement is attached hereto as Exhibit "135." (Ex. 135)

428.    The Engagement Agreement obligated ReNew, rather than Solorzano personally, to pay a monthly retainer of $62,500. No bona fide legal services were rendered under the agreement, and the funds were instead diverted for the personal benefit of Defendants Solorzano, Sod, Schapiro, and other members of the enterprise.

429.    The Engagement Agreement and related wire transfers were transmitted electronically and by mail and constitute predicate acts of mail and wire fraud.

430.    Defendants Schapiro and CGM also caused ReNew Consulting to enter into a Consulting Services Agreement with CGM, purportedly for "Strategic Advisory Services," "Operational Excellence Enhancement," and "Innovative Solutions Architecture" (the "**CGM**

131

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

**Consulting Agreement**"). In reality, CGM performed no legitimate consulting work. A copy of the CGM Consulting Agreement is attached hereto as Exhibit "136." (Ex. 136)

431.    Pursuant to the CGM Consulting Agreement, CGM received a retainer of $75,000 per month, totaling approximately $1 million per year, which, upon information and belief, was distributed among Defendants Solorzano, Sod, Schapiro, and other members of the enterprise.

432.    The CGM Consulting Agreement and each related wire transfer were transmitted across state lines and constitute distinct predicate acts of mail and wire fraud. A copy of one such wire transfer receipt is attached hereto as Exhibit "137." (Ex. 137)

433.    Through these fraudulent transfers, sham agreements, and acts of concealment, Defendants continued to deprive Plaintiff of his rightful ownership interests, revenues, and distributions from ReNew and its affiliates, and thereby perpetuated the ongoing RICO enterprise.

## H.  DEFENDANTS' FRAUDULENT CONCEALMENT OF INFORMATION FROM PLAINTIFF

434.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

435.    Throughout the course of the scheme, Solorzano and the other members of the enterprise fraudulently concealed information from Plaintiff to prevent Plaintiff from learning of the fraud or his injuries as a result of it.

436.    Solorzano and the other members of the enterprise entered into secret agreements and asset/ownership transfers, as set forth above, which led Plaintiff to reasonably believe that his ownership stake was unaffected.

437.    Solorzano and the other members of the enterprise continued to compensate Plaintiff up until 2024 in order to further conceal their conduct, the fraudulent scheme and the Plaintiff's injury arising from it.

132

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

438.   Plaintiff justifiably relied on the Defendants and, despite his due diligence, had neither actual nor constructive knowledge of his injuries until: (a) Defendants ceased compensating him in 2024 and (b) the DOJ Settlement on March 25, 2024.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. § 1962(C) – CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY)

### (AGAINST ALL DEFENDANTS)

439.   Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

440.   Pursuant to 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

441.   Each Defendant is a "person" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

442.   Defendants were employed by or associated with an enterprise engaged in, and whose activities affect, interstate commerce, within the meaning of 18 U.S.C. § 1962(c).

443.   The RICO enterprise consists of an association-in-fact among the individual and entity Defendants who have associated and conspired to defraud the California Department of Public Health ("CDPH") and Plaintiff, and to divest Plaintiff of his ownership interests in the skilled-nursing facilities that should have been owned entirely by ReNew Health Group LLC and, indirectly, 50% by Plaintiff.

444.   The enterprise has engaged in, and its activities affect, interstate commerce through its participation in the Medicare and Medi-Cal programs, the submission of claims for

133

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

reimbursement through interstate wire transmissions, the purchase of medical supplies across state lines, and the employment of out-of-state personnel and vendors.

445.    Defendants conducted and participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of numerous acts of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

446.    Defendants participated in the operation and management of the enterprise by preparing, signing, and submitting false and fraudulent documents and statements transmitted by mail and wire to the CDPH and the Centers for Medicare & Medicaid Services ("**CMS**"), by preparing false and fraudulent documentation in support of fraudulent change-of-ownership applications, by conceiving and executing the schemes described in this Complaint, by purporting to own skilled-nursing facilities they had previously transferred to entities controlled by Solorzano, and by implementing schemes to "cleanse" regulatory databases of Solorzano's ownership and control.

447.    Defendants engaged in a pattern of racketeering activity by filing and transmitting false and fraudulent change-of-ownership applications, management transfers, and licensure transfers to the CDPH and CMS relating to more than forty (40) skilled nursing facilities acquired, operated, or managed by ReNew and its subsidiaries and affiliates, as described throughout this Complaint.

448.    These filings and transmissions were made through the use of the United States mail and interstate wire communications, constituting mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343, which are predicate acts under 18 U.S.C. § 1961(1).

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

449. The foregoing acts constituted a related and continuous pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), extending over a substantial period of time from at least 2016 through the present.

450. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property. The predicate acts of mail fraud and wire fraud described above were the actual and proximate cause of Plaintiff's injuries, which include, without limitation: (i) the loss of distributions and profits of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits generated from the sale of certain nursing facilities owned or operated by the ReNew Group, believed to exceed $15 million; (iv) the loss of 50% of the monies stolen and diverted from the ReNew Group, including monthly payments of $137,500 made to the Schapiro Law Firm and CGM Management LLC; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing the skilled nursing facilities, believed to total approximately $15 million. Plaintiff's aggregate injury to his business and property is believed to exceed $255 million, subject to proof at trial.

451. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages for injury to his business and property, together with costs and reasonable attorneys' fees. The treble damage remedy results in total recoverable damages believed to exceed $765 million against Defendants, subject to proof at trial.

## SECOND CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. § 1962(B) – ACQUISITION AND MAINTENANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY)

### (AGAINST DEFENDANTS SOLORZANO, DIONISIO, DIZON, DITULLIO, C. PETTERSON, LANCE, MUSOLINO, SOD, JADEN, PJ, PJ III, ROBERTS, CHASE, THE CHASE FAMILY TRUST, S. PETTERSON, SHARMA, ELEOS, SCHAPIRO, CGM, THE SCHAPIRO LAW FIRM, HODGES, NGUYEN, WEINBERGER, MAHAN, WEISS, HADASSA, SAIDOFF, , THS, APC, IVP,, MGH,

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

**MMH, OCCST, P&M, RHCST, 6812, SVPA, SFH, SFHCST, AVPA, 1875, CRA, ECI, 9021, 5270, SVRTC, Sela, VVN, AHCST, HPRC, and RHH)**

452.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

453.    Pursuant to 18 U.S.C. § 1962(b), it is unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

454.    This cause of action is asserted against those Defendants who acquired or maintained, directly or indirectly, an interest in or control of the RICO enterprise through a pattern of racketeering activity, including Solorzano, Dionisio, Dizon, DiTullio, C. Petterson, Lance, Musolino, Sod, Jaden, PJ, PJ III, Roberts, Chase, The Chase Family Trust, S. Petterson, Sharma, Eleos, Schapiro, CGM, The Schapiro Law Firm, Hodges, Nguyen, Weinberger, Mahan, Weiss, Hadassa, Saidoff, THS, APC, IVP, MGH, MMH, OCCST, P&M, RHCST, 6812, SVPA, SFH, SFHCST, AVPA, 1875, CRA, ECI, 9021, 5270, SVRTC, Sela, VVN, AHCST, HPRC, and RHH.

455.    The above-named Defendants each acquired or maintained interests in, or control of, an "enterprise" affecting interstate commerce, within the meaning of 18 U.S.C. § 1961(4).

456.    The enterprise consists of an association-in-fact among the individual and entity Defendants who associated and conspired to defraud the CDPH and Plaintiff, and to divest Plaintiff of his ownership interests in nursing facilities that should have been wholly owned by ReNew and, indirectly, 50% by Plaintiff.

457.    The enterprise engaged in, and its activities affected, interstate commerce through the submission of Medicare and Medi-Cal billing claims, the purchase and receipt of supplies and

136

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

equipment from vendors across state lines, and the employment and payment of out-of-state personnel.

458. Defendants acquired and maintained their interests in, or control of, the enterprise through a pattern of racketeering activity, including acts of mail and wire fraud as detailed throughout this Complaint.

459. The predicate acts include filing and transmitting false and fraudulent change-of-ownership applications, management transfer documents, and licensure transfer submissions with the CDPH and CMS with respect to more than forty (40) skilled nursing facilities owned, managed, or operated by ReNew, its subsidiaries, and affiliates, all of which caused injury to Plaintiff's business and property.

460. These filings and transmissions were made through the use of the United States mail and interstate wire communications, constituting mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343, which are predicate acts of racketeering activity under 18 U.S.C. § 1961(1).

461. As set forth in this Complaint, each of the Defendants identified above committed two or more of the predicate acts enumerated in 18 U.S.C. § 1961(1)(A)–(B) and thereby violated 18 U.S.C. § 1962(b) by acquiring or maintaining interests in, or control of, the ReNew enterprise through a pattern of racketeering activity. Each Defendant did so to further his or her own interests and those of the enterprise, including the fraudulent acquisition and retention of ownership and control over nursing facilities and related businesses that should have been owned entirely by ReNew and 50% by Plaintiff.

462. Defendants' pattern of racketeering activity consisted of numerous related acts extending over a substantial period of time beginning in or about 2016 and continuing through the

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

present, and constituted a continuing course of conduct intended to perpetuate their unlawful control of the enterprise.

463. As a direct and proximate result of the foregoing violations of 18 U.S.C. § 1962(b), Plaintiff has suffered injury to his business and property. The predicate acts of mail and wire fraud described above were the actual and proximate cause of Plaintiff's losses, including without limitation: (i) the loss of distributions and profits of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits from the sale of certain nursing facilities owned or operated by the ReNew Group, believed to exceed $15 million; (iv) the loss of 50% of the funds diverted from ReNew to make monthly payments of $137,500 to the Schapiro Law Firm and CGM; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing the skilled nursing facilities, estimated at approximately $15 million. Plaintiff's total injury to business and property is believed to exceed $255 million, subject to proof at trial.

## THIRD CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. § 1962(D) – CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)

### (AGAINST ALL DEFENDANTS)

464. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

465. Pursuant to 18 U.S.C. § 1962(d), it is unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)" of 18 U.S.C. § 1962.

466. Defendants knowingly and willfully conspired and agreed with one another to violate 18 U.S.C. §§ 1962(b) and (c) by acquiring and maintaining an interest in, and conducting the affairs of, an enterprise through a pattern of racketeering activity consisting of repeated acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

138

467. Each Defendant agreed to the overall objective of the conspiracy and intended to further its unlawful purpose by preparing, signing, transmitting, and concealing false and fraudulent documents and statements submitted to the CDPH, CMS, lenders, and other institutions in furtherance of the enterprise.

468. In furtherance of the conspiracy, Defendants committed and caused to be committed overt acts, including but not limited to the submission of fraudulent change-of-ownership applications, the execution of sham management and consulting agreements, the concealment of Solorzano's control and ownership, and the diversion of funds and profits from ReNew to accounts under their control.

469. Each Defendant was aware of the essential nature and scope of the enterprise and intended to further its objectives by engaging in acts that advanced its scheme to defraud Plaintiff and maintain control over the enterprise's assets and revenue streams.

470. The pattern of racketeering activity and the conspiracy alleged herein have been continuous since at least 2016 and remain ongoing, constituting a continuing threat of further racketeering activity.

471. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. §§ 1962(b) and (c), Plaintiff has suffered injury to his business and property, including the loss of his ownership interests, profits, and distributions described above, in an amount believed to exceed $255 million, subject to proof at trial.

472. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold his damages, together with the costs of suit and reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. § 1341 – MAIL FRAUD)

### (AGAINST ALL DEFENDANTS)

139

473.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

474.    Defendants devised and executed a scheme and artifice to defraud Plaintiff of his 50% ownership interest in ReNew, its subsidiaries, affiliates, and related businesses through the preparation and submission of fraudulent documents, sham transfers, and false regulatory filings, as detailed throughout this Complaint.

475.    In furtherance of this scheme, Defendants knowingly used, caused to be used, or aided and abetted the use of the United States mails to transmit and deliver false and fraudulent change-of-ownership applications, management-transfer agreements, licensure-transfer documents, and related materials to CDPH and CMS.

476.    Defendants acted with specific intent to defraud Plaintiff and to deceive regulatory authorities by concealing Defendant Solorzano's continuing ownership and control of ReNew and its affiliates, misrepresenting material facts concerning ownership, and obstructing Plaintiff's ability to exercise his contractual and ownership rights.

477.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1341, Plaintiff has sustained substantial injury to his business and property, including but not limited to: (i) the loss of distributions and profits of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits generated from the sale of nursing facilities owned or operated by the ReNew Group, believed to exceed $15 million; (iv) the loss of 50% of the funds diverted from ReNew and used to make monthly payments of $137,500 to the Schapiro Law Firm and CGM Management LLC; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing skilled nursing

140

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

facilities, believed to total approximately $15 million. Plaintiff's total damages are believed to exceed $255 million, subject to proof at trial.

**FIFTH CAUSE OF ACTION**

**(VIOLATION OF 18 U.S.C. § 1343 – WIRE FRAUD)**

**(AGAINST ALL DEFENDANTS)**

478.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

479.    Defendants devised and executed a scheme and artifice to defraud Plaintiff of his 50% ownership interest in ReNew, its subsidiaries, affiliates, and related businesses through fraudulent transfers, false filings, and other deceptive acts as detailed throughout this Complaint.

480.    In furtherance of this scheme, Defendants knowingly used, caused to be used, or aided and abetted the use of interstate wire communications, including email, electronic document submissions, and online transmission portals, to submit false and fraudulent change-of-ownership applications, management-transfer agreements, licensure-transfer documents, and related materials to CDPH and CMS.

481.    Defendants also used interstate wire transfers to divert and conceal enterprise funds, including monthly transfers of approximately $137,500 made from ReNew accounts through fraudulent legal and consulting agreements with the Schapiro Law Firm and CGM Management LLC.

482.    Defendants acted with specific intent to defraud Plaintiff and to deceive regulatory authorities by concealing Defendant Solorzano's continuing ownership and control of ReNew and its affiliates, misrepresenting material facts concerning ownership and management, and obstructing Plaintiff's ability to exercise his contractual and ownership rights.

141

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

483.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1343, Plaintiff has sustained substantial injury to his business and property, including but not limited to: (i) the loss of distributions and profits of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits generated from the sale of nursing facilities owned or operated by the ReNew Group, believed to exceed $15 million; (iv) the loss of 50% of the funds diverted from ReNew and used to make monthly payments of $137,500 to the Schapiro Law Firm and CGM Management LLC; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing skilled nursing facilities, believed to total approximately $15 million. Plaintiff's total damages are believed to exceed $255 million, subject to proof at trial.

### SIXTH CAUSE OF ACTION

### (VIOLATION OF THE FEDERAL FALSE CLAIMS ACT – 31 U.S.C. § 3729 AND THE CALIFORNIA FALSE CLAIMS ACT – CAL. GOV'T CODE § 12650)

### (AGAINST DEFENDANTS SOLORZANO, DIONISIO, DIZON, DITULLIO, C. PETTERSON, LANCE, MUSOLINO, SOD, JADEN, PJ, PJ III, ROBERTS, S. PETTERSON, SHARMA, ELEOS, NGUYEN, WEINBERGER, MAHAN, M. WEISS, H. WEISS, AND SAIDOFF)

484.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

485.    The skilled-nursing facilities owned and/or controlled by Defendants Solorzano, Dionisio, Dizon, Ditullio, C. Petterson, Lance, Musolino, Sod, Jaden, PJ, PJ III, Roberts, S. Petterson, Sharma, Eleos, Nguyen, Weinberger, Mahan, M. Weiss, H. Weiss, Saidoff, and (collectively, the "**False Claims Defendants**") directly billed the federal government for short-term, post-hospital skilled nursing and rehabilitation services under the Medicare and Medicaid programs administered through CMS, a division of the United States Department of Health and Human Services. These claims sought payment for room and board, skilled nursing and therapy

142

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

services, medications, medical supplies, and other costs purportedly related to skilled care episodes.

486.    The False Claims Defendants also directly billed the State of California for long-term custodial care and ongoing skilled nursing services for low-income residents under the Medi-Cal program, administered through the California Department of Health Care Services ("**DHCS**"), seeking payment for daily rates covering custodial and routine nursing services, assistance with activities of daily living, and room and board.

487.    Claims for skilled nursing facility services under Medicare Part A were submitted electronically through CMS's electronic data interchange system using the UB-04 (CMS-1450) institutional claim form.

488.    Claims for skilled nursing facility services under the Medi-Cal program were submitted electronically through the DHCS claims-processing systems (California MMIS / Medi-Cal Rx, depending on service type).

489.    Each claim submission required an authorized representative of the facility to certify under penalty of civil and criminal law that the services billed were medically necessary and furnished as represented. The standard Medicare certification statement reads: "I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision."

490.    Similarly, the Medi-Cal Provider Manual requires certification that each claim is "true, accurate, and complete, and is submitted in compliance with all Medi-Cal laws, regulations, and program policies, and is subject to review and audit." These certifications are made under penalty of perjury pursuant to California Welfare and Institutions Code § 14107.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

491.    False or fraudulent claims expose facilities and their owners to criminal liability, civil fines, treble damages, exclusion from government programs, and other sanctions under both federal and state law.

492.    The False Claims Defendants conspired to, and did knowingly present, or cause to be presented, false or fraudulent claims for payment or approval to the United States government under the Medicare and Medicaid programs and to the State of California under the Medi-Cal program.

493.    The false claims included, but were not limited to, billing for skilled nursing and rehabilitation services that were medically unnecessary or not provided, misrepresenting patient conditions to justify higher reimbursement levels, and falsely certifying compliance with federal and state requirements governing the operation and ownership of skilled nursing facilities.

494.    According to the United States Department of Justice investigation and settlement referenced above, ReNew and its related facilities billed Medicare and Medi-Cal for skilled nursing and rehabilitation services for patients who did not need such services, and exploited COVID-19 regulatory waivers "as a blank check to bill Medicare for nearly every resident at its facilities," even when skilled care was not required.

495.    These false and fraudulent claims were material to the payment decisions of both CMS and DHCS, as evidenced by the $7.084 million settlement entered on March 25, 2024, between the United States, the State of California, and Defendants ReNew Health Group LLC, ReNew Health Consulting Services LLC, Solorzano, and Plaintiff.

496.    Each false claim submitted by the False Claims Defendants, or on behalf of ReNew, to the United States government constitutes a violation of the Federal False Claims Act, 31 U.S.C.

144

§ 3729; and each false claim submitted to the State of California constitutes a violation of the California False Claims Act, Cal. Gov't Code § 12650 et seq.

497.    As a direct and proximate result of these violations, Plaintiff has been injured in his business and property, including but not limited to exposure to civil penalties exceeding $7 million arising from the 2024 settlement, loss of ownership value, reputational harm, and associated financial damages to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA FRAUDULENT TRANSFER ACT – CAL. CIV. CODE § 3439.04)

### (AGAINST ALL DEFENDANTS EXCEPT SCHAPIRO, CGM, AND SCHAPIRO LAW FIRM)

498.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

499.    As set forth in detail above, all Defendants except Schapiro, CGM, and Schapiro Law Firm, (collectively, the "**Count VII Defendants**") conspired to, and did, transfer or cause to be transferred, without Plaintiff's consent and without any consideration, all of Plaintiff's direct and indirect ownership interests in the following entities and the skilled-nursing facilities or businesses they owned, managed, and/or operated (collectively, "**Plaintiff's Ownership Interests**"):

- ReNew Health Group LLC

- ReNew Health Consulting Services LLC

- Orinda Care Center LLC

- Riverside Heights Healthcare Center LLC

- Arrowhead Healthcare Center LLC

- Griffith Park Rehabilitation Center LLC (d/b/a Griffith Park Healthcare Center)

145

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

- Parkwest Rehabilitation Center LLC (d/b/a Parkwest Healthcare Center)

- Santa Fe Heights Healthcare Center LLC

- Simi Valley Healthcare Center LLC (d/b/a Simi Valley Care Center)

- Hyde Park Rehabilitation Center LLC (d/b/a Hyde Park Healthcare Center)

- Rehabilitation Center of Orange County LLC (d/b/a Healthcare Center of Orange County)

- Redwood Healthcare Center LLC

- Lake Merritt Healthcare Center LLC

- Valley Vista Nursing and Transitional Care LLC

- Canyon Vista Post Acute LLC

- Silicon Valley Post Acute LLC (d/b/a Herman Health Care Center)

- Asistencia Villa Post Acute LLC (d/b/a Asistencia Villa Rehabilitation and Care Center)

- Route 66 Post Acute LLC

- La Mesa Post Acute LLC

- San Antonio Post Acute LLC

- Pacific Park Healthcare Center LLC

- The Lake Post Acute LLC

- Tulare Lake Post Acute LLC

- Tule River Post Acute LLC

- Twin Oaks Post Acute LLC

- Miracle Mile Post Acute LLC

- Twin Oaks Assisted Living LLC

146

- San Gabriel Post Acute LLC

- Central Convalescent Hospital Inc.

- Chestnut Ridge Post Acute LLC

- Sela Healthcare Inc.

- Silvercreen Healthcare Inc.

- Mesa Glen Holdings LLC

- P&M Healthcare Holdings Inc.

- Miracle Mile Post Acute LLC

- Inland Valley Partners LLC

- Premier-Care Simi Valley LLC

- Sapphire Operations LLC

- Herman Sanitarium

- Gencare Inc.

- Kaweah Manor Inc.

- Merritt Manor Inc.

- Porterville Convalescent Inc.

- Twin Oaks Assisted Living Inc.

- Twin Oaks Rehabilitation & Nursing Center Inc.

500. The Count VII Defendants made the transfers of Plaintiff's Ownership Interests with actual intent to hinder, delay, or defraud a creditor, in violation of California Civil Code § 3439.04(a)(1).

501. The Count VII Defendants transferred Plaintiff's Ownership Interests without his consent and without receiving reasonably equivalent value in exchange, thereby depriving him of

147

substantial financial benefits including profit distributions, salary, compensation, and profits from facility sales and the intrinsic value of his ownership interests.

502. The transfers were structured to prevent Plaintiff from receiving any financial benefits to which he was entitled as an owner, including: (i) the loss of profit distributions of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits generated from the sale of certain skilled-nursing facilities, believed to exceed $15 million; (iv) the loss of 50% of the funds stolen or skimmed from the ReNew Group and used to make payments of $137,500 per month to the Schapiro Law Firm and CGM Management LLC; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing skilled nursing facilities, believed to total approximately $15 million.

503. The California Uniform Fraudulent Transfer Act ("**CUFTA**") provides creditors with remedies including avoidance of the transfer to the extent necessary to satisfy the creditor's claim, attachment or other provisional relief against the transferred asset, injunctive relief against further disposition of the asset, and appointment of a receiver to take charge of the asset. Cal. Civ. Code § 3439.07(a).

504. Under CUFTA, a creditor may also recover a money judgment for the lesser of the value of the asset transferred or the amount necessary to satisfy the creditor's claim. Cal. Civ. Code § 3439.08(b)(1).

505. Under Cal. Civ. Code § 3439.01, a "creditor" is a person who has a "claim," broadly defined as a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed.

148

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

506.    This expansive definition includes individuals with contingent claims, such as tort claimants, even before a judgment is rendered, as the debtor-creditor relationship arises at the moment the cause of action accrues.

507.    Plaintiff was a creditor at the time of each transfer of his Ownership Interests or became a creditor within a reasonable time thereafter.

508.    Plaintiff's ownership of the transferred interests gave him a claim for the value of those interests and for the financial benefits they would have generated.

509.    Plaintiff was directly and proximately harmed by the Count VII Defendants' transfers of his Ownership Interests.

510.    As a result of these fraudulent transfers, Plaintiff has suffered damages exceeding $255 million, including approximately $10 million per year in profit distributions since 2018, $3 million annually in salary and compensation since 2022, profits from the sale of certain skilled-nursing facilities exceeding $15 million, 50% of money diverted through $137,500 monthly payments to the Schapiro Law Firm and CGM Management LLC, and 50% of profits from ReNew Consulting for managing skilled nursing facilities aggregating approximately $15 million.

## EIGHTH CAUSE OF ACTION

### (CONVERSION)

### (AGAINST ALL DEFENDANTS)

511.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

512.    Plaintiff owned and had the right to possess his direct and indirect ownership interests in ReNew, its subsidiaries, affiliates, and related entities, together with the financial benefits, distributions, and profits derived therefrom (collectively, "**Plaintiff's Property**").

149

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

513.    Defendants wrongfully converted Plaintiff's Property by fraudulently transferring, taking, disposing of, and exercising dominion and control over Plaintiff's Ownership Interests and the proceeds therefrom in a manner inconsistent with Plaintiff's rights, without his consent and without providing any consideration, thereby depriving him of his ownership and possessory interests, as detailed throughout this Complaint.

514.    As a direct and proximate result of Defendants' conversion of Plaintiff's Property, Plaintiff has suffered damages exceeding $255 million, including but not limited to: (i) the loss of profit distributions of approximately $10 million per year since 2018; (ii) the loss of salary and related compensation of approximately $3 million annually since 2022; (iii) the loss of profits from the sale of certain ReNew Group skilled-nursing facilities exceeding $15 million; (iv) the loss of 50% of the funds diverted to make $137,500 monthly payments to the Schapiro Law Firm and CGM Management LLC; and (v) the loss of 50% of the profits generated by ReNew Consulting for managing skilled nursing facilities, aggregating approximately $15 million, together with interest, consequential damages, and fair compensation for the time and expenses incurred in seeking recovery of his property.

## NINTH CAUSE OF ACTION
### (FRAUD)
### (AGAINST ALL DEFENDANTS)

515.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

516.    Defendants made numerous false representations to governmental regulators concerning Plaintiff's and Defendants' ownership interests in ReNew Health Group LLC, ReNew Health Consulting Services LLC, and their affiliated entities, including Orinda Care Center LLC, Riverside Heights Healthcare Center LLC, Arrowhead Healthcare Center LLC, Griffith Park

150

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Case 2:26-cv-05275   Document 2   Filed 05/15/26   Page 151 of 171   Page ID #:154

Rehabilitation Center LLC (d/b/a Griffith Park Healthcare Center), Parkwest Rehabilitation Center LLC (d/b/a Parkwest Healthcare Center), Santa Fe Heights Healthcare Center LLC, Simi Valley Healthcare Center LLC (d/b/a Simi Valley Care Center), Hyde Park Rehabilitation Center LLC (d/b/a Hyde Park Healthcare Center), Rehabilitation Center of Orange County LLC (d/b/a Healthcare Center of Orange County), Redwood Healthcare Center LLC, Lake Merritt Healthcare Center LLC, Valley Vista Nursing and Transitional Care LLC, Canyon Vista Post Acute LLC, Silicon Valley Post Acute LLC (d/b/a Herman Health Care Center), Asistencia Villa Post Acute LLC (d/b/a Asistencia Villa Rehabilitation and Care Center), Route 66 Post Acute LLC, La Mesa Post Acute LLC, San Antonio Post Acute LLC, Pacific Park Healthcare Center LLC, The Lake Post Acute LLC, Tulare Lake Post Acute LLC, Tule River Post Acute LLC, Twin Oaks Post Acute LLC, Miracle Mile Post Acute LLC, Twin Oaks Assisted Living LLC, San Gabriel Post Acute LLC, Central Convalescent Hospital Inc., Chestnut Ridge Post Acute LLC, Sela Healthcare Inc., Silvercreen Healthcare Inc., Mesa Glen Holdings LLC, P&M Healthcare Holdings Inc., Inland Valley Partners LLC, Premier-Care Simi Valley LLC, Sapphire Operations LLC, Herman Sanitarium, Gencare Inc., Kaweah Manor Inc., Merritt Manor Inc., Porterville Convalescent Inc., Twin Oaks Assisted Living Inc., and Twin Oaks Rehabilitation & Nursing Center Inc., as detailed throughout this Complaint.

517. Defendants falsely represented to governmental regulators that they had formed new entities which, pursuant to the governing agreements, rightfully should have been owned by ReNew and, indirectly, by Plaintiff. Instead, members of the enterprise fraudulently claimed personal ownership of those entities, excluding Plaintiff, as set forth in detail throughout this Complaint.

151

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

518.    Defendants falsely represented to regulators that ownership of ReNew Health Consulting Services LLC had been transferred to Defendant Sharma and her company, Defendant Eleos, without Plaintiff's consent and without consideration, to deceive the State of California, Medicare, and Medicaid into believing that Defendant Solorzano no longer managed or controlled ReNew Consulting, despite her continued operation and financial control over that entity, as detailed throughout this Complaint.

519.    Defendants made false representations by falsifying "amended and restated" operating agreements and other organizational documents to reflect sham ownership transfers and to substitute members of the enterprise in place of Plaintiff, thereby creating the false appearance that Plaintiff never owned any interest in the affected entities, as detailed throughout this Complaint.

520.    Defendants made false representations in connection with the fraudulent sublease of the Hyde Park Rehabilitation Center to Defendants Jaden and Roberts, pursuant to which a facility generating more than $13.7 million in annual revenue and more than $2.3 million in EBITDA was subleased for only $60,000 per year, representing less than 2% of EBITDA, thereby depriving Plaintiff of his rightful ownership share of that income, as set forth in detail throughout this Complaint.

521.    Because CDPH denied multiple ownership and licensure applications by Defendant Solorzano and her affiliates since 2021, Defendants Solorzano, Sharma, and Eleos executed and submitted false certifications under penalty of perjury, falsely claiming that Solorzano had divested from ReNew Consulting when, in fact, she retained ownership and control. These false filings enabled the enterprise to continue generating more than $13 million annually in management fees

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

while concealing Plaintiff's ownership and diverting his 50% share of the income, as detailed throughout this Complaint.

522. Defendants Solorzano, Schapiro, Sod, and the Schapiro Law Firm made false representations in connection with a fraudulent engagement agreement purporting to retain the Schapiro Law Firm to represent Solorzano and her affiliates, pursuant to which ReNew, rather than Solorzano personally, was obligated to pay a monthly retainer of $62,500. No bona fide legal services were rendered under the agreement. Instead, the arrangement was intended to divert $62,500 per month from the ReNew Group to fund the RICO enterprise and compensate its members, thereby depriving Plaintiff of his rightful ownership and financial interests.

523. Defendants Solorzano, Schapiro, Sod, and CGM Management LLC made false representations in a fraudulent "consulting agreement" executed in or about January 2024, under which CGM purported to provide "Strategic Advisory Services," "Operational Excellence Enhancement," and "Innovative Solutions Architecture." In truth, no consulting services were performed, and the $75,000 monthly retainer paid under this agreement was a vehicle to divert and misappropriate ReNew funds, causing further injury to Plaintiff.

524. Defendants made false representations in connection with acquiring or maintaining interests in the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b), as detailed throughout this Complaint.

525. Defendants made false representations in connection with their participation in the conduct of the enterprise's affairs through a pattern of racketeering activity by persons employed by or associated with the enterprise, in violation of 18 U.S.C. § 1962(c), as detailed throughout this Complaint.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

526.    Defendants made false representations in connection with overt acts committed in furtherance of their conspiracy to defraud CDPH, the federal government, and Plaintiff, in violation of 18 U.S.C. § 1962(d), as detailed throughout this Complaint.

527.    Defendants Solorzano, and S. Petterson, together with those aiding and abetting them, certified and filed false financial reports, financial statements, claim submissions, and tax returns concerning the ReNew Group entities, which were submitted to CDPH, CMS, Medicare, Medi-Cal, the U.S. Department of Justice, the Internal Revenue Service, and state taxing authorities. These submissions fraudulently omitted illegally obtained income and falsely reported ownership interests, thereby concealing Defendants' unlawful gains and Plaintiff's deprivation of same.

528.    Each Defendant making the false representations described in paragraphs 555 through 567 knew the statements were false at the time they were made.

529.    Each Defendant making such false representations intended to deceive regulators, conceal the fraudulent transfers of Plaintiff's ownership interests, and facilitate the diversion of his property to Defendants' benefit.

530.    The false representations made by Defendants constitute fraud under California law.

531.    Governmental regulators justifiably relied on these misrepresentations, enabling Defendants to consummate the fraudulent transfers and deprive Plaintiff of his ownership interests, income, and property.

532.    Plaintiff alleges that his ownership interests in the ReNew Group entities were fraudulently transferred without his consent and without consideration, through misrepresentations that deceived governmental regulators who relied upon them. Plaintiff suffered substantial

154

financial injury as a result of Defendants' fraudulent conduct and need not prove personal reliance, as the causation requirement under 18 U.S.C. § 1964(c) is satisfied by reliance by third parties such as regulators.

533. As a direct and proximate result of Defendants' fraud and fraudulent schemes, Plaintiff has suffered damages including: (i) injury to his business and property; (ii) deprivation of ownership rights; (iii) concealment of assets and diversion of distributions; and (iv) obstruction of regulatory oversight that enabled Defendants to continue their unlawful conduct.

534. Plaintiff's resulting financial harm includes the loss of profit distributions of approximately $10 million per year since 2018, loss of salary and compensation of approximately $3 million annually since 2022, loss of profits from sales of ReNew Group skilled-nursing facilities exceeding $15 million, loss of 50% of the funds diverted to make $137,500 monthly payments to the Schapiro Law Firm and CGM Management LLC, and loss of 50% of profits from ReNew Consulting's management activities, aggregating approximately $15 million, with total damages exceeding $255 million.

535. Defendants' fraudulent acts were willful, intentional, and malicious, or were committed with conscious disregard of Plaintiff's rights, with the intent to enrich themselves and harm Plaintiff. Accordingly, Plaintiff seeks punitive and exemplary damages in an amount not less than three times his actual damages.

## TENTH CAUSE OF ACTION
### (BREACH OF CONTRACT)
### (AGAINST DEFENDANT SOLORZANO)

536. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

155

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

537.    As previously alleged, Plaintiff and Defendant Solorzano entered into a valid and enforceable Governing Agreement pursuant to which they agreed to share equally in the ownership, management, and profits of ReNew Health Group LLC and all related and subsequently formed entities.

538.    Plaintiff has performed all obligations required of him under the Governing Agreement.

539.    Defendant Solorzano breached the Governing Agreement by, among other things:

(a) excluding Plaintiff from management and control of ReNew and its affiliates;

(b) transferring and causing others to transfer ownership interests in ReNew and related entities without Plaintiff's consent or any consideration;

(c) withholding and diverting Plaintiff's 50% share of profits, distributions, and proceeds;

(d) admitting new members and executing agreements affecting ownership and control without Plaintiff's required written approval;

(e) removing Plaintiff's authority over company accounts and funds;

(f) competing with and interfering in the business of ReNew in violation of the non-competition provisions; and

(g) otherwise violating the express and implied covenants of the Governing Agreement as detailed throughout this Complaint.

540.    Defendant Solorzano's breaches were deliberate and undertaken for the purpose of depriving Plaintiff of his contractual rights, ownership interests, and economic benefits under the Governing Agreement.

541.    As a direct and proximate result of Defendant Solorzano's breaches, Plaintiff has suffered damages exceeding $255 million, including but not limited to: loss of profit distributions of approximately $10 million per year since 2018; loss of salary and compensation of approximately $3 million annually since 2022; loss of profits from the sale of certain ReNew

156

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

Group facilities exceeding $15 million; loss of 50% of funds diverted for $137,500 monthly payments to the Schapiro Law Firm and CGM Management LLC; and loss of 50% of profits generated by ReNew Consulting for managing skilled nursing facilities, aggregating approximately $15 million.

## ELEVENTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)
### (AGAINST DEFENDANT SOLORZANO)

542.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

543.    As Plaintiff's partner, co-member, and co-officer in ReNew and the ReNew Group, Defendant Solorzano owed fiduciary duties of the highest order to Plaintiff, including but not limited to:

(a) the duty of undivided loyalty;

(b) the duty to act in good faith and in the best interests of the company and its assets;

(c) the duty to avoid self-dealing and not to profit at the expense of the company or Plaintiff;

(d) the duty of full and honest disclosure concerning all material facts;

(e) the duty to preserve and protect company assets and Plaintiff's 50% ownership interest therein; and

(f) the duty to refrain from misappropriating funds, business opportunities, or property belonging to ReNew or Plaintiff.

544.    Solorzano breached her fiduciary duties by engaging in the wrongful conduct alleged throughout this Complaint, including excluding Plaintiff from management and control; transferring and concealing ownership interests in ReNew and its affiliates; diverting profits and funds for her own use and that of her co-conspirators; and misappropriating assets and business opportunities belonging to ReNew and Plaintiff.

157

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

545.    Solorzano's conduct was intentional, self-interested, and undertaken in bad faith, in direct violation of her fiduciary obligations to Plaintiff.

546.    As a direct and proximate result of Solorzano's breaches of fiduciary duty, Plaintiff has suffered substantial damages, including but not limited to: loss of profit distributions of approximately $10 million per year since 2018; loss of salary and related compensation of approximately $3 million annually since 2022; loss of profits from the sale of certain ReNew Group facilities exceeding $15 million; loss of 50% of funds diverted for $137,500 monthly payments to the Schapiro Law Firm and CGM Management LLC; and loss of 50% of profits generated by ReNew Consulting for managing skilled nursing facilities, aggregating approximately $15 million. Plaintiff's total damages exceed $255 million, subject to proof at trial.

## TWELFTH CAUSE OF ACTION

### (AIDING AND ABETTING SOLORZANO'S BREACHES OF CONTRACT AND BREACHES OF FIDUCIARY DUTY)

### (AGAINST ALL DEFENDANTS EXCEPT DEFENDANT SOLORZANO)

547.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

548.    All Defendants other than Solorzano (the "**Aiding Defendants**") knew that Plaintiff was Solorzano's 50% partner in the ReNew Group; that he served as Chief Operating Officer; that he contributed the capital and expertise that enabled the growth of the ReNew enterprise; and that he and Solorzano were bound by the Governing Agreement, which imposed mutual contractual and fiduciary obligations on Solorzano.

549.    As alleged above, Solorzano breached her fiduciary duties to Plaintiff and the ReNew Group, including duties of loyalty, good faith, and fair dealing, which proximately caused substantial injury to Plaintiff.

158

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

550. The Aiding Defendants also knew that Plaintiff was Solorzano's 50% partner and that he held a right to indirectly own 50% of all assets and businesses comprising the ReNew Group.

551. As further alleged, Solorzano breached the Governing Agreement by excluding Plaintiff from management and ownership, diverting profits and assets, and transferring or concealing company interests without consent, which proximately caused injury to Plaintiff.

552. The Aiding Defendants knowingly and substantially assisted Solorzano in her breaches of fiduciary duty and contract by participating in, facilitating, concealing, or benefiting from the wrongful transfers of ownership interests, diversion of funds, and misappropriation of ReNew Group assets, all to Plaintiff's detriment.

553. Accordingly, the Aiding Defendants are jointly and severally liable for aiding and abetting Solorzano's breaches of fiduciary duty and her breaches of the Governing Agreement, and Plaintiff is entitled to recover all resulting damages, including but not limited to the losses exceeding $255 million as set forth herein.

## THIRTEENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)
### (AGAINST ALL DEFENDANTS)

554. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

555. As alleged above, Defendant Solorzano and the other Defendants systematically diverted Plaintiff's ownership interests in, and the economic benefits appurtenant to, the ReNew Group and its affiliated entities, which were to be wholly owned by ReNew and indirectly, 50% by Plaintiff.

159

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

556.   Each Defendant knowingly received, retained, and benefited from the wrongful transfer and diversion of Plaintiff's ownership interests, distributions, and profits, without providing any consideration, and converted such benefits to their own use and to the use of the RICO enterprise.

557.   The financial benefits unjustly retained by Defendants include, without limitation, approximately $10 million per year in profit distributions since 2018; $3 million annually in salary and compensation since 2022; profits from the sale of ReNew Group skilled-nursing facilities exceeding $15 million; 50% of funds diverted to pay $137,500 per month to the Schapiro Law Firm and CGM Management LLC; and 50% of profits from ReNew Consulting's management of skilled nursing facilities aggregating approximately $15 million.

558.   By reason of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense, and equity and good conscience require that Defendants disgorge all benefits wrongfully obtained and pay restitution to Plaintiff in an amount to be determined at trial but believed to exceed $255 million.

## FOURTEENTH CAUSE OF ACTION
### (CIVIL CONSPIRACY)
### (AGAINST ALL DEFENDANTS)

559.   Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

560.   Under California law, a claim for civil conspiracy requires proof of: (1) the formation and operation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages resulting from such wrongful conduct.

561.   To the extent applicable under federal law, 42 U.S.C. § 1985 likewise recognizes liability for civil conspiracies formed for the purpose of depriving a person of constitutional or

160

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

statutory rights, requiring proof of (1) the existence of a conspiracy; (2) a conspiratorial purpose to deprive the plaintiff of rights; (3) an overt act in furtherance of the conspiracy; and (4) injury or damage resulting therefrom.

562.    Here, Defendants formed and operated a conspiracy constituting the RICO criminal enterprise alleged herein, with the purpose and effect of defrauding Plaintiff of his 50% ownership interest in the ReNew Group.

563.    Each Defendant knowingly participated in the conspiracy with the intent to injure Plaintiff, and acted with awareness that the planned conduct was unlawful, fraudulent, and tortious. Defendants agreed among themselves to advance the objectives of the enterprise and to aid and abet its commission.

564.    The wrongful acts committed in furtherance of the conspiracy included, without limitation: (a) fraudulent transfers of ownership interests; (b) filing false and misleading regulatory documents; (c) creating sham transactions and entities; (d) concealing true ownership and control of facilities; and (e) otherwise fronting for the enterprise to perpetuate the fraudulent scheme and obstruct detection by regulators.

565.    In particular, Defendants individually and collectively conspired to assist Defendant Solorzano in committing the following tortious acts:

        (a) conversion;

        (b) breach of fiduciary duty;

        (c) theft and diversion of services;

        (d) fraud;

        (e) intentional interference with Plaintiff's contractual relations; and

        (f) intentional interference with Plaintiff's prospective business relations.

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

566. As a direct and proximate result of Defendants' conspiracy and wrongful acts committed in furtherance thereof, Plaintiff suffered substantial damages, including loss of profit distributions, salary, business opportunities, and ownership value in ReNew and its affiliates.

567. Each Defendant gave substantial assistance, encouragement, and support to Solorzano and the RICO enterprise in furtherance of their common purpose. Accordingly, all Defendants are jointly and severally liable as civil co-conspirators for the harm and damage suffered by Plaintiff, including but not limited to losses exceeding $255 million, subject to proof at trial.

## FIFTEENTH CAUSE OF ACTION
### (APPOINTMENT OF A RECEIVER)
### (AGAINST ALL DEFENDANTS)

568. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

569. Plaintiff seeks the appointment of a receiver to take custody, control, and management of all skilled-nursing facilities, related entities, and affiliated businesses that are rightfully 50% owned by Plaintiff but have been fraudulently conveyed to Defendants as part of the RICO enterprise. Appointment of a receiver is necessary to preserve Plaintiff's property interests and ensure that the assets are maintained and sold for fair value pending adjudication of this action.

570. Under federal law, the appointment of a receiver is an equitable remedy vested in the sound discretion of the Court. In determining whether to appoint a receiver, courts consider several factors, including: (a) the validity of Plaintiff's underlying claim; (b) evidence of fraudulent conduct or the probability of such conduct by Defendants; (c) the imminent danger that property will be lost, concealed, or diminished in value; (d) the inadequacy of legal remedies; (e) the balance

162

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

of harms between the parties; (f) Plaintiff's likelihood of success on the merits; and (g) whether the appointment will best serve the interests of justice.

571.    Under California law, appointment of a receiver is authorized by California Code of Civil Procedure § 564, including where property is in danger of being lost, removed, or materially injured, or where such appointment is necessary to preserve the rights of any party.

572.    The skilled-nursing facilities and related businesses that are the subject of this action were fraudulently transferred without Plaintiff's consent and without consideration by Defendants acting in concert through the RICO enterprise. The pattern of fraudulent conduct, conversion, and diversion of assets demonstrates that the property is in imminent danger of continued loss, dissipation, or concealment.

573.    No adequate legal or equitable remedy exists to preserve and protect Plaintiff's property interests short of appointing a receiver, as Defendants continue to exercise control over the assets and have demonstrated intent to conceal or dissipate them. Plaintiff has demonstrated a probability of success on the merits and that the harm from denial of a receiver would substantially outweigh any injury to Defendants.

574.    Accordingly, Plaintiff respectfully requests that the Court appoint a qualified and independent receiver, with full powers of sale and accounting, to take possession of, manage, and sell each of the skilled-nursing facilities and related businesses rightfully owned in part by Plaintiff, to preserve the value of the assets, prevent further dissipation, and equitably distribute proceeds in accordance with the Court's orders.

## SIXTEENTH CAUSE OF ACTION
### (DISSOLUTION OF THE ENTITY DEFENDANTS)
### (AGAINST ALL ENTITY DEFENDANTS)

163

575.     Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

576.     Plaintiff brings this cause of action against Defendants Chase Family Trust, Eleos, PDS Trust, SHS Trust, THS, IVP, MGH, MMH, OCCST, P&M, RHCST, 6812, SVPA, SFH, SFHCST, AVPA, 1875, CRA, ECI, 9021, 5270, SVRTC, Sela, VVN, AHCST, HPRC, and RHH (collectively, the "**Entity Defendants**"), each of which fraudulently purports to own interests in ReNew Health Group LLC, ReNew Health Consulting Services LLC, and the affiliated skilled nursing facilities and related businesses rightfully 50% owned by Plaintiff. The Entity Defendants, through the RICO enterprise, have fraudulently converted these ownership interests to themselves without Plaintiff's consent and without any consideration.

577.     Under California law, the statutory bases for judicial dissolution differ according to the type of entity. Corporations are governed by California Corporations Code § 1800, and limited liability companies are governed by California Corporations Code § 17707.03.

578.     Pursuant to Cal. Corp. Code § 1800(b)(4), dissolution of a corporation is warranted when those in control have engaged in persistent and pervasive fraud, mismanagement, or abuse of authority, or when corporate property is being misapplied or wasted.

579.     Pursuant to Cal. Corp. Code § 17707.03(b)(5), dissolution of a limited liability company is warranted when those in control have engaged in persistent and pervasive fraud, mismanagement, or abuse of authority, or when it is no longer reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

580.     As set forth in detail throughout this Complaint, those in control of the Entity Defendants have engaged in persistent and pervasive fraud, mismanagement, and abuse of authority, including but not limited to: (a) the fraudulent transfer and concealment of Plaintiff's

164

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

ownership interests; (b) diversion and misapplication of corporate assets; (c) the creation of sham ownership structures to evade regulatory scrutiny; (d) the filing of false ownership and licensure documents with CDPH and CMS; and (e) the systematic looting of the ReNew Group's assets for the benefit of the RICO enterprise.

581.    The property and assets of the Entity Defendants are being misapplied, dissipated, and wasted by those in control, to Plaintiff's detriment. It is no longer reasonably practicable for the Entity Defendants to carry on business lawfully or in conformity with their governing documents.

582.    Plaintiff therefore seeks the involuntary dissolution of each of the Entity Defendants identified above, including the dissolution of all corporate and limited liability company structures used to conceal, convert, or dissipate assets belonging to Plaintiff and ReNew.

583.    Dissolution is necessary and proper to protect Plaintiff's 50% ownership interest, to preserve the remaining value of the ReNew Group's assets, and to prevent further misuse of the entities and their property.

## SEVENTEENTH CAUSE OF ACTION
### (SALE OF ASSETS TO GENERATE A FUND FOR RECOVERY)
### (AGAINST ALL ENTITY DEFENDANTS)

584.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

585.    Plaintiff requests that, following the appointment of a receiver, the receiver be vested with authority to sell the skilled-nursing facilities and related businesses that are rightfully 50% owned by Plaintiff but have been fraudulently conveyed to Defendants, and to generate a fund for recovery. The proceeds of such sales should be deposited into a constructive trust and

165

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

used to compensate Plaintiff for his ownership interests, lost profit distributions, salary, and other economic losses.

586.    Plaintiff further seeks the imposition of a constructive trust over all assets fraudulently transferred by Defendants and an accounting of all assets, income, and profits generated by the RICO enterprise.

587.    A cause of action lies for appointment of a receiver, dissolution of the entities, and sale of their assets to create a recovery fund, as these remedies are expressly authorized under federal and California law and are warranted by the persistent fraud, mismanagement, and diversion of Plaintiff's property as alleged herein.

588.    Under California law, the appointment and authority of a receiver are governed by Cal. Code Civ. Proc. § 564, as well as Cal. Gov. Code § 12527, which authorizes receiverships to facilitate the maintenance, preservation, operation, or liquidation of property in order to restore or recover assets for restitutionary purposes.

589.    Under federal law, the appointment of a receiver is governed by Federal Rule of Civil Procedure 66 and the Court's inherent equitable powers. Pursuant to 28 U.S.C. § 3103, a federal receiver may take possession of, manage, and sell property subject to the Court's supervision to preserve value and prevent further dissipation of assets obtained through fraud or wrongful conduct.

590.    Plaintiff has demonstrated that the statutory and equitable prerequisites for such relief are satisfied, including: (a) the existence of a valid claim; (b) the probability of continued fraud and mismanagement by Defendants; (c) the imminent risk of loss, concealment, or diminution of property value; (d) the inadequacy of legal remedies; and (e) the balance of equities favoring protection of Plaintiff's rights.

166

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

591.    Accordingly, Plaintiff requests that the Court, exercising its equitable authority, order that a receiver be empowered to take possession of and sell the assets of the entity defendants, and to establish a fund for recovery to preserve, marshal, and distribute proceeds in a manner consistent with equity and justice.

### EIGHTEENTH CAUSE OF ACTION
#### (ATTORNEYS' FEES)
#### (AGAINST ALL DEFENDANTS)

592.    Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

593.    As a direct and proximate result of Defendants' conduct described herein, Plaintiff has been required to retain counsel and incur substantial attorneys' fees and costs to investigate, prepare, and prosecute this action.

594.    Pursuant to 18 U.S.C. § 1964(c), a prevailing plaintiff in a civil RICO action is entitled to recover reasonable attorneys' fees and costs of suit in addition to treble damages.

595.    Accordingly, Plaintiff seeks an award of reasonable attorneys' fees and costs incurred in prosecuting this action, including all future fees and costs related to discovery, trial, post-trial proceedings, and any appeal or enforcement of judgment.

### VI.    JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues and causes of action so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief:

(a)    A judgment against all Defendants, jointly and severally, in an amount not less than:

(i)    Plaintiff's actual damages as set forth herein;

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

       (ii)      Statutory treble damages pursuant to 18 U.S.C. § 1964(c);

       (iii)     Punitive damages in an amount not less than three times Plaintiff's actual damages;

       (iv)     Pre- and post-judgment interest at the highest lawful rate; and

       (v)      Reasonable attorneys' fees and costs of suit;

(b)    Avoidance of the fraudulent transfer of Plaintiff's ownership interests in the chain of approximately forty (40) skilled-nursing facilities pursuant to Cal. Civ. Code § 3439.07, to the extent necessary to satisfy Plaintiff's claims;

(c)    Attachment or other provisional remedies against the transferred assets or other property of Defendants pursuant to Cal. Civ. Code § 3439 et seq.;

(d)    An injunction restraining Defendants from further disposition of the transferred assets or other property pursuant to Cal. Civ. Code § 3439.07;

(e)    Appointment of a receiver to take charge of the transferred assets pursuant to Cal. Civ. Code § 3439.07, dissolution of the entity defendants pursuant to Cal. Corp. Code §§ 1800(b)(4) and 17707.03(b)(5), and authorization for the receiver to sell such assets and generate a fund for recovery;

(f)    A money judgment against all Defendants for the value of the transferred assets or the amount necessary to satisfy Plaintiff's claims, whichever is less, pursuant to Cal. Civ. Code § 3439.08(b), in an amount to be determined at trial but believed to exceed $255 million;

(g)    Compensatory damages against all Defendants for conversion in an amount to be determined at trial but believed to exceed $255 million;

(h)    Restitution and disgorgement against all Defendants for unjust enrichment in an amount to be determined at trial but believed to exceed $255 million;

(i)    Punitive damages against all Defendants in an amount to be determined at trial;

(j)    Pre-judgment and post-judgment interest as permitted by law;

(k)    An award of reasonable attorneys' fees and costs incurred in the prosecution of this action; and

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

(l)    Such other and further legal or equitable relief as the Court deems just and proper.


Dated: _____, 2026
       New York, New York

                                    Respectfully submitted,

                                    **ERIK LAURINOVICS, ATTORNEY AT LAW**

                        By:    _____
                                    Erik Laurinovics, Esq.
                                    6977 Navajo Road, #184
                                    San Diego, CA 92119


                                    **SOLOWAY GROUP PC**

                        By:    _____
                                    Josh Soloway, Esq., *Pro Hac Vice*
                                    169 Madison Avenue, Suite 11199
                                    New York, NY 10016


                                    **SCHWARTZ, CONROY & HACK PC**

                        By:    *Matthew J. Conroy*
                                    Matthew Conroy, Esq., *Pro Hac Vice*

                                    _____
                                    Evan Schwartz, Esq., *Pro Hac Vice*

                        and    *Jacob Frydman*
                                    Jacob Frydman, Esq., *Pro Hac Vice*
                                    666 Old Country Road, Suite 900
                                    Garden City, New York 11530
                                    *Attorneys for Chaim Kolodny*

169

Doc ID: 2ed29be34f1c573083701d548b426f3dda3ea93d

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | Kolodny Complaint |
| File name | Kolodny_Complaint..._file_to_sign.pdf |
| Document ID | 2ed29be34f1c573083701d548b426f3dda3ea93d |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Pending signature |

## Document History

| | | |
|---|---|---|
| SENT | **05 / 15 / 2026**<br>00:38:43 UTC | Sent for signature to Erik Laurinovics (erik@laurinovicslaw.com), Joshua Soloway (jsoloway@solowaygroup.com), Evan Schwartz (ess@schlawpc.com), Matthew Conroy (mjc@schlawpc.com) and Jacob Frydman (jf@frydco.com) from morgana@solowaygroup.com<br>IP: 74.78.169.85 |
| VIEWED | **05 / 15 / 2026**<br>00:40:03 UTC | Viewed by Evan Schwartz (ess@schlawpc.com)<br>IP: 108.231.205.151 |
| SIGNED | **05 / 15 / 2026**<br>00:40:49 UTC | Signed by Evan Schwartz (ess@schlawpc.com)<br>IP: 108.231.205.151 |
| VIEWED | **05 / 15 / 2026**<br>00:54:32 UTC | Viewed by Erik Laurinovics (erik@laurinovicslaw.com)<br>IP: 23.120.198.201 |
| SIGNED | **05 / 15 / 2026**<br>00:55:27 UTC | Signed by Erik Laurinovics (erik@laurinovicslaw.com)<br>IP: 23.120.198.201 |

Powered by **Dropbox** Sign

**Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | Kolodny Complaint |
| File name | Kolodny_Complaint..._file_to_sign.pdf |
| Document ID | 2ed29be34f1c573083701d548b426f3dda3ea93d |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Pending signature |

## Document History

| | | |
|---|---|---|
| ⊙ VIEWED | **05 / 15 / 2026** 15:32:57 UTC | Viewed by Jacob Frydman (jf@frydco.com) IP: 72.153.231.12 |
| ⊙ VIEWED | **05 / 15 / 2026** 15:35:06 UTC | Viewed by Joshua Soloway (jsoloway@solowaygroup.com) IP: 50.206.207.166 |
| ⟋ SIGNED | **05 / 15 / 2026** 15:36:20 UTC | Signed by Joshua Soloway (jsoloway@solowaygroup.com) IP: 50.206.207.166 |
| ⊖ INCOMPLETE | **05 / 15 / 2026** 15:36:20 UTC | This document has not been fully executed by all signers. |

Powered by **Dropbox** Sign